UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| W.R., individually and on behalf of her minor son, JOSEPH R.; SUSAN K.; M.O., individually and on behalf of her minor son, OMAR S.; and on behalf of all others similarly situated, and <br><br>JEANNE MILSTEIN, CHILD ADVOCATE OF THE STATE OF CONNECTICUT <br><br>    PLAINTIFFS <br><br>V. <br><br>CONNECTICUT DEPARTMENT OF CHILDREN AND FAMILIES, and <br><br>DARLENE DUNBAR, in her official capacity as Commissioner of the Connecticut Department of Children and Families, <br><br>    DEFENDANTS | <br><br><br><br><br><br><br><br><br><br><br>CIV. NO. 302CV429 (RNC) <br><br><br><br><br><br><br><br><br>January 6, 2004 |

**POST-ORAL ARGUMENT MEMORANDUM REGARDING PLAINTIFFS' REQUEST FOR COMMUNITY-BASED PLACEMENTS**

**A. Introduction**

On December 22, 2003, the parties appeared before the court for oral argument on Plaintiffs' Motion for Class Certification. The purpose of this memorandum is to respond to the court's request for scholarly information regarding the nation-wide trend of providing small, community-based placements such as those at issue in the instant suit to children and young adults with mental illnesses. In addition, plaintiffs wish to respond to the court's questions concerning the specific definition of a community based placement.

**B. Community-based Placements**

Plaintiffs' putative class consists of children and young adults in the care or custody of the DCF who have mental illnesses and who require out of home placement in order to meet their treatment needs.[1]  Plaintiffs seek a court order that DCF provide them the same opportunity to live successfully in community-based placements that DCF provides to children without mental disabilities.  The community-based placements sought are defined as placements where the child or young adult is placed in an apartment or home with 24 hour seven day a week professional staffing in the home, with no or few roommates.  These placements are in keeping with the nation-wide trend of moving mentally-ill individuals toward settings in the least restrictive environment[2].

Plaintiffs' request for community-based placements is in keeping with the national trend toward community treatment noted by the *Amici Curiae* in *Olmstead v. L.C.*, 119 S.Ct. 2176 (1999) who stated that "...[s]tates are already moving in the direction of using community services as the primary means of treating their citizens with disabilities, and they are experiencing great success with those programs. *Brief of Amicus Curiae* in *Olmstead v. L.C.,* 1999 WL 143935 at 6.  "The *Olmstead* decision should help promote the ongoing trend of providing care to an increasing number of individuals with mental disabilities in less

---

[1]   This definition reflects the clarified class definition from the December 22, 2003, oral argument.

[2]   See *Disability Law-Needless Institutionalization of Individuals With Mental Disabilities As Discrimination Under the ADA-Olmstead v. L.C.,* 30 N.M.L.Rev. 287, 305 (2000).

restrictive, community settings." *Disability Law-Needless Institutionalization of Individuals With Mental Disabilities As Discrimination Under the ADA-Olmstead v. L.C.,* 30 N.M.L.Rev. 287, 305 (2000). Similarly, the 2003 President's Commission on Mental Health, in its final report on transforming mental health care in America, recommended "...swiftly eliminating unnecessary and inappropriate institutionalization that severely limits integrating ... children with serious emotional disturbances into their communities" 2003 New Freedom Commission on Mental Health *Achieving the Promise: Transforming Mental Health Care in America. Final Report*. DHHS Pub. No. SMA-03-3832, at 44. (Attachment A).

C.  Defendants Are Currently Providing Community-Based Placements To Young Adults

For the last decade, the defendant DCF has provided small, individualized, community-based placements to several mentally ill young adults under court order. Cases in which the courts have ordered such placements include *W.G. v. Senatore*, 18 F.3d 60, 62 (2nd Cir. 1994) (noting plaintiff moved with DCF's consent to therapeutic home); *K.P. v. Juzwic*, 891 F.Supp. 703, 710 (D. Conn. 1995) (DCF bearing partial costs of plaintiffs' community-based placement at a Brown and Sullivan facility); and *J.B. v. Killingly* 990 F. Supp. 57, 62 fn 1 (D. Conn. 1997) (discussing plaintiff's request for transfer to a community-based residential group home with twenty-four hour supervision).[3] *See also Mrs. C. v. Wheaton*, 916 F.2d 69 (2$^{d}$ Cir. 1990) (although decision did not order placement, plaintiff's settlement agreement with DCF provided a therapeutic community-based placement

---

[3] Attorney Pearlman was counsel of record in *W.G. v. Senatore, Id.*, and *J.B. v. Killingly, Id.*

to plaintiff). Thus, plaintiffs' request for community-based placements is not unusual and is in keeping with the results of previous litigation with defendants. Even more important, it is noteworthy that despite plaintiffs' success in these lawsuits, community-based placements have not been made available to all children and young adults with mental illnesses who are in the care and custody of the DCF. Class certification is necessary in this case to extend the availability of community-based placements to all putative class members in need of them.

## V. CONCLUSION

The community-based placements sought by plaintiffs are part of a nation-wide trend toward placing mentally ill children and youth in the least restrictive environment similar to the placements non-disabled children and youth receive. Moreover, the defendants have provided such placements to mentally-ill young adults by court order in the past. Plaintiffs respectfully submit that certification of the class is necessary in order to provide an adequate remedy for the DCF's failure to provide community-based placements as part of the continuum of services provided to mentally ill children and young adults in its care.

Respectfully submitted,

_____
Bet Gailor, Fed. Bar. No. ct 01981
Anne Louise Blanchard, Federal Bar No. ct 08718
Connecticut Legal Services, Inc.
872 Main Street
Willimantic, Connecticut  06226
Telephone:  (860) 456-1761
Fax: 860 456-7420
e-mail: bgailor@connlegalservices.org

CERTIFICATION

      I certify that a copy of the foregoing Memorandum was mailed, postage prepaid, to the following counsel of record on the 6th day of January, 2004:

Attorney Susan T. Pearlman
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06106

Attorney Carolyn Signorelli
Assistant Attorney General
55 Elm Street
Hartford, CT 06105

Lori Welch-Rubin, Esquire
Engelman & Welch-Rubin, LLP
195 Church St., 11th Floor
New Haven, CT 06510

                                                    _____
                                                    Bet Gailor