Attachment 1

```
                                                              Page 1
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2
                    Civil Action No. 302CV429(RNC)
 3
     ────────────────────────────────────────
                                           )
 4   W.R., individually and on behalf of   )
     her minor son, JOSEPH R., ET AL.      )        COPY
 5                                         )
     VS.                                   )
 6                                         )
     CONNECTICUT DEPARTMENT OF             )
 7   CHILDREN AND FAMILIES, ET AL.         )
     ────────────────────────────────────────)
 8              VOLUME I
                DEPOSITION OF: JEANNE MILSTEIN
 9              DATE: March 31, 2004
                HELD AT: Offices of the Assistant Attorney General
10                       55 Elm Street
                         Hartford, CT 06106
11   APPEARANCES:

12   ENGLEMAN & WELCH-RUBIN, LLP
            195 Church Street, 11th Floor
13          New Haven, CT 06510
            representing the Child Advocate.
14   BY:    LORI WELCH-RUBIN, ESQUIRE

15   LAW OFFICES OF THE ASSISTANT ATTORNEY GENERAL
            MacKenzie Hall
16          110 Sherman Street
            Hartford, CT 06106
17          representing the Defendant.
     BY:    SUSAN T. PEARLMAN, ESQUIRE
18             - and -
            CAROLYN SIGNORELLI
19
     CONNECTICUT LEGAL SERVICES
20          872 Main Street
            Willimantic, CT 06226
21          representing the Plaintiffs.
     BY:    ANNE LOUISE BLANCHARD, ESQUIRE
22             - and -
            CATHERINE WILLIAMS, ESQUIRE
23
                   Reporter: Aretha S. Martin, LSR
24                 BRANDON SMITH REPORTING SERVICE
                         44 Capitol Avenue
25                 Hartford, Connecticut  06106
                         (800) 852-4589
```

W.R. v. CT DCF
3/31/2004                                                          Jeanne Milstein

Page 7

```
 1      A    Can I talk to my lawyers --
 2      Q    You can't.  If you don't know, you don't know.
 3      A    I don't know.
 4      Q    How did it happen that you became involved in
 5   this lawsuit?
 6      A    Well, we've been very concerned about, not
 7   only these individual children, but we see, I would say,
 8   hundreds of children who fit a very similar profile of
 9   these children.  And I saw this as an opportunity to not
10   only help these individual children, but many more
11   children who are affected by the same issues.
12      Q    Were you contacted by anybody about this suit?
13      A    I talked to Attorney Anne Blanchard about the
14   suit.
15      Q    Okay.  Do you remember when that was?
16      A    I honestly don't.
17      Q    Can you tell me what you were told about this
18   lawsuit?
19      A    I think that Attorney Blanchard summarized
20   what she was doing, and I said that that was something
21   that I wanted to consider, you know, getting intervenor
22   status with.  And I talked to a number of people and
23   decided that I wanted to join in if possible.
24      Q    Okay.  Are you aware that you are listed as a
25   possible witness in this case?
```

Page 8

1    A    Yes.

2    Q    Okay. Were you intending to testify about opinions that you have arrived at as the child advocate about these issues?

5    A    Yes.

6    Q    Can you tell me what information came to your attention that led you to believe that you should become involved in this case?

9    A    Well, again, looking at some of these individual cases and then hundreds of other children who fit the same profile, I've seen, over the course of my almost four years, children that are being warehoused, children who are languishing for an extensive period of times in facilities where they are not being visited on a regular basis, their treatment plans and assessments are very poorly done. They have not -- There's no constant kind of monitoring of the care of the child to see if the child is doing better. There is very little interaction with children and their families. Or if they don't have a biological family to come back to, there's very poor planning about what the next steps will be for those children.

        I saw children -- I still see children -- who are on major psychotropic drugs for months and months and months at a time. And while there might be a medical

W.R. v. CT DCF
3/31/2004                                                      Jeanne Milstein

Page 9

1   evaluation, there's no evaluation as to whether the child
2   is doing better. As a matter of fact, in 2001, we
3   recommended that legislation be passed -- which was
4   finally passed -- that was fairly prescriptive legislation
5   that required DCF to visit the children four times a year
6   to develop a treatment plan and a discharge plan upon
7   arrival in these facilities. So those are just some of
8   the reasons why I thought it was very important to get
9   involved in this particular case.
10          And then I see what happens to these children when
11  they come out of the facilities as well, and that was an
12  important consideration here. I see children who didn't
13  have -- who live in congregated and segregated care who
14  don't know how to set an alarm clock, who don't know how
15  to make a meal, who don't know how to go to the grocery
16  store and shop. Suddenly they're living in, maybe,
17  smaller environments, maybe back home, and the rates of
18  failure -- again, not based on scientific data -- but from
19  what we see in our office, the rates are staggering.
20          You know, seven-year-olds -- Here's an
21  example, two people in my office went to a facility on a
22  Friday night where seven-year-old children were watching
23  videotapes, which is the normal thing for a seven-year-old
24  to do on a Friday night, but both feet had to be on the
25  floor and arms had to be crossed. So that's what I'm

Page 10

1  talking about.

2  Q  When these cases come to your attention, do
3  you open a file on the case and obtain records from DCF?

4  A  The first thing that we do when the call comes
5  to our attention -- every call we respond to. And what we
6  will do is, we will do, you know, sort of a preliminary
7  review of what is in the DCF link. And then we will make
8  a determination as to whether we will open a case or not.
9  Many times, we are able to help, you know, navigate folks
10 through the system and the problem is resolved. In the
11 cases that I'm talking about here today, we actually
12 opened up individual cases.

13 Q  And do you participate in treatment plan
14 hearings or administrative hearings of any kind on behalf
15 of the child?

16 A  I personally do not.

17 Q  Has anyone in your department?

18 A  Oh, yes. And as a matter of fact, you know,
19 we try to do everything that we possibly can to resolve a
20 problem before we do any kind of legal action.

21 Q  Now, in the last year, actually, last March,
22 did you prepare a report concerning children with mental
23 health problems?

24 A  Yes.

25 Q  Is that the report about Brittany H, I

```
                                                              Page 61
 1                    STATE OF CONNECTICUT
 2
 3        I, Aretha S. Martin, a Notary Public duly
 4   commissioned and qualified in and for the State of
 5   Connecticut, do hereby certify that pursuant to notice
 6   there came before me on the 31st day of March, 2004, the
 7   following-named person, to wit: Jeanne Milstein, who was
 8   by me duly sworn to testify to the truth and nothing but
 9   the truth; that she was thereupon carefully examined upon
10   her oath and examination reduced to writing under my
11   supervision; that this deposition is a true record of the
12   testimony given by the witness.
13        I further certify that I am neither attorney nor
14   counsel for nor related to nor employed by any of the
15   parties to the action in which this deposition is taken,
16   and further that I am not a relative or employee of any
17   attorney or counsel employed by the parties hereto, or
18   financially interested in this action.
19        IN WITNESS THEREOF, I have hereunto set my hand this
20   6th day of April, 2004.

                              _____
                                  Aretha S. Martin, Notary Public
23   My Notary Expires:  June 30, 2007.
24
25
```

Attachment 2

W.R. vs CDCF
11/7/2003                                           Mark Frankinberger

Page 1

```
 1
 2              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 3
     W.R., individually and on        :
 4   behalf of her minor son,         :
     JOSEPH R.; SUSAN K.; M.O.,       :
 5   individually and on behalf       :
     of her minor son, OMAR S.;       :
 6   and on behalf of all             :
     others similarly situated;       :
 7   JEANNE MILSTEIN, CHILD           :
     ADVOCATE OF THE STATE OF         :
 8   CONNECTICUT,                     :
             Plaintiffs,              :  Civil Action Number
 9                                    :  CIV. NO. 302CV429 (RNC)
     vs.                              :
10                                    :
     CONNECTICUT DEPARTMENT OF        :
11   CHILDREN AND FAMILIES, and       :
     DARLENE DUNBAR, in her           :
12   official capacity as             :
     Commissioner of the              :
13   Connecticut Department of        :
     Children and Families,           :
14           Defendants.              :
15
16   ------------------------------------------------------
               Deposition of: MARK FRANKINBERGER
17   ------------------------------------------------------
18
          Taken before Annette F. Brown, LSR and Notary
19   Public for the State of Connecticut, at the law
     office of Connecticut Legal Services, 872 Main
20   Street, Willimantic, Connecticut, on November 7,
     2003, commencing at approximately 1:35 p.m.
21
22
23               ANNETTE F. BROWN, LSR
                   LSR Number: 00009
24            Brandon Smith Reporting Service
                   44 Capitol Avenue
25           Hartford, Connecticut  06106
                    (860) 549-1850
```

Page 23

1   the three.
2       Q    In your experience, is there a waiting list
3   for children to get into each of those types of
4   foster homes?
5       A    There would be a wait list for professional
6   and therapeutic foster care.
7       Q    And how long is that wait list?
8       A    It varies from week to week, month to
9   month, and also the type of child and the age of the
10  child because those are all programs that are
11  operated outside of DCF. So they have their own
12  admission criteria and list of homes that are
13  available. So they try to match the child with the
14  homes that are available.
15      Q    Who operates those programs?
16      A    They're privately owned; private,
17  nonprofit.
18      Q    And they are under the Department of
19  Children and Families?
20      A    No, they have contract arrangements with
21  DCF, but they're operated independently.
22      Q    But they are contracted through DCF?
23      A    Yes.
24      Q    And DCF licenses them?
25      A    Yes.

Page 60

1  evaluator recommended that type of placement, what
2  would you do?
3        A    I wouldn't have any role in that. That
4  would be something that the social work supervisor
5  would have to look at and probably talk to somebody
6  else within DCF, because I don't get involved in
7  that. I don't get involved in designing programs.
8        Q    But I just want to try and put this into
9  context of what you talked about earlier. It's my
10 understanding of your job, as part of the RRG, that
11 if a social worker or social work supervisor has a
12 question about a child's treatment needs or
13 placement, they come to you and ask you for your
14 recommendations and your assistance; is that right?
15       A    Yes.
16       Q    And you review evaluations in order to
17 assist you in making a decision about how to assist
18 the social worker and the social work supervisor; is
19 that right?
20       A    Yes.
21       Q    And in that evaluation, if there is a
22 recommendation for a 24-hour, community-based program
23 just tell me what steps you would take to -- when you
24 saw that recommendation?
25            MS. PEARLMAN: Are we talking about a

Page 62

1  you got that type of a recommendation and it's for a
2  service that doesn't exist, would you then go back to
3  the social worker and say, This doesn't exist; talk
4  to somebody else?  How would you handle that
5  situation?
6       A    I think I would just tell them that I don't
7  know of an existing program that is described that
8  way.
9       Q    And so then how is the child placed?
10      A    Again, I don't know.  I don't handle
11 placements.
12      Q    No, I understand.  You said that.
13      A    But I just review --
14      Q    Did you tell them to speak to somebody
15 else, and if so, who?  Or is it just not your area
16 and so you don't deal with it at all?
17      A    I don't deal with it at all.
18      Q    Have you ever seen that type of
19 recommendation?
20      A    Of a group home less --
21      Q    For the child alone or maybe one roommate.
22      A    Yes.
23      Q    And do you recall when that was?
24      A    Well, it was recently on one of the cases
25 that you have.

Page 116

CERTIFICATE OF REPORTER

1

2

3   I, Annette F. Brown, LSR and Notary Public,
4   duly commissioned and qualified in and for the State
5   of Connecticut, do hereby certify that pursuant to
6   notice there came before me on the 7th day of
7   November 2003, the following-named person, to wit:
8   MARK FRANKINBURGER, who was by me duly sworn to
9   testify to the truth and nothing but the truth; that
10  he was thereupon carefully examined upon his oath and
11  his examination reduced to writing under my
12  supervision; that this deposition is a true record of
13  the testimony given by the witness.
14       I further certify that I am neither
15  attorney nor counsel for nor related to nor employed
16  by any of the parties to the action in which this
17  deposition is taken, and further that I am not a
18  relative or employee of any attorney or counsel
19  employed by the parties hereto, or financially
20  interested in this action.
21       IN WITNESS THEREOF, I have hereunto set my
22  hand this 20th day of November 2003.
23            _____
            Annette F. Brown, LSR, Notary Public
24          My Commission Expires: November 30, 2004
            Licensed Shorthand Reporter: 00009
25

# Attachment 3

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT



W.R., INDIVIDUALLY AND ON  :
BEHALF OF HER MINOR SON,
ET AL.,                    :

JEANNE MILSTEIN, CHILD     :
ADVOCATE OF THE STATE OF
CONNECTICUT,               :

         PLAINTIFFS,  :

                     CIV. NO. 302CV429 (RNC)
VS.                        :

CONNECTICUT DEPT. OF CHILDREN
AND FAMILIES, AND
                    :
DARLENE DUNBAR, IN HER OFFICIAL
CAPACITY AS COMMISSIONER OF THE
CONNECTICUT DEPARTMENT OF
CHILDREN AND FAMILIES,      ;

         DEFENDANTS.  :

                     WEDNESDAY, OCTOBER 15,
                     2003. 3:50 O'CLOCK P. M.

## DEPOSITION OF JOANNE E. AUWOOD

WALTER ROCHOW, L.S.R.
*Licensed Shorthand Reporter*
P.O. BOX 5416
HAMDEN, CONNECTICUT 06518-5416
203-281-1778
CT Lic. #004

1   Out of state is anything out of
2   Connecticut. But within the department, because
3   we are so close to the Rhode Island,
4   Massachusetts borders, they are out of state,
5   but they are utilized by our processes in the
6   state because of the availability to the
7   northeast corner.
8   Q. So even they are literally located out
9   of the state of Connecticut the CPT would look
10  at those as in state -- quote, unquote --
11  options?
12  A. Yes.
13  Q. Have you seen children in the voluntary
14  services program not being placed because there
15  was no appropriate placement?
16  You talked earlier about
17  placement not as appropriate. But where the CPT
18  and the local team have identified particular
19  types of placements, have you seen instances
20  where the CPT has come back and said there is a
21  waiting list and there is no possibility for
22  that kind of placement for six months or for any
23  period of time?
24  A. Specific to a nonverbal kid, yes.
25  I guess the answer is yes.

43

## CERTIFICATE

I, WALTER ROCHOW, L.S.R., A LICENSED SHORTHAND REPORTER AND NOTARY PUBLIC, DO HEREBY CERTIFY THAT I AM DULY COMMISSIONED AND QUALIFIED TO ADMINISTER OATHS IN AND FOR THE STATE OF CONNECTICUT.

I FURTHER CERTIFY THAT THE DEPONENT NAMED IN THE FOREGOING DEPOSITION WAS BY ME DULY SWORN AND THEREUPON TESTIFIED AS APPEARS IN THE FOREGOING TRANSCRIPT; THAT SAID DEPOSITION WAS TAKEN BY ME STENOGRAPHICALLY, AND REDUCED TO A TRANSCRIPT BY ME OR UNDER MY DIRECTION; THAT THE FOREGOING TRANSCRIPT IS A TRUE, ACCURATE AND COMPLETE RENDITION OF THE TESTIMONY GIVEN BY THE DEPONENT.

I FURTHER CERTIFY THAT I AM NEITHER OF COUNSEL, NOR ATTORNEY TO ANY OF THE PARTIES TO SAID CAUSE, NOR AM I INTERESTED IN THE OUTCOME OF SAID MATTER.

WITNESS MY HAND AND SEAL AS A NOTARY PUBLIC THIS 15 DAY OF Oct, 2003.

WALTER ROCHOW, L.S.R.
NOTARY PUBLIC.

MY COMMISSION EXPIRES: JUNE 30, 2006.

WALTER ROCHOW, L.S.R.
*Licensed Shorthand Reporter*
P.O. BOX 5416
HAMDEN, CONNECTICUT 06518-5416
203-281-1778
CT Lic. #004