**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| W.R., individually and on behalf of her minor son, JOSEPH R.; SUSAN K.; M.O., individually and on behalf of her minor son, OMAR S.; and on behalf of all others similarly situated, and ) ) ) ) ) | |
| JEANNE MILSTEIN, CHILD ADVOCATE OF THE STATE OF CONNECTICUT ) ) ) ) | |
| PLAINTIFFS ) ) | |
| V. ) ) | CIV. NO. 302CV429 (RNC) |
| CONNECTICUT DEPARTMENT OF CHILDREN ) AND FAMILIES, and ) ) | |
| CHRISTINE REGALIA, in her official capacity as ) Commissioner of the Connecticut Department of ) Children and Families, ) ) | |
| DEFENDANTS ) | May 1, 2005 |

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR CLASS CERTIFICATION

**I. Procedural Background**

Plaintiffs represent the proposed class of 1500 severely mentally-ill youth in the Department of Children and Families' (DCF) care who are in desperate need of community-based placements from DCF. On July 14, 2003, the named plaintiffs requested certification of their case as a class action. Following oral argument on the class certification motion held on December 22, 2003, the court denied plaintiffs' motion without prejudice. After a lengthy discovery process, plaintiffs now file a renewed

1

motion for class certification in accordance with the extended scheduling order in this case.

DCF's failure to provide community based placements violates plaintiffs' and the proposed class' rights in direct violation of the American With Disabilities Act (ADA), 42 U.S.C. 12132; Section 504 of the Rehabilitation Act, 29 U.S.C § 794(a); Connecticut General Statutes §§ 17a-3 and 17a-6; and the Twenty-First Amendment to the Connecticut Constitution. DCF's failure to develop appropriate community-based placements for severely mentally ill youth in Connecticut have harmed the named plaintiffs and the proposed classmembers by placing them in inappropriate and often harmful placements.

## II.  Named Plaintiffs

Plaintiff Jeanne Milstein has been the State of Connecticut's Child Advocate since 2000. As such, she is charged under Connecticut General Statutes to "secure and ensure the legal, civil, and special rights of children who reside in this state," Conn. Gen. Stat. § 46a-131(a)(7). During her tenure as Child Advocate, Ms. Milstein has investigated numerous cases of mentally ill youth whom DCF has denied community based placements. These youth have been subjected unnecessarily to harmful institutional placements or repeated unsuccessful foster care placements. Since the number of community-based placements DCF offers is woefully inadequate, Ms. Milstein's office receives numerous requests for assistance from the families, guardians and professionals who work with these youth. (Attachment 1, Milstein deposition March 31, 2004, p 9).

Named plaintiffs Omar S. and Joseph R. suffer from mental illness and are currently in DCF's care as their mental health issues prevent them from remaining in their homes. Since entering DCF's care, Omar S. has been placed in multiple foster homes and institutions and Joseph R. has been placed in numerous hospitals and institutions. The lack of community based placements for these children has caused Joseph to be unable to transition back to his home and has caused Omar to run away from DCF's care.

Susan K. was in DCF custody from the time she was nine years of age until she turned twenty-one years of age. She, like the other named plaintiffs, also suffers from emotional disabilities which cause oppositional and at times assaultive behaviors. To meet her treatment goals, Susan requires a community based program with twenty-four hour support and medical treatment. DCF placed Susan K. in various foster homes, shelters, institutions, respite care facilities, and a loosely supervised apartment. None of these placements provided Susan K. with the care and support she has needed. When Susan turned eighteen, DCF relinquished her care to the Department of Mental Health and Addiction Services (DMHAS). Unfortunately, DCF's failure to provide Susan with an adequate transition to DMHAS resulted in her confinement in York Prison for Women. After a lengthy state court battle to obtain an appropriate placement for Susan, DCF fulfilled its obligation to Susan. *See In Re: Shonna K.*, 77 Conn. App. 246 (Conn. App. 2003). DCF then placed Susan in a residential setting in New York which contained a community based program to which Susan successfully transtitioned once the program stabilized her.

All three named plaintiffs, Susan K., Omar S., and Joseph R., have languished in inappropriate and often harmful placements due to the defendants' failure to provide community based placements as part of the continuum of placements DCF provides to youth in its care.

## III. THE PROPOSED CLASS

The plaintiff seeks to establish a class consisting of:

> Severely mentally ill youth in the care of DCF whose mental health needs cannot be met in traditional foster home placements or institutions and who are in desperate need of community based placements[1] from DCF.

This putative class of youth is a clearly defined class well-known to the DCF. DCF staff have testified at their depositions that there are not sufficient placements for those youth and that many languish in inappropriate placements or shelters while waiting to be placed. (Attachments 2-4; Frankinberger deposition at 23; Auwood deposition at 27; Rudin deposition at 49, 60). Additionally, DCF staff further testified that DCF social workers and their supervisors do not even consider community based residential placements, *even when recommended by treating professionals*, because those placements do not exist in Connecticut. (Attachments 2-5 Frankinberger deposition at 59; Auwood deposition at 33; Rudin deposition at 91, 116, 130-131; Connolly deposition at 38).

## IV. THE PLAINTIFFS' CLAIM MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23

---

[1] The term "community based placement" had been defined by defense witnesses as "small, home-like group homes staffed by competent professionals and plaintiffs agree with this definition.

Federal Rule of Civil Procedure 23 sets forth the requirements needed in order for a party to gain class action certification. The requirements are as follows:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, (4) the representative parties will fairly and adequately protect the interests of the class. Fed R. Civ. P. 23(a).

When determining whether class certification is applicable to a moving party, the district court must determine that the party satisfies all four of the prerequisites established by Fed. R. Civ. P. 23(a). Marisol A. v. Giuliani, 126 F. 3rd 372, 375-376 (2d Cir. 1997). Although the burden of proving that the established requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(2) lies with the moving party, the court is to construe the rules liberally. Marisol A. *ex. Rel*. Forbes v.Giuliani, *et. al.*, 126 F.3d 372, 377 (2d Cir. 1997); *see also* Eisen v. Carlisle & Jacquelin, 391 F. 2d 555, 563 (2d Cir. 1968).

Moreover, "[i]n addition to meeting the four conjunctive requirements of 23(a), a class action must also qualify under one of the three subdivisions of 23(b)." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163, 94 S. Ct. 2140, 2145 (1974) (footnote omitted); *see also* Comer v. Cisneros, 37 F. 3d 775, 796 (2d Cir. 1994). Federal Rule of Civil Procedure 23(b)(2) states that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...." Fed. R. Civ. P. 23(b)(2). The instant class meets the Rule 23(b)(2) requirements since DCF's

5

practice of failing to provide residential community based placements applies to the entire class and makes final relief applicable to the class as a whole.

Previously certified cases involving child plaintiffs within the Second Circuit include Juan F. By and Through Lynch v. Weicker, 37 F.3d 874 (2nd Cir. 1994) (class of abused and neglected children in care of DCF); Marisol A. ex. Rel. Forbes v.Giuliani, et. al., 126 F.3d 372, 379 (2d Cir. 1997) (granting class certification for broad class of plaintiffs for all children who are or will be in the custody of New York Child Welfare department); and Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340 (2d Cir. 1997) (upholding standing of class of children arrested and interrogated by the New York City Police Department's Detective Squad). Like the young plaintiffs in the above cited class actions, this case is especially appropriate for class certification since the plaintiffs will "age out" of the DCF system. Class certification would "preserve the courts' power to supervise relief should judgment be rendered in favor of plaintiffs." Alexander A. v. Novello, 210 F.R.D. 27, 34 (E.D.N.Y 2002). This concern is underscored by Susan K.'s situation, as she has turned 21 and is no longer in DCF 's care.

**A.      The Proposed Class Is So Numerous That Joinder is Impracticable**

Given the approximately 1500 youth in DCF's care in residential placement, plaintiffs meet the first prong of the test for class certification - to show that the class size makes joinder impracticable. Fed. R. Civ. Pro. 23(a)(1). The focus of the federal requirement of "numerosity" is on the issue of the practicability of joinder rather than the possibility. Robidoux v. Celani, 987 F.2d 931, 935-936 (2d Cir. 1993); *see also* Reese v. Arrow Financial Services, LLC, et al., 202 F.R.D. 83, 90 (D. Conn. 2001), *citing*

6

Robidoux, 987 F.2d 931, 936; Ansari v. New York Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998).  A court determines practicability of joinder based on "all the circumstances surrounding the case, not on mere numbers." Robidoux, 987 F.2d.at 936. Factors to be considered in determining practicability include: judicial economy resulting from avoiding multiple actions, geographic distribution of class members, financial resources of class members, ability of claimants to bring suit individually, and request for prospective injunctive relief which would affect future class members.  Id. at 936. When determining the feasibility of joinder, the court must also consider the term "impracticable does not mean impossible..." Robidoux, 987 F.2d 931, 935 (citation omitted). Rather, impracticable is equated with "difficult" or " inconvenient." Reese, 202 F.R.D. 83, 90 (D. Conn. 2001).  Moreover, joinder is impracticable where "many of the class members ... by reason of ignorance, poverty, illness, or lack of counsel may not ... [be] in a position to seek [a hearing] on their own behalf."  United States ex rel. Morgan, 546 F.2d 218, 222 (7th Cir. 1976).

The proposed plaintiff class consists of hundreds of severely mentally ill youth who desperately need community based residential placement.  In her deposition, plaintiff Child Advocate Jeanne Milstein testified,  "[w]e see hundreds of children who fit a very similar profile to [the named plaintiffs] (Attachment 1, Milstein deposition March 31, 2004, p. 9). "And then I see what happens to these children when they come out of the [residential] facilities ... I see children ...who live in congregated and segregated care who don't know how to set an alarm clock, who don't know how to go to the grocery store and shop, who don't know how to make a meal .....the rates of failure ...

from what we see in our office, the rates are staggering." Id.

Consequently, due to the number of the proposed class members, joinder is not practicable in this case. The estimated number is 1500, based upon DCF data obtained through discovery and from the Office of the Child Advocate. Since most, if not all, of the proposed class members are in DCF's care due to mental illness, abuse, and/or neglect, plaintiffs would face extreme difficulty in commencing individual actions to challenge their inappropriate placements. Few or none would have the ability to retain an attorney due to their mental and cognitive disabilities, lack of financial resources, and/or being in the care of DCF. Many of the minor children in DCF's care who comprise part of the proposed class are isolated in institutions, some as far away as Alabama and Tennessee. Given the number of youth in residential placements and that fact that DCF staff state that community based programs do not exist in Connecticut for such youth, it would be impracticable to join each one into the instant suit separately.

Another factor which makes class certification appropriate in the instant case is that the proposed class would consist primarily of individuals of low economic means who are dependant upon the state for aid regarding essential services, such as housing, food, clothing and basic necessities. The financial status of the proposed class and the subsequent difficulty the members would have obtaining access to the courts render joinder impracticable. Robidoux, 987 F.2d at 936. Moreover, judicial economy makes class certification appropriate as numerous individual suits would exhaust the court's time and effort as would the eventual, albeit unintentional, inconsistent individual case results. Id.

Since the proposed class includes at least 1500 youth in DCF's care who would be unable to bring separate cases on their own, joinder is clearly impracticable and the first prerequisite of Federal Rule of Civil Procedure 23(a)(1) is satisfied.

**B. There Are Questions Of Law Or Fact Common To The Class And The Claims Or Defenses Of The Representative Parties Are Typical Of The Claims And Defenses Of The Class**

Plaintiffs also meet the second prong of the class certification test, commonality and typicality, as DCF has failed to provide plaintiffs with the option of a community based placement on the continuum of care options offered by DCF. "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." Marisol A., 126 F. 3rd at 376.

1. Legal Requirements For Commonality And Typicality

The prerequisite of commonality is satisfied if the proposed class members' complaints share a common question of law or fact. Id. *see also* In Re Agent Orange Prod. Liab. Lit., 818 F.2d 145, 166-167 (2nd Cir. 1987). Consequently, a common question must be at the heart of the class-wide cause of action . Alexander A. v. Novello, 210 F.R.D. 27 (E.D.N.Y. 2002). "Moreover, an "alleged common course of conduct" by the defendants is sufficient to meet the commonality requirement. Certification is not precluded if a plaintiff has unique factual circumstances which differ from those of other plaintiffs. Marisol, 126 F. 3d. at 377*; see also*; Brown v. Giuliani, 158 F.R.D. 251, 268 (E.D.N.Y. 1994); Karen L. ex. rel. Jane L. v. Physicians Health Services, 2020 F.R.D. 94 (D. Conn. 2001); Baby Neal v. Casey, 43 F.3d at 60-61 (3d. Cir. 1994).

The prerequisite of typicality is satisfied if the claims of the class representatives

9

are indeed typical of the class, and if each class members' claim stems from the same course of events and each member utilizes similar legal arguments to prove the opposing party's liability. Id. "The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Id., *citing* General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n. 13, 102 S. Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982). Typicality is also satisfied if the "unlawful conduct" of the defendant, in this case DCF, "is directed" towards or affects all the named plaintiffs as well as the proposed class members regardless of distinctions in each member's particular fact pattern. Robidoux, 987 F.2d 931, 936-937, *citing* 1 Newberg on Class Actions, § 3.13 at 167.

In the present case, plaintiffs' injuries stem from the common cause of DCF's unlawful action in failing to provide them with appropriate community-based placement. As such, DCF violated the Rehabilitation Act, Connecticut General Statutes §§ 17a-3 and 17a-6, and the Twenty-First Amendment of the Connecticut Constitution. DCF's unlawful conduct satisfies not only the 23(a)(2) commonality prerequisite of the Federal Rules of Civil Procedure, but also the 23(a)(3) typicality prerequisite, as all class members' "injuries derive from a unitary course of conduct by a single system." Marisol A., 126 F. 3d 372, 377; *see also* Robidoux v. Celani, 987 F.2d 931,937 (2d Cir. 1993).

In the instant case, each of the plaintiffs' claims derives from the very same violations on the part of the defendant. DCF violated the ADA, The Rehabilitation Act, Connecticut General Statutes §§ 17a-3 and 17a-6, and the Twenty-First Amendment of

the Connecticut Constitution resulting in the plaintiffs' class action claims.  DCF violated the same constitutional law and statutes by failing to provide community based programming to the plaintiffs, named and proposed, leading to the common cause of action each plaintiff now has.   The instant case is similar to the facts in Marisol, where the defendants violated different "statutory, constitutional, and regulatory schemes" which  affected each Marisol plaintiff in the same manner. Marisol, 126 F. 3rd at 376-377.

     2.  <u>Claims Similar To Those Of The Proposed Class Have Previously Been Found to Meet Commonality and Typicality Requirements</u>

District courts have previously certified cases similar to the one at bar.  In Alexander A., for example, the district court in New York certified a class of plaintiffs similar in scope and commonality to the present class.  Alexander A. v. Novello, 210 F.R.D. 27 (E.D.N.Y. 2002).  The Alexander A. class was defined as  "children with psychiatric disabilities who had been or would be found by defendants to be appropriate for placement in a residential treatment facility, and who had not been or would not be provided with such placement with reasonable promptness." *Id.* at 33.  In certifying the class, the court held that the commonality requirement was met because the defendants' failure to promptly provide residential placement for all eligible children was a unifying factor of class members. *Id*.

In Kenny A. ex rel. Winn. v. Perdue, 218 F.R.D. 277 (N.D.Ga. 2003), the district court in Georgia certified a class of foster children in the state's custody.  The court found that the class met commonality requirements where its members "claim[ed] entitlement to the same legally mandated rights and services under state and federal law,

11

and all seek the same system-wide declaratory relief" Kenny A., 218 F.R.D. 277 (N.D.Ga. 2003).

Moreover, in Karen L., the Connecticut district court certified a class defined as "all past, current and future Medicaid recipients who were or currently are enrolled in, or who in the future will be enrolled in, any managed care plan offered by the defendant PHS to Medicaid recipients, under contract with defendant Commissioner." Karen L. v. Physicians Health Services, 202 F.R.D. 94 (D.Conn. 2001); *affmd*. 2003 WL 22429040 2nd Cir. 2003). The court certified the class due to the fact that the defendants' actions caused the alleged violations. Consequently, the Karen L. case is similar to the instant case because both actions contain different types of class members who suffered different injuries all caused by the same, single practice of the defendant. Here, while the individual circumstances of the proposed classmembers might vary, the harm each suffers is caused by DCF's central decision-making, specifically, its decision not to provide adequate, properly-staffed community-based treatment facilities.

Plaintiffs meet the legal requirements for commonality and typicality as did the plaintiffs in similar, previously certified class actions both in Connecticut and in other district courts. As such, the plaintiffs' claims satisfy the commonality and typicality prerequisites of the Federal Rules of Civil Procedure 23(a)(2) and (a)(3).

## C. The Representative Parties Will Fairly and Adequately Protect The Interests Of The Class

The last prerequisite of 23(a) of the Federal Rules of Civil Procedure demands that the class representatives "fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a)(4). " The purpose of the adequacy requirement is to protect the legal rights of the absent class members who are bound by the resulting judgment under the doctrine of *res judicata*." Garfinkel, 695 F. Supp. 1397, 1405, (D.Conn. 1988), *citing* Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985), *cert denied*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986). The two essential guidelines for satisfaction of Rule 23(a)(4) are whether there is potential conflict between the named plaintiffs and the represented class members, and the vigorous prosecution of the claims by the representative party and the qualifications of the party's legal counsel to handle such claims. Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 560-562 (2d Cir. 1968).

      Plaintiffs meet both prongs of the Eisen test.  First, in the present case, named plaintiffs have no conflict with the proposed class. The named plaintiffs are seeking enforcement of federal and state laws which apply equally to all proposed class members by requesting DCF to provide  mandated community-based residential placement for all youth entitled to them when mental illness makes traditional foster placement and institutionalization inappropriate. Second, plaintiffs are represented in this matter by Connecticut Legal Services, Inc.  CLS is a state-wide law firm which has represented low-income clients in class action suits since 1978.  The same CLS attorneys in this case have represented clients in class actions related to the case at bar in numerous suits, including Smith v. Wheaton, 29 IDELR 200 (D.Conn. 1998)  and Peter J. v. Regaglia , 4 Conn. Ops. 302 (D. Conn. 1998) and can be expected to vigilantly pursue such interests in the future.

      Since there are no conflicts between the named plaintiffs and the proposed class

members, and plaintiffs' counsel have proven adequate and well seasoned in class action claims, the adequacy prerequisite required by Federal Rule of Civil Procedure 23(a)(4) is satisfied. Therefore the present claim and proposed class satisfy all prerequisites stated in Federal Rule of Civil Procedure 23(a).

### D.  The Present Action Satisfies The Requirements of Fed. R. Civ. P. 23(b)(2)

"In addition to meeting the four conjunctive requirements of 23(a), a class action must also qualify under one of the three subdivisions of 23(b)." Eisen, 417 U.S. 156, 163, 94 S. Ct. 2140, 2145 (1974); *see also* Comer v. Cisneros, 37 F. 3d 775, 796 (2d Cir. 1994).  Fed. R. Civil Pro. 23(b)(2) was developed to enable courts to grant class certification in civil rights cases seeking widespread relief for a "numerous and often unascertainable or amorphous class of persons".  *See* In re Methyl Tertiary Butyl Ether Products Liability Litigation, 209 F.R.D. 323 (S.D.N.Y. 2002); Baby Neal, 43 F.3d. 48, 59 (3d Cir. 1994).  A class may be certified even though all members of a class cannot be identified. Gatling v. Butler, 52 F.R.D. 389, 392 (D.Conn.1971); Dolgow v. Anderson, 43 F.R.D. 472, 492-93 (E.D.N.Y.1968), *rev'd on other grounds*, 438 F.2d 825 (2d Cir.1970); Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D.N.Y.1966); however,  the class must be defined in clear terms, Abromowitz v. Ahern 96 FRD 208, 213 (D. Conn. 1982).

The present action satisfies Federal Rule of Civil Procedure 23(b) subdivision (2) as the rule allows for an action to be maintained as a class action when the opposing party acted or refused to act on grounds generally applicable to the class, thus effectively providing final injunctive relief or corresponding declaratory relief for the entire class.

The plaintiffs in this case allege DCF acted on grounds generally applicable to each member of the proposed class by failing to provide appropriate community-based residential placement in accordance with established federal and state laws. As previously stated, when considering a motion for class certification, the court must accept the plaintiffs' allegations as true with regard to the merits of the case. Reese, 202 F.R.D. at 92. In keeping with the above-cited case law, the proposed class should be certified under Federal Rule of Civil Procedure 23(b)(2). Id.

### V. CONCLUSION

For reasons stated herein, the plaintiffs demonstrated that this action satisfies the prerequisites of Federal Rule of Civil Procedure 23, and as such is maintainable as a class action. Therefore, plaintiffs respectfully request that the Court certify this case as a class action.

Respectfully submitted,

_____
Anne Louise Blanchard
Connecticut Legal Services
Federal Bar No. ct 08718
872 Main Street
Willimantic, Connecticut  06226
Telephone:  (860) 456-1761
Fax:: 860 456-7420

CERTIFICATION

I certify that a copy of the foregoing Memorandum In Support of Second Motion For Class Certification was mailed, postage prepaid, to the following counsel of record on the 2st day of May, 2005 to:

Attorney Susan T. Pearlman
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06106

Attorney Carolyn Signorelli
Assistant Attorney General
55 Elm Street
Hartford, CT 06105

Attorney Lori Welch-Rubin
Engelman & Welch-Rubin, LLP
129 Whitney Avenue, New Haven, CT 06510


_____
Anne Louise Blanchard