# Attachment 1

W. R. v. CT DCF

3/31/2004                                                    Jeanne Milstein

Page 1

1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
2

                  Civil Action No. 302CV429(RNC)
3        ————————————————————————————————————
                                            )
4    W.R., individually and on behalf of )
     her minor son, JOSEPH R., ET AL.    )      COPY
5                                          )
     VS.                                   )
6                                          )
                                           )
     CONNECTICUT DEPARTMENT OF             )
7    CHILDREN AND FAMILIES, ET AL.         )
         ————————————————————————————————————)
8            VOLUME I
             DEPOSITION OF: JEANNE MILSTEIN
9            DATE: March 31, 2004
             HELD AT: Offices of the Assistant Attorney General
10                    55 Elm Street
                      Hartford, CT 06106
11   APPEARANCES:

12   ENGLEMAN & WELCH-RUBIN, LLP
             195 Church Street, 11th Floor
13           New Haven, CT 06510
             representing the Child Advocate.
14   BY:     LORI WELCH-RUBIN, ESQUIRE

15   LAW OFFICES OF THE ASSISTANT ATTORNEY GENERAL
             MacKenzie Hall
16           110 Sherman Street
             Hartford, CT 06106
17           representing the Defendant.
     BY:     SUSAN T. PEARLMAN, ESQUIRE
18                - and -
                  CAROLYN SIGNORELLI
19
     CONNECTICUT LEGAL SERVICES
20           872 Main Street
             Willimantic, CT 06226
21           representing the Plaintiffs.
     BY:     ANNE LOUISE BLANCHARD, ESQUIRE
22                - and -
                  CATHERINE WILLIAMS, ESQUIRE
23
                  Reporter:  Aretha S. Martin, LSR
24            BRANDON SMITH REPORTING SERVICE
                      44 Capitol Avenue
25            Hartford, Connecticut  06106
                      (800) 852-4589

W. R. v. CT DCF

3/31/2004                                                    Jeanne Milstein

Page 7

```
 1        A     Can I talk to my lawyers --

 2        Q     You can't.  If you don't know, you don't know.

 3        A     I don't know.

 4        Q     How did it happen that you became involved in

 5   this lawsuit?

 6        A     Well, we've been very concerned about, not

 7   only these individual children, but we see, I would say,

 8   hundreds of children who fit a very similar profile of

 9   these children.  And I saw this as an opportunity to not

10   only help these individual children, but many more

11   children who are affected by the same issues.

12        Q     Were you contacted by anybody about this suit?

13        A     I talked to Attorney Anne Blanchard about the

14   suit.

15        Q     Okay.  Do you remember when that was?

16        A     I honestly don't.

17        Q     Can you tell me what you were told about this

18   lawsuit?

19        A     I think that Attorney Blanchard summarized

20   what she was doing, and I said that that was something

21   that I wanted to consider, you know, getting intervenor

22   status with.  And I talked to a number of people and

23   decided that I wanted to join in if possible.

24        Q     Okay.  Are you aware that you are listed as a

25   possible witness in this case?
```

Brandon Smith Reporting

26d222f1-2614-48e3-b70a-e20bb5534c5c

W.R. v. CT DCF

Page 8

```
 1        A     Yes.

 2        Q     Okay.  Were you intending to testify about

 3   opinions that you have arrived at as the child advocate

 4   about these issues?

 5        A     Yes.

 6        Q     Can you tell me what information came to your

 7   attention that led you to believe that you should become

 8   involved in this case?

 9        A     Well, again, looking at some of these

10   individual cases and then hundreds of other children who

11   fit the same profile, I've seen, over the course of my

12   almost four years, children that are being warehoused,

13   children who are languishing for an extensive period of

14   times in facilities where they are not being visited on a

15   regular basis, their treatment plans and assessments are

16   very poorly done.  They have not -- There's no constant

17   kind of monitoring of the care of the child to see if the

18   child is doing better.  There is very little interaction

19   with children and their families.  Or if they don't have a

20   biological family to come back to, there's very poor

21   planning about what the next steps will be for those

22   children.

23             I saw children -- I still see children -- who

24   are on major psychotropic drugs for months and months and

25   months at a time.  And while there might be a medical
```

26d222f1-2614-48e3-b70a-e20bb5534c5c

W.R. v. CT DCF

3/31/2004                                                      Jeanne Milstein

1    evaluation, there's no evaluation as to whether the child

2    is doing better. As a matter of fact, in 2001, we

3    recommended that legislation be passed -- which was

4    finally passed -- that was fairly prescriptive legislation

5    that required DCF to visit the children four times a year

6    to develop a treatment plan and a discharge plan upon

7    arrival in these facilities. So those are just some of

8    the reasons why I thought it was very important to get

9    involved in this particular case.

10          And then I see what happens to these children when

11   they come out of the facilities as well, and that was an

12   important consideration here. I see children who didn't

13   have -- who live in congregated and segregated care who

14   don't know how to set an alarm clock, who don't know how

15   to make a meal, who don't know how to go to the grocery

16   store and shop. Suddenly they're living in, maybe,

17   smaller environments, maybe back home, and the rates of

18   failure -- again, not based on scientific data -- but from

19   what we see in our office, the rates are staggering.

20          You know, seven-year-olds -- Here's an

21   example, two people in my office went to a facility on a

22   Friday night where seven-year-old children were watching

23   videotapes, which is the normal thing for a seven-year-old

24   to do on a Friday night, but both feet had to be on the

25   floor and arms had to be crossed. So that's what I'm

26d222f1-2614-48e3-b70a-e20bb5534c5c

W R v CT DCF

3/31/2004                                                               Jeanne Milstein

Page 10

1    talking about.

2         Q    When these cases come to your attention, do

3    you open a file on the case and obtain records from DCF?

4         A    The first thing that we do when the call comes

5    to our attention -- every call we respond to. And what we

6    will do is, we will do, you know, sort of a preliminary

7    review of what is in the DCF link. And then we will make

8    a determination as to whether we will open a case or not.

9    Many times, we are able to help, you know, navigate folks

10   through the system and the problem is resolved. In the

11   cases that I'm talking about here today, we actually

12   opened up individual cases.

13        Q    And do you participate in treatment plan

14   hearings or administrative hearings of any kind on behalf

15   of the child?

16        A    I personally do not.

17        Q    Has anyone in your department?

18        A    Oh, yes. And as a matter of fact, you know,

19   we try to do everything that we possibly can to resolve a

20   problem before we do any kind of legal action.

21        Q    Now, in the last year, actually, last March,

22   did you prepare a report concerning children with mental

23   health problems?

24        A    Yes.

25        Q    Is that the report about Brittany H, I

26d222f1-2614-48e3-b70a-e20bb5534c5c

W R. v. CT DCF

3/31/2004                                                          Jeanne Milstein

Page 61

1                          STATE OF CONNECTICUT

2

3          I, Aretha S. Martin, a Notary Public duly

4    commissioned and qualified in and for the State of

5    Connecticut, do hereby certify that pursuant to notice

6    there came before me on the 31st day of March, 2004, the

7    following-named person, to wit: Jeanne Milstein, who was

8    by me duly sworn to testify to the truth and nothing but

9    the truth; that she was thereupon carefully examined upon

10   her oath and examination reduced to writing under my

11   supervision; that this deposition is a true record of the

12   testimony given by the witness.

13         I further certify that I am neither attorney nor

14   counsel for nor related to nor employed by any of the

15   parties to the action in which this deposition is taken,

16   and further that I am not a relative or employee of any

17   attorney or counsel employed by the parties hereto, or

18   financially interested in this action.

19         IN WITNESS THEREOF, I have hereunto set my hand this

20   6th day of April, 2004.

21                        _____

22                        Aretha S. Martin, Notary Public

23   My Notary Expires:  June 30, 2007.

24

25

26d222f1-2614-48e3-b70a-e20bb5534c5c

Attachment 2

W.R. vs CDCF

11/7/2003                                              Mark Frankinberger

Page 1

```
 1
 2                UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
 3
      W.R., individually and on    :
 4    behalf of her minor son,     :
      JOSEPH R.; SUSAN K.; M.O.,   :
 5    individually and on behalf   :
      of her minor son, OMAR S.;   :
 6    and on behalf of all         :
      others similarly situated;   :
 7    JEANNE MILSTEIN, CHILD        :
      ADVOCATE OF THE STATE OF      :
 8    CONNECTICUT,                  :
           Plaintiffs,             :    Civil Action Number
 9                                 :    CIV. NO. 302CV429 (RNC)
      vs.                          :
10                                 :
      CONNECTICUT DEPARTMENT OF     :
11    CHILDREN AND FAMILIES, and    :
      DARLENE DUNBAR, in her        :
12    official capacity as         :
      Commissioner of the          :
13    Connecticut Department of     :
      Children and Families,       :
14         Defendants.            :
15
16    -------------------------------------------------
                Deposition of: MARK FRANKINBERGER
17    -------------------------------------------------
18
           Taken before Annette F. Brown, LSR and Notary
19    Public for the State of Connecticut, at the law
      office of Connecticut Legal Services, 872 Main
20    Street, Willimantic, Connecticut, on November 7,
      2003, commencing at approximately 1:35 p.m.
21
22
23              ANNETTE F. BROWN, LSR
                 LSR Number: 00009
24           Brandon Smith Reporting Service
                  44 Capitol Avenue
25           Hartford, Connecticut   06106
                   (860) 549-1850
```

COPY

aa221c1c-d529-475f-8484-3a0c686b3445

W R. vs CDCF

11/7/2003                                          Mark Frankinberger

Page 23

1    the three.

2         Q    In your experience, is there a waiting list

3    for children to get into each of those types of

4    foster homes?

5         A    There would be a wait list for professional

6    and therapeutic foster care.

7         Q    And how long is that wait list?

8         A    It varies from week to week, month to

9    month, and also the type of child and the age of the

10   child because those are all programs that are

11   operated outside of DCF. So they have their own

12   admission criteria and list of homes that are

13   available.  So they try to match the child with the

14   homes that are available.

15        Q    Who operates those programs?

16        A    They're privately owned; private,

17   nonprofit.

18        Q    And they are under the Department of

19   Children and Families?

20        A    No, they have contract arrangements with

21   DCF, but they're operated independently.

22        Q    But they are contracted through DCF?

23        A    Yes.

24        Q    And DCF licenses them?

25        A    Yes.

aa221c1c-d529-475f-8484-3a0c686b3445

W.R. vs CDCF

11/7/2003                                          Mark Frankinberger

Page 60

1    evaluator recommended that type of placement, what

2    would you do?

3        A    I wouldn't have any role in that.  That

4    would be something that the social work supervisor

5    would have to look at and probably talk to somebody

6    else within DCF, because I don't get involved in

7    that.  I don't get involved in designing programs.

8        Q    But I just want to try and put this into

9    context of what you talked about earlier.  It's my

10   understanding of your job, as part of the RRG, that

11   if a social worker or social work supervisor has a

12   question about a child's treatment needs or

13   placement, they come to you and ask you for your

14   recommendations and your assistance; is that right?

15       A    Yes.

16       Q    And you review evaluations in order to

17   assist you in making a decision about how to assist

18   the social worker and the social work supervisor; is

19   that right?

20       A    Yes.

21       Q    And in that evaluation, if there is a

22   recommendation for a 24-hour, community-based program

23   just tell me what steps you would take to -- when you

24   saw that recommendation?

25            MS. PEARLMAN:  Are we talking about a

aa221c1c-d529-475f-8484-3a0c686b3445

W R  vs CDCF

Page 62

1    you got that type of a recommendation and it's for a

2    service that doesn't exist, would you then go back to

3    the social worker and say, This doesn't exist; talk

4    to somebody else?  How would you handle that

5    situation?

6         A    I think I would just tell them that I don't

7    know of an existing program that is described that

8    way.

9         Q    And so then how is the child placed?

10        A    Again, I don't know.  I don't handle

11   placements.

12        Q    No, I understand.  You said that.

13        A    But I just review --

14        Q    Did you tell them to speak to somebody

15   else, and if so, who?  Or is it just not your area

16   and so you don't deal with it at all?

17        A    I don't deal with it at all.

18        Q    Have you ever seen that type of

19   recommendation?

20        A    Of a group home less --

21        Q    For the child alone or maybe one roommate.

22        A    Yes.

23        Q    And do you recall when that was?

24        A    Well, it was recently on one of the cases

25   that you have.

aa221c1c-d529-475f-8484-3a0c686b3445

W.R. vs CDCF

11/7/2003                                                                Mark Frankinberger

Page 116

1                      CERTIFICATE OF REPORTER

2

3             I, Annette F. Brown, LSR and Notary Public,

4    duly commissioned and qualified in and for the State

5    of Connecticut, do hereby certify that pursuant to

6    notice there came before me on the 7th day of

7    November 2003, the following-named person, to wit:

8    MARK FRANKINBURGER, who was by me duly sworn to

9    testify to the truth and nothing but the truth; that

10   he was thereupon carefully examined upon his oath and

11   his examination reduced to writing under my

12   supervision; that this deposition is a true record of

13   the testimony given by the witness.

14            I further certify that I am neither

15   attorney nor counsel for nor related to nor employed

16   by any of the parties to the action in which this

17   deposition is taken, and further that I am not a

18   relative or employee of any attorney or counsel

19   employed by the parties hereto, or financially

20   interested in this action.

21            IN WITNESS THEREOF, I have hereunto set my

22   hand this 20th day of November 2003.

23   _____

                Annette F. Brown, LSR, Notary Public

24        My Commission Expires: November 30, 2004

                Licensed Shorthand Reporter:  00009

25

aa221c1c-d529-475f-8484-3a0c686b3445

Attachment 3

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT



W.R., INDIVIDUALLY AND ON         :
BEHALF OF HER MINOR SON,
ET AL.,                            :

JEANNE MILSTEIN, CHILD            :
ADVOCATE OF THE STATE OF
CONNECTICUT,                      :

          PLAINTIFFS,  :

                    CIV. NO. 302CV429 (RNC)

VS.                               :

CONNECTICUT DEPT. OF CHILDREN
AND FAMILIES, AND
                  :

DARLENE DUNBAR, IN HER OFFICIAL
CAPACITY AS COMMISSIONER OF THE
CONNECTICUT DEPARTMENT OF
CHILDREN AND FAMILIES,            ;

          DEFENDANTS.  :

                    WEDNESDAY, OCTOBER 15,
                    2003. 3:50 O'CLOCK P. M.

<u>DEPOSITION OF JOANNE E. AUWOOD</u>

WALTER ROCHOW, L.S.R.
*Licensed Shorthand Reporter*
P.O. BOX 5416
HAMDEN, CONNECTICUT 06518-5416
203-281-1778
CT Lic. #004

1          Out of state is anything out of

2    Connecticut.  But within the department, because

3    we are so close to the Rhode Island,

4    Massachusetts borders, they are out of state,

5    but they are utilized by our processes in the

6    state because of the availability to the

7    northeast corner.

8          Q.  So even they are literally located out

9    of the state of Connecticut the CPT would look

10   at those as in state -- quote, unquote --

11   options?

12         A.  Yes.

13         Q.  Have you seen children in the voluntary

14   services program not being placed because there

15   was no appropriate placement?

16              You talked earlier about

17   placement not as appropriate.  But where the CPT

18   and the local team have identified particular

19   types of placements, have you seen instances

20   where the CPT has come back and said there is a

21   waiting list and there is no possibility for

22   that kind of placement for six months or for any

23   period of time?

24         A.  Specific to a nonverbal kid, yes.

25              I guess the answer is yes.

WALTER ROCHOW, L.S.R.
P.O. Box 5416
Hamden, Connecticut 06518 (203) 281-1778

43

## CERTIFICATE

I, WALTER ROCHOW, L.S.R., A LICENSED SHORTHAND REPORTER AND NOTARY PUBLIC, DO HEREBY CERTIFY THAT I AM DULY COMMISSIONED AND QUALIFIED TO ADMINISTER OATHS IN AND FOR THE STATE OF CONNECTICUT.

I FURTHER CERTIFY THAT THE DEPONENT NAMED IN THE FOREGOING DEPOSITION WAS BY ME DULY SWORN AND THEREUPON TESTIFIED AS APPEARS IN THE FOREGOING TRANSCRIPT; THAT SAID DEPOSITION WAS TAKEN BY ME STENOGRAPHICALLY, AND REDUCED TO A TRANSCRIPT BY ME OR UNDER MY DIRECTION; THAT THE FOREGOING TRANSCRIPT IS A TRUE, ACCURATE AND COMPLETE RENDITION OF THE TESTIMONY GIVEN BY THE DEPONENT.

I FURTHER CERTIFY THAT I AM NEITHER OF COUNSEL, NOR ATTORNEY TO ANY OF THE PARTIES TO SAID CAUSE, NOR AM I INTERESTED IN THE OUTCOME OF SAID MATTER.

WITNESS MY HAND AND SEAL AS A NOTARY PUBLIC THIS 16 DAY OF Oct, 2003.

WALTER ROCHOW, L.S.R.
NOTARY PUBLIC.

MY COMMISSION EXPIRES: JUNE 30, 2006.

WALTER ROCHOW, L.S.R.
*Licensed Shorthand Reporter*
P.O. BOX 5416
HAMDEN, CONNECTICUT 06518-5416
203-281-1778
CT Lic. #004