UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| W.R, individually and on behalf of her Minor son, Joseph R; Susan K.; M.O, individually and on behalf of all others similarly situated<br>*Plaintiffs* | :<br>:<br>:<br>: CIVIL ACTION NO. 302CV429RNC<br>:<br>: |
| v. | :<br>: |
| Connecticut Department of Children and Families, and<br>Darlene Dunbar, in her official capacity as Commissioner of the Connecticut Department of Children and Families<br>*Defendants* | :<br>:<br>:<br>:<br>: May 23, 2005 |

### OBJECTION TO PLAINTIFFS' SECOND MOTION FOR CLASS CERTIFICATION

The plaintiffs are seeking for the second time an order from this court to certify this action as a class action. They assert that they represent "the proposed class of 1500 severely mentally-ill youth" in the care of the Department of Children and Families (DCF) who are seeking community-based placements. Their lawsuit alleges violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act as well as state law violations.

The principal plaintiffs are three individuals who have been in the state's care. One of the plaintiffs, Susan K., has since aged out of the defendants' care (Att.1, Aff. Mangino); another plaintiff, Omar S. who is 17, has reported that he is no longer interested in remaining in his community-based placement and has left the state (Att.

2, Aff. Moore). The third individual, Joseph R. was recently released from a hospital and placed in a state residential treatment facility, a placement that he sought and was recommended by his treatment providers at the hospital. (Att. 3, Aff. Skorupa). None of the plaintiffs is currently seeking a community-based placement from the Defendants. Therefore none of them are members of the proposed class.

Since the action was initially filed, the Child Advocate was added as a plaintiff. Her interest in this action is solely due to her statutory responsibilities to children – she makes no claim that she in fact is a potential classmember.

The plaintiffs argue that, based on discovery undertaken in this action, they can now show that they can meet the requirements for class certification and therefore this court should reconsider its previous ruling rejecting their motion for class certification. However, examining their claims and the changed circumstances of this case, it will become apparent that class certification is even less appropriate and legally justified now than it was when the court first considered the plaintiffs' motion. For this reason, class certification should again be rejected.

### I. Standards for Class Certification

Rule 23(a) of the Federal Rules of Civil Procedure lays out the prerequisites for class certification. To maintain a class action, the plaintiffs have the burden of establishing: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class and (4) the representative parties will fairly and adequately protect the interests of the class.

Even after satisfying these requirements, the plantitff must also meet the standards set forth in Rule 23(b), namely showing the action qualifies under one of the three subdivisions of that Rule. In this case, the plaintiffs allege that this action qualifies under Rule 23(b)(2) – that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Prior to ruling on a motion for class certification, the court "must perform a 'rigorous analysis' to ensure that the requirements of Rule 23 have been met." *Cohn v. Massachsetts Mutual Life Insurance,* 189 F.R.D. 209, 212 (D. Conn. 1999), citing *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161 (1982). In *Falcon,* the Supreme Court noted the bare allegation that discrimination has occurred "neither determines whether a class action may be maintained . . . nor defines the class that may be certified." *Id at 157.* Rather, an informed assessment of the parties' evidence, not merely a review of allegations, is required before a class certification may be granted.

**II. The Plaintiffs Cannot Show That the Proposed Class is Well-Defined.**

Among the objections raised initially by the defendants to class certification was failure of the plaintiffs to sufficiently define the proposed class. This same concern remains and has not been addressed by the plaintiffs in their second motion. A class must be adequately described in order for the court to recognize whether an individual may or may not fall within the class. "Rule 23 contains an implicit

3

requirement that the proposed class be 'precise, objective and presently ascertainable.'" *Burley v. City of New York,* 2005 *U.S. Dist. LEXIS 4439 (S.D.N.Y. 2005),* at *25, citing *Simer v. Rios,* 661 F. 2d 655, 669 (7th Cir. 1981). "This implied requirement is often referred to as 'ascertainability.'" *In re Methyl Tertiary Butyl Ether Products Liability Litigation,* 209 F.R.D. 323, 336 (S.D.N.Y. 2002).

In its prior ruling the court found that the plaintiffs' failure to define the class in sufficient detail was a fatal flaw to granting certification. At oral argument on the prior motion, the plaintiffs' counsel proposed that the class included "children and young adults in the care or custody of DCF who have mental illness and who require out of home placement in order to meet their treatment needs." In their second motion, the plaintiffs now assert that the class consists of "severely mentally ill youth in the care of DCF whose mental health needs cannot be met in traditional foster home placements or institutions and who are in desparate need of community based placements from DCF." This definition is essentially no different than the original description of the proposed class in the amended complaint.

The problem remains that the proposed class is amorphous and ill-defined – whether a child falls within the class will be very difficult for this court to determine. First, the question will be who determines whether the child's needs cannot be met? How severe must their mental illness be to qualify for the class? What is a community-based placement? If the child is in a specialized foster home, is that child a member of the class? At what point in time does a child become a class member?

4

If the child is on a waiting list for a group home, is that child a member of the class? What type of group home comprises a "community based placement"?

The plaintiffs attempt to clarify the class by referring to stale depositions taken nearly two years ago of DCF staff, claiming that the depositions support the conclusion there are not sufficient placements. But these depositions have nothing to do with the issue of how the class is defined. Morever, a review of the transcript excerpts does not even support the plaintiffs' proposition. Mark Frankinberger testified that he was not aware of any group homes for only one or two children (Frankinberger Dep. p. 59), Joanne Auwood testified that she was aware of one situation involving a *nonverbal* child where the possibility of a placement would be delayed for six months or longer. (Auwood Dep. p. 27) Sandra Rudin testified that she was not aware of a community-based placement for someone like Susan K. but believed there were community-based placements for children with mental health issues. (Rudin Dep. p.130-131) Thus, these depositions do nothing to clarify who is and is not in the class.

Because the class definition still leaves more questions unanswered and because determining whether a child is a member of the class will require extensive individual and highly subjective assessments, the proposed class remains largely unidentified as well as unidentifiable and therefore fails the ascertainability test. "A class whose definition hinges on subjective determinations is incompatible with Rule 23's definiteness requirement." *Burley, supra at 28*. "The court must be able to make the [definiteness] determination without having to answer numerous fact-intensive

5

questions." *Daniels v. City of New York,* 199 F.R..D. 513, 514 (S.D.N.Y. 2001). Here, the court could not easily determine whether an individual is or is not a member of the class and therefore, the plaintiffs have still not presented a sufficiently defined class to support certification.

### III. The Plaintiffs Cannot Show That the Proposed Class is So Numerous that Joinder of all Members is Inappropriate

As explained in the defendants' previous objection to class certification, the burden is on the plaintiffs to provide sufficient support for a court to find numerosity. While class size may be estimated, "mere speculation as to number of parties involved is not sufficient to satisfy Rule 23(a)(1)." *Access Now, Inc. v. Walt Disney World Co,* 211 F.R.D. 452, 454 (M.D. Fla.. 2001); see also *Demarco v. Edens,* 390 F. 2d, 836, 845 (2d Cir. 1968), *Weissman v. ABC Financial Services, Inc.* 203 F.R.D. 81 (E.D.N.Y. 2001), *Reese v. Arrow Financial Services, LLC.* 202 F.R.D. 83, 90 (D. Conn. 2001) ("the plaintiff must "reasonably estimate or provide some evidence of the number of class members.")

Without a clear definition of the class, this court has no way of ascertaining the size of the proposed class. It is apparent that this same problem confounded the plaintiffs themselves, as they can only guess at the number of potential classmembers. The baldly assert that "given the approximately 1500 youth in DCF's care in residential placement," plaintiffs have met the numerosity test. But as this court recognized at the oral argument on the earlier motion for certification, that "number" hardly proves anything. That a child is in residential placement does not prove that

their mental health needs are not being met or that they are in "desparate need" of a community-based placement. This is particularly true because, under long-standing DCF practice, a child may not be placed in a residential facility without a recommendation of a mental health professional. (Att. 4, ff. Karen Snyder ) In fact, as the plaintiffs must concede, that number includes children placed in residential facilities as direct placements by juvenile judges, not by DCF.

A similar claim of numerosity was made in *McCree v. Sam's Club,* 159 F.R.D. 572 (Mid. Dt. Ga. 1995) but the court concluded that conclusory allegations about the size of the class were insufficient. "Despite extensive discovery, Plaintiffs fail to enumerate any other individuals who fall within the class definition." *Id at 576.* Here too, the plaintiffs have not identified any other individuals who would be likely classmembers. "Where the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails." *Weissman v. ABC Financial Services, Inc.* 203 F.R.D. 81, 84 (E.D.N.Y. 2001).

Instead, they rely solely on testimony of the Child Advocate who acknowleged that she did not consider herself an expert in child mental health issues. (Att. 5, Milstein Dep. March 31, 2004, p. 14). When asked to produce files on those children that she believed were potential classmembers, she offered only 30 files but was not able to identify how any of these children would fit into the proposed class. She explained that she was not familiar with the specifics and "[i]t's not my area of expertise." (Att. 6, Milstein Dep. June 1, 2004, p. 28) She herself had not reviewed any files, could not name any child and acknowledged that she had no personal

7

information about the cases. (*Id.* p. 30). In fact, she had not even met any of the plaintiffs and was not familiar with their files. (*Id.* p. 31). The fact that the Child Advocate, a party in this action, *believed* that there were hundreds of children that would qualify for the class is not a sufficient basis to conclude the plaintiffs have demonstrated numerosity.[1]

The plaintiffs again assert the same claim that they have made in the past, namely that this court does not need to scrutinize the numerosity requirement too closely inasmuch as they are "individuals of low economic means who are dependent upon the state for aid...." Relying on *Robidoux v. Celani*, 987 F. 2d 931 (2d Cir. 1993), they contend that they would have difficulty in obtaining access to the courts and that renders joinder impracticable.  However, *Robidoux* did not involve a class of individuals who were already subject to court oversight, or had court-appointed attorneys, as this proposed class does.

In short, even if this court were to find that the class is sufficiently defined, the plaintiffs have offered nothing to this court to support a conclusion that the class is so numerous that joinder is inappropriate. Indeed, another year has gone by since the argument on the prior motion and the plaintiffs have still not added a single other child to this case nor have they identified even one proposed classmember.

---

[1] The Child Advocate's opinion was in large measure based on her conclusion that some children in residential facilities were not getting adequate treatment, were not being adequately monitored or were not "succeeding," very different issues than whether they were appropriately placed. (Milstein Dep. March 31, 2004, p. 36)

8

## IV. **The Plaintiffs cannot demonstrate that there are Questions of Law or Fact Common to the Class and that their Claims are Typical of the Claims of the Class**

The plaintiffs attempt to meet the commonality requirement by asserting their "injuries stem from the common cause of DCF's unlawful action in failing to provide them with appropriate community-based placement." (Brief, p. 10) They further bootstrap their argument by stating that their common basis is their allegations of common statutory and constitutional violations. But merely reciting the systemic allegations of their complaint does not satisfy this requirement. "Allegations of 'systemic failures' must not be read 'as a moniker for meeting the class action requirements." *Reinholdson v. Minnesota,* 2002 U.S. Dist. LEXIS 17169 (D. Minn. 2002) at *25. A recitation of systemic discrimination is hardly proof of commonality or typicality.

Moreover, a closer scrutiny of the case will demonstrate that intensive individualized fact-finding involving members of the proposed class, rather than a trial on a common set of facts, would be required, and therefore the plaintiffs cannot show commonality. *See, Cohen v. Massachusetts Mutual, supra at 213-218.* [2]

"Class certification is inappropriate where many individualized factual determinations are necessary."*Rhodes v. Cracker Barrel Old Country Store,* 2002 U.S. Dist. LEXIS 25962 (N.D. Ga. 2002). "The individualized determinations necessary to

---

[2] Although this case discussed the Rule 23(b)(3) requirement that common issues predominate over questions affecting individual class members, rather than Rule

9

resolve the claims of each plaintiff and prospective class member is the antithesis of the streamlined, group adjudication envisioned under Rule 23. " *Id* at *196. A case of this nature will by necessity require the court to review the specific conditions, evaluations and recommendations of each classmember before the court can adjudicate the case and consider the remedy to be provided. In view of the very particularized circumstances involved in each classmember's history, it is not possible to avoid such individualized determinations.

In *Cooper v. Southern Company, Georgia Power,* 390 F. 3d. 695 (11th Cir. 2004), the Eleventh Circuit determined that in an employment discrimination suit, the individualized and varied personnel decisions made by a number of different defendants' employees precluded the court from finding commonality. The court explained that because employment decisions "were based on factors that, by and large, appeared unique to each of the plaintiffs in question," class certification was inappropriate. *Id at 715.* Even among the named plaintiffs in that case, the court found "it was impossible to say that the employment histories of the named plaintiffs and the ways in which they claimed to have experienced discrimination could be fairly compared with the history or individual experiences of absent class members," or that the claims of class members shared such common features that rulings could be fashioned to fairly adjudicate the claims as a group. *Id, at 715. (citations omitted).*

Similarly in the present case, each of the plaintiffs has a unique history, where placement and treatment decisions were made by a variety of different individuals

---

23(a)(3), the same logic applies that where there are multiple individual issues, a class

considering the unique factors of each plaintiff's situation. It would be difficult for this court to find either commonality among the named plaintiffs or with absent classmembers. *See also, Paciello v. Unum Life Insurance Co.* 2002 U.S.App. LEXIS 11580 (2d. Cir. 2002).

Because the three plaintiffs themselves do not have many factual and legal issues in common, the case would become much more complicated if this court attempted to address the multiplicity of issues that would be presented by adding more plaintiffs, let alone a class of plaintiffs. A class action where each classmembers' unique case history would determine what relief, if any, they would be entitled to defies the definition of commonality.

Moreover, the present plaintiffs cannot prove typicality in that they are not representative classmembers themselves. "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001). "Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Cooper, supra at 713.* While the typicality and commonality requirement does not mandate that all classmembers have identical issues, "the named plaintiffs' claims must still share the same essential characteristics as the claims of the class as large." *Id at 714. (citations omitted).*

But this group of plaintiffs collectively do not have any claims that would be typical of the entire class inasmuch as none of them are currently seeking a

---

action can become unmanageable.

11

community-based placement and two of them are no longer in the state's care. (See Aff.) Because they don't qualify as classmembers, it would be virtually impossible for this court to conclude their claims are typical of the class.

The plaintiffs rely on several federal court cases where they claim similar classes were certified. In *Alexander A. v. Novello*, 210 F.R.D. 27 (E.D.N.Y. 2002), the plaintiffs sought certification for a class of children who were not provided with a residential treatment facility with reasonable promptness. The defendants did not contest class certification there; the court found that there was hard evidence of 200 to 400 children awaiting placement, and that only "minor variations" in individual plaintiffs' factual patterns did not defeat a claim of commonality. Here, the plaintiffs have no idea how many children might fall into the proposed class nor can they dispute that the significant differences exist among the plaintiffs' factual patterns and these differences will only be multiplied by making this a class action.

The plaintiffs also cite *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277 (N.D.Ga. 2003) and *Karen L v. Physicians Health Services*, 202 F.R.D. 94 (D. Conn. 2001), affd. 2003 U.S. App. LEXIS 21963 but both of these cases had well-defined and comprehensive proposed classes, compared to the ill-defined proposed class here. Moreover in *Karen L.*, the district court found concrete evidence of "numerous examples" of widespread systemic problems with the Medicaid managed care operations; all related to the claims made by the plaintiffs. Here, the plaintiffs have offered no such evidence; moreover, they would be hardpressed to show that they are typical members of the proposed class.

The plaintiffs appear to concede that the individual circumstances of the proposed classmembers will vary but claim that what they all have in common is "the harm each suffers ...caused by DCF's central decision-making, specifically, its decision not to provide adequate, properly staffed community-based treatment facilities." (Brief. P, 12). But if the plantiffs themselves are not currently seeking community-based treatment, then surely this court should find the plaintiffs have not met either the commonality or typicality requirement.

**V. The plaintiffs cannot show that they can adequately protect the interests of the class**

The plaintiffs contend that they meet the requirement for adequate representation because they have no conflict with the proposed class and because they are represented by a legal organization with experience in class action cases. They do not mention the fact that they no longer qualify to be in the proposed class or that most of the individuals they seek to represent already have counsel appointed for them in juvenile court as well as counsel in another federal class action case, *Juan F. v. Rell, Civ. Action H-89-859*, creating the potential for conflict.

The most serious impediment to the plaintiffs' claim that they can adequately represent the class is that none of the named plaintiffs is currently seeking relief. Two of the three plaintiffs are no longer in the state's care and the third is not currently seeking a community-based placement. None of them has a personal stake in the outcome of this litigation. Where a class representative does not qualify for

13

the relief sought, he cannot adequately represent the class. See, *Trautz et al. v.Weisman et al.*, 846 F. Supp. 1160, 1163-64 (S.D.N.Y. 1994).

Secondly, the very relief the plaintiffs are seeking here may conflict with relief ordered by the federal court in the *Juan F.* litigation. The defendants are already required to fulfill the mandates of an Exit Plan approved by Judge Nevas in *Juan F.*, which plan includes provisions for moving children from residential treatment facilities to community-based placements. (Att. 7, Exit Plan, p. 25). Under the doctrine laid out in *Olmstead v.L.C. by Zimring,* 527 U.S. 581(1999) for reviewing claims such as this, this court will be required to consider the adequacy of the state's funding of mental health resources, the exact issue presented to the Transition Task Force established under the *Juan F.* case. (Att. 8) *See, Juan F. v. Rowland,* 2004 U.S. Dist. LEXIS 1872 (D. Conn. 2004) (affirming the provision on page 4 of the Exit Plan that requires the defendants to "provide funding and other resources necessary to fully implement the Exit Plan")    This same task force has authority to review all out-of-state placements, and therefore an order regarding such placements by this court could interfere with the operation of the federally-approved Exit Plan.

Another potential conflict, if this case is certified as a class action, is with orders from state courts. The Superior Court has authority to issue orders for direct placement of youth who are declared delinquent. Conn. Gen. Stat. § 46b-140. One of the named plaintiffs has been declared delinquent and may be subject to such an order. Children who are determined to be neglected or abused have permanency plans

approved by the Superior Court; or, if they are in the defendants' voluntary treatment program, their treatment plans are subject to approval by a state probate court. Conn. Gen. Stat. §17a-11. The question may arise that the attorneys for this case will argue for certain relief for classmembers that may conflict with the position of the court-appointed attorney for the child or the child's parent.

An order that would determine placements for all classmembers would undoubtedly run the risk of interfering with the operations of the state judicial department. In short, the plaintiffs would be highly unlikely to adequately represent class-members, who are already subject to both federal and state court oversight.

Finally, because each of the plaintiffs is likely to have to face different defenses (in Susan's case, mootness due to age, in Omar's case, mootness due to leaving the state, and in Joseph's case, inappropriateness of community-based placement), none of them can adequately represent the broad class of children for whom certification is sought. "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation....[where there is] danger that absent class members will suffer if their representative is preoccupied with defenses unique to [her]" *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner and Smith, Inc.* 903 F. 2d. 176, 180 (2d Cir. 1990), cited in *Baffa v. Donaldson, Lufkin, and Jenrette Securities Corp.* 222 F. 3d 52, 59-60 (2d Cir. 2000). Here, the separate, unique issues presented by the named plaintiffs can easily overshadow the litigation, precluding vigorous representation of proposed class members.

**VI. The Plaintiffs cannot show the defendants have acted or refused to act on grounds generally applicable to the class.**

As explained above, even if the plaintiffs can show they have met the requirements of Rule 23(a), they must still qualify under one of the subdivisions of Rule 23(b). In this case, the plaintiffs assert that they have satisfied this mandate because, as they allege, the defendants have acted or refused to act on grounds generally applicable to the class. However, even reviewing the circumstances of the named plaintiffs, they cannot show that is the case.

Susan K. was placed in a community-based placement and has since aged out of the defendants' care; Omar was also placed in a community-based placement and chose to leave and move back to New York to live with his mother; and Joseph R. has recently been hospitalized and is now placed in a residential treatment facility in Connecticut, pursuant to recommendations of his treatment providers and at his own request. There is no evidence that he is inappropriately placed.

Looking at the proposed class, the plaintiffs have also failed to provide evidence that other members of this class have been similarly aggrieved. To date, the plaintiffs have offered not a single example of a potential classmember whose legal rights have been violated. Moreover, they rely on stale allegations and depositions that are nearly two years old, completing ignoring the fact that since the lawsuit was

filed, the defendants have substantially increased the placement options and services available to serve mentally ill children in community settings. (See Snyder Aff.)

The plaintiffs simply cannot show that the defendants generally do not have community-based placements available to mentally ill children in the state's care. The defendants have foster homes, specialized foster homes, group homes, therapeutic group homes, as well as wide variety of community-based mental health services. (See aff. Karen Snyder). Seventeen new therapeutic group homes are being developed, bringing the total of all group homes to 38. In addition, DCF expects to expand the number of community-based treatment options for mentally ill children as a result of a significant influx of funding in this area. (See Aff. Snyder).

Furthermore, the allegation that the defendants have been acting or refusing to act on grounds generally applicable to the class is refuted by the fact that DCF policy requires a mental health evaluation and recommendation for placement before any child is placed by the defendants in a residential treatment facility and by the KidCare mission statement adopted by DCF with the Department of Social Services to "strengthen families' capacity to help children with behavioral health needs, with a strong preference to deliver and manage services within the local community." *Id.*

Finally, the plaintiffs cannot demonstrate a pattern of class-wide misconduct by the defendants for the simple reason that decision-making regarding placements is under the scrutiny of another federal district court monitor. Outcome Measure 15 of the Exit Plan requires that "[a]t least 80% of all families and children shall have all their medical, dental, mental health and other service needs provided as specified in

17

their most recently approved clinically appropriate treatment plan." (Exit Plan, p. 21). Outcome Measure 19 requires "[t]he number of children placed in privately operated residential treatment care shall not exceed 11% of the total number of children in DCF out-of-home care. The circumstances of all children in-state and out-of-state residential facilities shall be assessed after the Court's approval of this exit plan on a child specific basis to determine if their needs can be met in a less restrictive setting. The placement of any additional children out-of-state after the approval of this plan shall require the approval of the Transition Task Force." (Exit Plan, p. 25)

Because a federal court monitor is overseeing the department's responsibilities in this area, this court cannot conclude the defendants have acted or refused to act on grounds generally applicable to the proposed class or that injunctive relief with respect to the proposed class as a whole is appropriate. And to the extent the plaintiffs dispute these placements, their issue should be addressed to the *Juan F.* monitor, not to this court.

### Summary

In short, the plaintiffs' have not proposed a well-defined class, not have they presented evidence that they can meet the numerosity, typicality or commonality tests. They also do not demonstrate that they could adequately represent the proposed class or that the defendants have acted or failed to act on grounds generally applicable to the proposed class, making class-wide relief appropriate. For all these reasons, the plaintiffs' request for certification should be denied.

DEFENDANTS

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Susan T. Pearlman
Assistant Attorney General
Federal Bar No. 06338
110 Sherman Street
Hartford, CT 06105
Tel: (860) 808-5480
Fax: (860) 808-5595