UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| W.R., ET. AL. | : | CIVIL ACTION NO. |
| *Plaintiffs* | : | 3:02CV429(RNC) |
| | : | |
| v. | | |
| | | |
| CONNECTICUT DEPARTMENT OF | : | |
| CHILDREN and FAMILIES, ET AL., | | |
| | | |
| *Defendant* | : | July 7, 2005 |

## DEFENDANT'S SURREPLY

**INTRODUCTION:**

Plaintiffs' Reply to Defendants' Objection to Plaintiffs' Second Motion for Class Certification (hereinafter "Plaintiffs' Reply") asserts that the class is well-defined and easily ascertainable because there exist "objective criteria" to identify class members. The Plaintiffs' analysis, however, misconstrues what the case law considers "objective criteria" and ignores the requirement that the class be easily ascertainable, without individualized fact intensive inquiries to identify class members

Moreover, the plaintiffs cannot satisfy the requirement of Fed. R. Civ. P. 23(b)(2), that "the opposing party acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The record set forth by the Defendants in their Objection regarding the efforts DCF has and is making to provide community based placements for mentally ill children is undisputed.

Thus, there is no basis for a continuation of a class action suit where the named plaintiffs are no longer representative of the class, no other representative plaintiffs have been identified and the issue of DCF's provision of less restrictive placements to all of the proposed class members is being addressed by DCF and the Consent Decree of *Juan F.*.

**I.     The Class Members Cannot Be Easily Ascertained:**

"While Rule 23(a) does not expressly require that a class be definite in order to be certified [,] a requirement that there be an identifiable class has been implied by the courts." *Zapka v. Coca-Cola Co.,* 2000 U.S. Dist. LEXIS 16552, No. 99 Civ. 8238, 2000 WL 1644539, at *2 (N.D. Ill. Oct. 27, 2000)(quoting *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977)(quotation marks omitted)). This implied requirement is often referred to as "ascertainability." See *Van West v. Midland Nat'l Life Ins. Co.*, 199 F.R.D. 448, 451 (D. R.I. 2001); *In re Copper Antitrust Litig.*, 196 F.R.D. 348, 358 (D. Wis. 2000)." *In Re: Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation,* 209 F.R.D. 323, 336 (2002).

In order for an identifiable class to exist its members must be ascertainable by reference to objective criteria. *Zapka v. Coca-Cola Co., supra.* Subjective criteria such as a class member's state of mind renders the class unascertainable. See *Zapka, supra* at *3 (declining to certify class where definition referred to state of mind). Class members need not be ascertained prior to certification, but "the exact membership of the class must be ascertainable at some point in the case." *MTBE, supra* at 337, citing, *Rios v. Marshall,* 100 F.R.D. 395, 403 (S.D.N.Y. 1983). Additionally, it must be

"administratively feasible for a court to determine whether a particular individual is a member" of the class. *Rios supra,* 100 F.R.D. at 403 citing 7 Wright & Miller, Fed. Prac. & Proc. § 1760 at 581 (1972). "The Court must be able to make this determination without having to answer numerous fact-intensive inquiries." D*aniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001).

The Plaintiffs' Reply cites to the *MTBE* decision to support the claim that the class in this case can be discerned through objective criteria. However, in *MTBE* the court described objective criteria as follows: "Either a well has MTBE or it does not; either an individual has an ownership interest in a well or she does not; either her property is located in a class state or it is not. Thus, this proposed class meets Rule 23(a)'s implied requirement that it be theoretically "ascertainable." *MTBE* at 337.

The proposed class in this case: "Severely mentally ill youth in the care of DCF whose mental health needs cannot be met in traditional foster home placements or institutions and who are in desperate need of community based placements from DCF," cannot be ascertained by asking simple yes or no questions about the existence or non-existence of an objective fact. The inquiry into whether or not a child is in "desperate" need of a community based placement is a complex, individualized and fact intensive task.

The cases cited by the plaintiffs to support their request for certification utilize clear objective criteria, compared to the analysis the plaintiffs are asking the court to undertake in this case. In the *Marisol* case, the district court had to identify subclasses pursuant to the Court of Appeals ruling. *Marisol A. v. Giuliani,*

3

126 F.3d 372, 379 (2d Cir. 1997). The subclasses identified pursuant to the ultimate settlement were (1) children where a report of abuse or neglect had been made, (2) children where abuse or neglect was "indicated" after a report and (3) children in child welfare custody. *Marisol A. by Forbes v. Giuliani*, 185 F.R.D. 152, 157 (S.D.N.Y 1999). Whether a report of abuse or neglect has been received or substantiated or whether a child is in custody are objective criteria that can probably be easily established by review of a database.

The *Deshawn* case involved "all children arrested on possible delinquency charges who are summoned to appear at the probation service in a Family Court building and interrogated by members of the New York City Police Department Detective Squad." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 342 (2d Cir. 1998) Whether or not a child was arrested, summoned to appear at probation services and interrogated by detectives is also based upon objective and easily obtained facts.

The *Alexander A.* case cited by the plaintiffs concerned a class of "[a]all New York State children with psychiatric disabilities who have been or will be found *by defendants* to be appropriate for placement in a Residential Treatment Facility and who have not been or will not be provided with such placement with reasonable promptness." *Alexander A. v. Novello*, 210 F.R.D. 27, 29 (E.D.N.Y 2002). Under this class definition, plaintiffs have or will be qualified for inclusion <u>by the defendants</u>. Certification of the class in that case did not require that the court ascertain its members.

4

The plaintiffs cite a DCF report, entitled "Draft Residential Treatment Programs; Levels of Care Indicators" to bolster their claim that the proposed class members can be easily identified.  In fact, that report does not purport to identify any children; rather the draft report was written to describe levels of care. Even relying on that report, it becomes evident that assessing a child's "need" for community-based placement is a highly complex, subjective[1] and intensive process, involving examining not only the child's history but the family's history; multiple factors as well as the views of professionals must be considered. Clearly this is not the type of "objective" test that the courts envisioned.  Although this assessment can and is being done for purposes of placing children, it is a subjective and fact intensive exercise, not conducive to defining or ascertaining a class for purposes of legal action.

## II.     The Plaintiffs Have Not Met Their Burden to Establish Numerosity.

> '[A] class action may proceed upon estimates as to the size of the proposed class,' *In re Alcoholic Beverages Litig.,* 95 F.R.D. 321, 324 (E.D.N.Y. 1982), and 'courts may 'make common sense assumptions' to support a finding of numerosity.' *Wiessman v. ABC Fin. Servs., Inc.*, 203 F.R.D. 81, 2001 U.S. Dist. LEXIS 15489, 2001 WL 1141332, at *3 (E.D.N.Y. Sept. 22, 2001) (quoting *Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69 (E.D.N.Y. 2000)). Generally, 'numerosity is presumed at a level of 40 members.' *Consolidated Rail Corp. v. Town of Hyde Park* , 47 F.3d 473, 483 (2d Cir. 1995).

*Alexander A. supra* at 33.

In the Plaintiffs' Reply they refer to the following figures to support a finding of numerosity: 6,327 children in DCF care, 258 in DCF facilities, 1,079 in residential care, 160 in safe homes, 123 in shelters, 301 in group homes, 108 in

---

[1] Among the factors to be considered in selecting children for group homes, according to this report, is whether the child is "limited in forming natural supportive relationships" (Plaintiffs' Reply Attachment B, Level II: Family/Environmental) - a clearly subjective assessment.

5

independent living and 381 in out of state care.  The plaintiffs must concede that they have no idea how many of these children are already part of the *Juan F. class and therefore should not be members of any other class action involving placements.*

Further, these figures do not provide any assistance in estimating the number of actual class members,, how many would be better suited to a community based placement, or how many of the placement facilities listed actually provide a small group home therapeutic setting.

In *Alexander A. supra*, the court found the following facts to support a finding that the plaintiffs had met their burden of establishing numerosity:

> "in a report issued in December 1999, by the Citizens' Committee for Children of New York Inc., that organization found that "according to the most recent data available, 387 children with serious emotional disturbance are certified by the New York State Office of Mental Health (SOMH) as needing placement in a hospital-like RTF and are waiting for an available bed" … at the April 10, 2002 status conference in this case with Magistrate Judge Mann, defendants' counsel represented to the court that, at that time, more than 200 children were on the waiting list for an RTF placement. Moreover, the record supports plaintiffs' contention that for the past few years, the waiting list has contained an average of 200 children".

*Id.* at 33.  There the court could rely on specific documented figures reflecting actual class members.   Here,  the plaintiffs have been unable to provide any realistic estimate of the number of class members. Nor have the plaintiffs been able to identify one additional plaintiff that fits their proposed definition.

It is undisputed that DCF has increased community based services throughout Connecticut through the Kidcare program to prevent the need for more restrictive placements (Affidavit of Snyder ¶'s 14 – 21: Exhibit 1).  It is also undisputed that Connecticut currently has 21 group homes and is developing 17

6

more therapeutic homes (Affidavit of Snyder ¶'s 20 & 21;) and that there are approximately 301 children being served in various types of group. (Plaintiffs' Reply p. 5).  Many of the children in placement are in the most appropriate setting.  In light of the above, the plaintiffs cannot meet their burden to establish that there is an identifiable and sizeable class of children denied community-based placements by DCF due to their severe mental health issues.  The plaintiffs have engaged in "mere speculation as to the number of parties involved" and have, therefore, not satisfied the numerosity requirement. *Access Now Inc. v. Walt Disney World Co.,* 211 F.R.D. 452, 454 (M.D. Fla. 2001).

### III.  The Plaintiffs Are Not Adequate Representatives for the Purported Class

The Plaintiffs acknowledge that the case is likely moot as to Susan K. and Omar S, because neither are seeking relief from the defendants at this time.  However, the plaintiffs argue in their reply that the "relation-back" doctrine saves this action from being deemed moot as asserted by the Defendants' in their objection to class certification.  Through no action by the defendants, these two plaintiffs are no longer qualified to represent the class.   Because no class had been certified at the time the case became moot, the court must consider that these plaintiffs cannot pursue the case as they lack standing.  See, *Cruz v. Farqueharson,* 252 F. 3d 530, 534 (1st Cir. 2001)  ("Despite the fact that a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved….Only when a class is certified

7

does the class acquire a legal status independent of the interest asserted by the named plaintiffs….")

Moreover, they do not dispute that Joseph is not clinically ready to be moved to a less restrictive placement at this time, making him also ill-suited to represent the class.   They argue instead that eventually he may be ready for such a move;  however, that's purely speculative and should not be the basis for this court to certify the class. Since none of the individual plaintiffs even falls within the definition of the proposed class, they certainly cannot adequate represent the class.

IV. **The Plaintiffs Have Not Met Their Burden To Establish That The Defendants Have Acted or Refused To Act on Grounds Generally Applicable to The Class.**

Although, the court must accept all of the allegations in the pleadings as true on a motion for class certification and avoid conducting a preliminary inquiry into the merits, the decision whether to certify a class "'may involve some consideration of the factual and legal issues that comprise the plaintiff[s'] cause of action.. " *MTBE supra* at 335, (citations omitted); See also *Cohn v. Cohn,* 189 F.R.D. 209, 212 (Conn. D.C.1999); D*aniels v. City of New York*, 198 F.R.D. 409, 413 n.5 (S.D.N.Y. 2001)(noting that the court need not rely on the bare allegations but "may consider the range of proof necessary to support class certification").

Rule 23(b)(2) requires a court to examine the appropriateness of injunctive relief with respect to the class as a whole. Pursuant to Rule 23(b)(2), a class action is maintainable if "the party opposing the class has acted or refused to act

8

on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *MTBE* at 341. The plaintiffs must allege more than a common course of conduct, they must show that injunctive relief is appropriate with respect to the class as a whole. See, *MTBE* at 342. Here the representative plaintiffs cannot establish maintainability under Rule 23(b)(2) because they cannot show a refusal to act on grounds generally applicable to a class of children as a whole.

      DCF in fact is developing more small group homes. DCF's work towards securing more group homes is evidenced by the RFP's currently pending (Plaintiffs' Reply Attachment C); DCF is developing 17 additional therapeutic group homes; and DCF currently has 21 group homes operating in Connecticut. (Affidavit of Snyder ¶'s 16, 20 – 22). Given the KidCare focus on community supports for children and families with mental health needs and the recognition that enhancement of these systems will reduce the number of children in more restrictive settings, the plaintiffs cannot meet their burden to establish that DCF has acted or refused to act on grounds applicable to the class or that injunctive relief is necessary to redress the alleged past violations under the Rehabilitation Act or the ADA.

      Moreover, the *Juan F.* Consent Decree and its Exit Plan as summarized in the "Positive Outcomes for Children" ("POC") (attached as Exhibit 2) creates extensive overlap between its class and the proposed class in this case and addresses the issues for which the plaintiffs seek redress in this case. The Plaintiffs in *Juan F.* alleged: "Defendant failed to ensure that all children in

[DCF's] care receive[d] adequate medical and mental health assessments and treatment and adequate and consistent parenting and nurturance, and [they failed] to provide specialized substitute care placement for all children with special needs." (P. 2 of *Juan F.* Complaint).  The allegations in the current complaint are essentially the same and, based upon the proposed order contained on page 9 of the Plaintiffs' Reply, the relief they seek is virtually identical to the relief that has been fashioned pursuant to the Exit Plan and the POC.

The plaintiffs represent to the court in their reply brief that "certification of the WR class will not interfere with any of the outcome measures of [*Juan F.*]." (Plaintiffs' Reply p. 9).  This assertion by the plaintiffs defies reason given the fact that the order they propose requiring DCF "to develop and implement an array of community-based systems of mental health care to address the needs of the putative class" is precisely what the Exit Plan in *Juan F.* requires.  DCF's development of community-based systems to address the needs not only of the putative class here but of all children in DCF care is being monitored and controlled by the Transitional Task Force ("TTF") assigned to implement the Exit Plan.  The TTF not only oversees the agency's work to achieve the plan but also has the authority to "provide funding and other resources necessary to fully implement the Exit Plan." *See, Juan F. v. Rowland,* 2004 U.S. Dist. LEXIS 1872 (D. Conn. 2004) (affirming this provision of the Exit Plan).

The plaintiffs also represent to the court that "[m]any putative class members, such as those in the voluntary services program or youth over the age

10

of eighteen, do not even fall within the *Juan F.* class." These children are clearly beneficiaries of the *Juan F.* Exit Plan. Outcome measure 19 of the Exit Plan "Residential Reduction" as set forth in the POC covers all children in DCF care, including voluntary cases. The goal of reducing the number of out of home placements in residential care to 11%, necessarily requires DCF to expand its in state and community based services and placements to ensure a greater availability of less restrictive placements. Outcome Measures 20, 21 and 22 all provide relief for proposed class members by ensuring children entering DCF care receive comprehensive evaluations to determine their needs, including appropriate placement; that children aging out of care, i.e. over 18, achieve independence skills; and that children with ongoing mental health needs are properly transitioned to DMHAS or DMR. These goals mirror the complaints in the current action and apply to all putative class members.

     As set forth above and through the Affidavit of Karen Snyder, DCF has undertaken steps to expand and vary its community based treatment options for children with mental health needs and they are being closely monitored by the Federal Court to ensure that improvements in placements and outcomes for all children receiving services from DCF occur. Any orders issued in this case will necessarily be cumulative of and interfere with the decision-making responsibilities of the Transition Task Force, execution of the Exit Plan and achievement of all the Outcome Measures. Therefore, not only have these individual plaintiffs lost standing to seek prospective relief due to their claims becoming moot, the prospective relief they are seeking for the class is currently

being carried out by DCF and monitored by the Federal Court pursuant to the *Juan F.* Exit Plan. All of the plaintiffs, including Joseph R., are benefiting from those existing orders and as such class certification is not necessary. See, *Galvan v. Levine,* 490 F.2d 1255 (2d Cir.), cert. denied, 417 U.S. 936 (1973).

Pursuant to the court's authority to exercise "broad discretion in deciding whether to certify a class" and the pragmatic considerations that bear upon a determination of whether the plaintiffs' have proven that certification is warranted, class certification should be denied in this case. *Cohn v. Cohn,* 189 F.R.D. 209, 212 (U.S.D.C. Conn. 1999).

Wherefore, the Defendants respectfully request that the Plaintiffs' Second Motion for Class Certification be denied.

                                        DEFENDANTS

                       BY:   RICHARD BLUMENTHAL

                       BY:   _____
                              Carolyn Signorelli,
                              Assistant Attorney General
                              Federal Bar No.ct 17534
                              55 Elm Street, 3rd Fl. Annex
                              Hartford, CT  06l06
                              Tel: (860) 808-5160
                              Fax: (860)808-5384
                              Email:Carolyn.Signorelli@po.state.ct.us