UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| W.R, individually and on behalf of her Minor son, Joseph R; Susan K, M.O, individually and on behalf of all others similarly situated 302CV429RNC : *Plaintiffs* : : v. : : Connecticut Department of Children and Families, and Darlene Dunbar, in her official capacity as Commissioner of the Connecticut Department of Children and Families : *Defendant* : | CIVIL ACTION NO. May 20, 2005 |

AFFIDAVIT OF KAREN SNYDER

I, Karen Snyder, being duly sworn, state:

1. I am the Chief of Program Operations for the Department of Children and Families.

2. I have worked in the mental health field for 25 years. I have been Director of Operations at the Department of Mental Health and Addiction Services and executive director of the North Central Connecticut Mental Health Services. I have a masters degree in clinical psychology.

3. In my current position, I am responsible for directing the work of Bureau of Child Welfare, the Bureau of Adolescent Services, the Bureau of Adoption and Interstate Compact Services, and the Bureau of Behavioral Health, Education and Medicine.

4. Among my duties is to oversee placement of children in residential treatment facilities; a central placement team, comprised of mental health specialists within DCF, reviews all cases of children where residential treatment is recommended.

5. Before a child is placed in any residential treatment facility, the central placement team determines whether such a placement is recommended by the child's therapist or other mental health professional. A mental health assessment is required before any child is placed in a residential treatment facility.

6. In addition, further steps are taken to consider whether a less restrictive placement would be more appropriate. Specifically, local mental health consultants working for DCF review the child's history to assess the need for such a placement.

7. For children involved with the juvenile justice system, the directors for juvenile justice and for behavioral health, along with myself, also review each case to consider whether other services could be made available to avoid placing the child in a residential treatment facility.

8. The department is currently subject to a federal consent decree, in *Juan F. v. Rell;* under that decree, an Exit Plan has been adopted by the federal district court, containing criteria by which DCF will be evaluated by a court monitor.

9. The Exit Plan requires DCF to obtain the approval of the transition task force established by the federal court before any child who is a member of the *Juan F.* class may be placed out-of-state in a residential treatment facility. The Exit Plan also requires DCF to reduce the number of children placed in residential treatment facilities.

10. To carry out the obligations outlined in the Exit Plan, DCF, in May, 2004 adopted a Positive Outcome for Children Plan (POC plan). The POC Plan resulted in requests for proposals for group homes, family support teams, treatment foster care, treatment group homes alternatives to hospitalization, flexible funding to "enhance the ability of local communities to service children in less restrictive, more local settings."

11. The Department asked for "creative and innovative proposals from providers that are designed to help…meet [DCF's] goal of returning children to Connecticut who are currently out-of-state; to assure that fewer children are placed in residential care and that no child who is removed from his or her home or community remains in an institutional setting for any longer than is absolutely necessary."

12. In September, 2004, DCF also filed a Child and Family Service Plan with the Administration for Children and Families, U.S. Department of Health and Human Services. This five-year plan is required for states that utilize federal funds to help defray the costs of foster care, under the Child Abuse Prevention and Treatment Act.

13. The Service Plan explains in more detail how the department will carry out its obligations under the Exit Plan, establishing target numbers for each office to reduce the number of children placed in residential treatment facilities; using a private non-profit agency to work with each area office to identify children ready for discharge from residential facilities who require community-based services, and assessing needs for expanded community-based programs to prevent children with mental illness from leaving their community.

14. DCF adopted a KidCare mission statement, with the Department of Social Services to strengthen families' capacity to help children with behavioral health needs, with a strong preference to deliver and manage services within the local community.

15. The Department does not have a policy preventing children with serious mental illness from being placed in community-based placements. The department's policy is to provide a broad variety of community-based mental health services to such children and their families to allow them to remain in their communities.

16. DCF offers a multitude of community-based mental health services including: therapeutic foster homes, flexible funds to be used to keep children at home or in foster care, therapeutic group homes, mentoring, etc. The Service Plan also provides a listing of the various types of community-based programs offered to children who are mentally ill and their families. The list includes: care coordination, emergency mobile services, family advocacy, intensive home-based therapy, outpatient adolescent substance abuse treatment, extended day treatment, crisis stabilization beds, and outpatient mental health treatment at child guidance centers.

17. Currently the KidCare budget, which provides many of the community-based mental health services, is approximately $23 million and covers extended day treatment, crisis stabilization, emergency mobile crisis, 59 local care coordinators, home-based therapy, family advocacy, and related services.

18. DCF has utilized both state and federal funds to expand community-based services. Federal community mental health block grant funding, provided by the Substance Abuse and Mental Health Services Administration (SAMHSA) of the Department of Health and Human Services has been used most recently for in-home therapy.

19. DCF was awarded a 6 year, $9 million dollar grant from SAMHSA to be used for the "Partnership for Kids Project" in Bridgeport, to implement a school-based system of care collaborative. Care coordinators were hired for five schools to help develop and implement special treatment plans for mentally ill children to integrate school services and community services for these children. Additional care coordinators are planned, if further federal funds are made available.

20. As part of this expansion of community-based services, DCF is developing 17 new therapeutic group homes. In March, 2005, the department issued an Request for Proposals for the development of "level 1.5" and "level 2" group homes for youth "who may have required psychiatric hospitalizations, are at increased risk for psychiatric hospitalizations or require clinical services of different intensities in a small structured setting."

21. As a result of this request, DCF expects to significantly expand the number of therapeutic foster homes as well as group homes and support teams to maintain children with their biological or foster family

22. Currently DCF has 21 group homes.

*Karen Snyder*
Karen Snyder

Subscribed and sworn to before me on the 20th day of May, 2005.

_____
Notary Public/Commissioner of the Superior Court