cases. This is simply not true. DCF has line items in its budgets for children who are placed in shelters, in residential facilities, and in foster care. [Ex. 24, Pl. Rule 56(a)2 Statement, State Spending Plan, 2005]. Thus, the issue of undue hardship remains a genuine material fact in dispute.

**E.**    **DCF's Proposed Development of 41 Therapeutic Group Homes Does Not Satisfy Defendants' Obligation for a Reasonable Accommodation.**

In its memorandum, DCF has noted that it will develop 41 group homes over the next two years. [DCF SJ Brf. at 26]. DCF cites to affidavits of its employees without any substantiating documentary evidence to support its statements. *Id.* There is no evidence regarding the types of group homes, whom they would serve, how many individuals would reside in each home etc. Since there are currently approximately 1,500 children in residential facilities, even if the group homes are built, they would house only a minimal number of those residentially placed. [DCF SJ Brf. at 26].

**F.**    **Summary Judgment Should Not be Issued for DCF as it Has Not Met its Regarding the Defenses it Has Raised.**

**1.**    **Pendant Jurisdiction Claim**

DCF appears to concede that its argument seeking dismissal of plaintiffs' state law counts is contingent upon dismissal of plaintiffs' federal claims. [DCF SJ Brf at 49, *citing United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)]. In pursuing its theory, DCF fails to note that, unlike the situation in *Baylis v. Marriott Corp.,* 843 F.2d 658 (2nd Cir. 1988), none of plaintiffs' federal law counts have been dismissed by this court. *W.R. v. Connecticut Dept. of Children and Families,* 2003 WL 1740672, *1-2 (D.Conn.) Further, even *Bayliss* notes that the Supreme Court

has modified the position it initially took in *United Mine Workers v Gibbs* regarding dismissal of state law claims once all federal claims have been dismissed: "[L]ater decisions [of the Supreme Court] indicate that dismissal of the state claims is not absolutely mandatory." *Baylis 843* F.2d 658, *citing Rosado v Wyman*, 397 U.S. 397 (1970); *Carnegie-Mellon University v Cohill*, 484 U.S. 343 (1988). While courts should normally decline to hear pendent claims *if* to do so would work an injustice between the parties, waste judicial resources or generate needless decisions of state law, that does not mean the state law claims should be dismissed as a matter of course. *Miller v Lovett*, 879 F.2d 1066, 1071-72 (2nd Cir 1989) Rather, "given advantages of economy and convenience and no unfairness to litigants, *Gibbs* contemplates adjudication of these claims." *Id* at 1072. In deciding whether to exercise pendant jurisdiction over state law claims, one of the most significant factors a court should consider is the interrelationship between the state law claims and federal policy. *Id* Such as, in this case, discrimination on the basis of disability.

DCF then argues by reference back to its Motion to Dismiss, that the court should decline to accept supplemental jurisdiction to consider pending state law claims. [DCF SJ Brf at 49-50] Those pending matters, as identified in DCF's prior brief, were (1) an appeal by Susan K. in state court; (2) a neglect petition in juvenile court regarding Omar; and (3) a probate court proceeding regarding Joseph R. Of those matters only the matter regarding Joseph R. remains open. Susan K.'s case was decided two years ago, *In re Shonna K.*, 77 Conn.App. 246, 822 A.2d 1009 (2003), and Omar, who was committed to DCF in 2001, is now 18 years old and there is no pending controversy in his juvenile court case. Joseph R. receives voluntary services from DCF and the probate court reviews his treatment plan annually.

24

### 2. Younger Abstention

Although referring back to its Memorandum in support of Motion to Dismiss several times in its summary judgement brief, DCF appears to have conceded that the *Younger* Doctrine of abstention[9] does not apply to this case as it does not mention it in the current brief. [DCF SJ Brf.] Even if DCF's reference back to it motion to dismiss were interpreted to include its prior *Younger* argument, the Supreme Court has made it clear that *Younger* abstention applies only when federal courts are asked to *interfere* with pending state proceedings. *Younger*, 401 U.S. 37 (1971). Subsequent related federal court decisions accordingly limit the application of the *Younger* abstention to instances where federal courts are asked to *enjoin* pending state proceedings. *Williams v. Lambert*, 46 F.3d 1275, 1282 (2nd Cir. 1995)(court did not abstain where plaintiff had not requested an injunction of state proceedings); *Rio Grande Community Health Center, Inc. v. Rullan,* 397 F.3d 56, 68-69 (1st Cir. 2005)(decline of abstention affirmed despite pending parallel state action regarding administration of state's Medicaid program). Consequently, the *Younger* abstention doctrine does not apply to the instant case since no order is sought by plaintiffs here that would in any way enjoin any ongoing judicial or administrative proceeding.[10]

---

[9] *Younger v Harris*, 401 U.S. 37 (1971).

[10] Defendants previously claimed that *Younger* abstention barred plaintiff Joseph R.'s claims, however, the probate court's jurisdiction to address matters when and if they come before it regarding Joseph R. will not be disrupted by any relief ordered by the federal court. Probate Court does not have jurisdiction over Joseph R.'s federal claims as it is a court of limited jurisdiction. *See In Re Adoption of Baby Z*, 247 Conn. 474, 485 (1999); *see also* Conn. Gen. Stat. 45a-98 (enumerating the general powers of the probate court).

### 3. Burford Abstention does not apply to this case.

Defendants cite to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), to argue that the court

should abstain from deciding this case. [DCF SJ Brf. at 45]. In making this argument, however,

defendants overlook long-standing case law relating to *Burford* abstention.

In determining the applicability of *Burford* abstention, a court should consider the

following factors: "(1) the degree of specificity of the state regulatory scheme, (2) the necessity

of discretionary interpretation of state statutes, and (3) whether the subject matter of the litigation

is traditionally one of state concern." *Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus,*

60 F.3d 122, 127 (2nd Cir. 1995) *citing Bethpage Lutheran Serv., Inc v. Weicker*, 965 F.2d 1239,

1243 (2nd Cir 1992). Federal courts have such a strict duty to exercise the jurisdiction conferred

on them by Congress, that the power to dismiss represents an extraordinary and narrow exception

to that duty to adjudicate controversies properly before them. *Quackenbush v. Allstate Insurance*

*Company*, 517 U.S. 706, 707 & 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Due to that narrow

exception, courts may dismiss cases under the *Burford* abstention doctrine only (1) if they

present "difficult questions of state law bearing on policy problems of substantial public import

whose importance transcends the result in the case then at bar", or (2) if its adjudication in a

federal forum would be disruptive of state efforts to establish a coherent policy with respect to a

matter of substantial public concern." *Id. citing Colorado River Water Conservation Dist. v.*

*United States,* 424 U.S. 800, 814, 96 S. Ct. 1236, 1244-45, 47 L.Ed.2d 483 (1976). "There is

little or no discretion to abstain in a case which does not meet traditional abstention

requirements." *Dittmer v. County of Suffolk*, 146 F.3d 113, 116 (2nd Cir. 1998)(vacating

abstention in case challenging the constitutionality of the Long Island Pine Barrens Act despite district court's conclusion that it should abstain due to extensive history of state efforts to develop a land use and environmental protection policy regarding the Barrens area).

The question before this court is whether the facts in this case rise to the level of dismissal under *Burford*. The *Burford* court held that "dismissal was appropriate because the availability of an alternative, federal forum threatened to frustrate the purpose of the complex administrative system that Texas had established," *Quackenbush*, 517 U.S. at 725.[11] In the instant case, however, there is no such specialized system in Connecticut which addresses discrimination in the community based placement needs of children and youth with severe mental health issues. DCF has presented much information showing its response to the *Juan F.* and *Emily J.* settlement agreements. [DCF SJ SUF 113-143]. However, like *Dittmer v. County of Suffolk*, where the state had a complex and comprehensive statute and regulations and involved an intensely local problem, the "danger which *Burford* abstention avoids - creating an opportunity to overturn a prior state court or agency determination by seeking federal court review, thereby disrupting a state administrative apparatus - is simply not present in this case." *Dittmer*, 146 F.3d at 117. *Burford* does not authorize the deference to abstain in this case. "*Burford* is concerned with protecting complex administrative process from *undue* federal interference, but it does not require abstention whenever there exists such a process, or even in all cases where there is a

---

[11] The main issue before the *Burford* court was the reasonableness of an order issued by the Texas Railroad commission granting a permit to drill oil wells which the plaintiff sought to overturn. Burford, 319 U.S. 315 (1943).

potential for conflict with state regulatory law or policy." [emphasis in original] *Dittmer*, 146

F.3d at 117 *quoting  New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491

U.S. 350, 360,109 S.Ct. 2506,2514, 104 L.Ed.2d 298(1989). Unlike the instant case, federal

court involvement in *Burford* was undue there because those plaintiffs there sought federal

review based primarily on state law claims as a means of avoiding an order issued pursuant to a

constitutionally sound administrative scheme. *Dittmer*, 146 F.3d at 117.  In the case at bar,

plaintiffs seek review based primarily on federal claims of discrimination based on their severe

mental health issues. There are no orders which plaintiffs seek to avoid. Just as the *Dittmer*

plaintiffs filed a "systemic challenge" alleging constitutional violations, these plaintiffs seek

redress of systemic discrimination. *Id.; Cf Bethpage Lutheran Service, Inc. v. Weicker*, 965 F.2d

1239 (2d Cir. 1992)(abstention upheld where case did not involve "systemic challenges" but

rather a claim by a single medicaid provider challenging the reasonableness of its rate which had

been set by state officials).

    DCF's motion to dismiss based on the *Burford* abstention doctrine was previously denied

when this court concluded that the record did not provide sufficient information to permit a

determination whether and to what extent exercising jurisdiction would be disruptive of the

state's effort to restructure and reform its mental health services. *W.R. v. Connecticut Dept. of*

*Children and Families,* 2003 WL 1740672, * 4 (D. Conn. 2003),  DCF's *Burford* argument

pursuant to its summary judgment motion is addressed only to the plaintiff, Joseph R. and is

based on a claim that federal review of Joseph's R.'s claims would be disruptive of its efforts to

establish a coherent policy regarding community mental health services for children. [DCF SJ

Brf. at 46-47] Although DCF asks the court to abstain from hearing this entire case and contends

Joseph R. could resolve his state claims in state courts, it provides no authority for why the court

should decline to exercise jurisdiction over Joseph R.'s significant federal statutory and

constitutional claims. Further, DCF has provided absolutely no explanation, how any decision in

this case regarding Joseph R.'s state statutory and Connecticut constitutional claims would

constitute undue intervention by a federal court that would create the conflicts in the

interpretation of state law dangerous to the success of state policies, as barred by *Burford*.

Despite the fact that DCF has provided a large amount of exhibits and affidavits in

support of its claims regarding the "sea change" it claims is occurring in the DCF, the quantity of

documents does not mean that review by the federal court concerning plaintiffs claims would be

disruptive of the state efforts to bring DCF in compliance with the *Juan F.* Exit Plan. DCF has

produced no evidence of a sufficiently complex *Burford* style state regulatory scheme to weigh in

favor of abstention, no regulations containing broad terms requiring interpretation by a state

agency or experts in the field, nor information indicating such scheme is of unique importance to

the state of Connecticut. *See Planned Parenthood, Planned Parenthood of Dutchess-Ulster, Inc.*

*v. Steinhaus*, 60 F.3d 122, 127 (2nd Cir. 1995).[12] Therefore, there should be no conflicts in the

interpretation of state law, dangerous to the success of state policies as was the concern in

*Burford.* While the state has an interest in the ensuring its reform occurs, such factor is not

---

[12]Abstention vacated after court found state law and regulations regarding procedure to use in multi-year comprehensive plans for provision of social services that each social service district was required to create to be insufficiently complex to meet the *Burford* test. *Planned Parenthood*, 60 F.3d at 127.

enough to justify abstention. *Id.*

### 4.    Plaintiffs have not failed to exhaust their administrative remedies.

This court previously denied DCF's motion to dismiss for failure to exhaust because it

was not clear to the court that plaintiffs' have an administrative remedy available to them. *W.R. v.*

*Connecticut Dept. of Children and Families,* 2003 WL 1740672, *2 (D.Conn 2003). DCF has

now reasserted its failure to exhaust argument, repeating the assertion that plaintiffs could have

pursued administrative remedies by way of review of their treatment plans and, following that,

appeal under the Uniform Administrative Procedures Act. [DCF SJ Brf at 50]. However, despite

the court's prior ruling denying DCF's motion to dismiss, DCF has offered no new argument or

legal basis to support its claim, stating only that the issue was fully briefed at the time of its

motion to dismiss and incorporating its prior argument in this motion for summary judgment.

[DCF SJ Brf at 50] In resurrecting the same argument, DCF attempts to circumvent the court's

prior decision. Even if allowed to rehash this issue through its current motion for summary

judgment, not one of the 251 statements listed in its Local Rule 56(a)1 Statement even references

DCF's claim of failure to exhaust. [DCF 56(a)1 Statement].

In their response to DCF's motion to dismiss, plaintiffs' submitted a copy of DCF's own

policy regarding treatment plan hearings. [Pl. Opp. to Mo. to Dismiss, Attachment E]. That

policy bars access to the very treatment administrative hearings DCF claims individuals, like

plaintiffs, should exhaust. The DCF policy for treatment plan hearings states that "[t]he

Administrative Hearings Unit shall deny a hearing when ....court actions to consider the same

issues are pending." [DCF Policy 27-7-3.].

Additionally, requirements to exhaust administrative remedies are excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy. *J.S. et al v Attica Central Schools,* 386 F.3d 107, 112 (2nd Cir. 2004). Since Susan is over 19, under DCF policy, any request submitted for a treatment plan hearing on her behalf would be denied as under DCF policy she is no longer entitled to a treatment plan. Conn. Gen. Stat. §17a-15(c) ( limiting treatment plan hearings to "any child or youth ... aggrieved by any provision of a [treatment] plan") and Conn. Gen. Stat. §17a-1(5) and (6)(defining "youth" as anyone under 19 years of age); *see also* Conn. Reg. §17a-15-4. Further, for Omar and Joseph, who are under the age of 19, the treatment plan hearing remedy is inadequate to deal with the systemic issues raised by plaintiffs. [Complaint ¶¶ 76-88] Conn. Gen Stat. §17a-15 and Conn. Reg. §17a-15-4 do not provide plaintiffs a forum in which to raise claims that the DCF's system of provision of community based placement and services is discriminatory to children and youth with severe mental health issues.

In *J.S.,* the Second Circuit ruled that the futility exception applies to cases involving alleged systemic violations, agreeing with the lower court that where "the complaint is aimed at wrongdoing that is inherent in the program itself and not directed at any individual child, the allegations of systemic violations entitled them to exemption from the exhaustion requirement ..." *J.S. et al.,* 386 F.3d at 113. (Disabled students filed suit under IDEA alleging individual and systemic violations and, although the motion to certify the class had been withdrawn pending the defendants appeal of the motion to dismiss, exhaustion was excused as futile.) In reviewing four prior decisions of the Second Circuit where exhaustion had been excused, the court in *J.S.* noted

31

that the common element had been that the plaintiffs' problems could not be remedied by administrative bodies because the framework and procedures for assessing and placing the plaintiffs in appropriate programs were at issue or because the nature and volume of complaints were incapable of correction by the administrative hearing process. *Id.* at 114 *citing Heldman v. Sobol*, 962 F.2d 148 (2nd Cir 1992); *Mrs. W. v. Tirozzi*, 832 F.2d 748 (2nd Cir. 1987); *J.G. v. Bd. of Educ. of the Rochester City Sch. Dist.*, 830 F.2d 444 (2nd Cir. 1987); *Jose. P. v. Ambach*, 669 F.2d 865 (2nd Cir. 1982). Accordingly, exhaustion is futile both due to DCF's administrative policy prohibiting treatment plan hearings where there are other pending court cases and because even without that policy such administrative procedures are inadequate to address the systemic issues raised by plaintiffs. Where exhaustion is futile, summary judgment should not be granted for lack of exhaustion.

   **5.      Plaintiffs' claims are not moot.**

   In addition to its jurisdiction and abstention claims, DCF also argues that two of the name plaintiffs' claims are moot. DCF overlooks the fact that both plaintiffs have ongoing and live claims with DCF.

   (a)      Susan K.'s Claims Are Not Moot.

   DCF claims that plaintiff Susan K.'s claims are moot because she has "aged out" of the DCF system. [DCF SJ Brf. at 15] In its assertion that Susan K. no longer has a live claim[13], DCF has overlooked the fact that she pled a claim for damages under the ADA.[14] Indeed,

------

[13]DCF appears to concede that Susan K. and Omar S. both had "live" cases at the outset of this case since they state that "due to changed circumstances, this remedy

*Murphy v. Hunt,* cited by DCF in support of its motion, held that the plaintiff no longer had a

legally cognizable interest in the result of that case, noting that he had not prayed for damages or

sought to represent a class. 455 U.S. 478, 482 (1982). Additionally, since Susan K. has sought

status as a class representative, her claims are also not moot under the relation back doctrine.

Under the relation back doctrine, courts look to the plaintiff's status as a member of the

proposed class at the time the complaint was filed to determine class certification. *Gerstein v*

*Pugh,* 420 U.S. 103, 110-111, n. 11 (1975). *See also Krimstock v. Kelly,* 306 v. F.3d 40, 70 n 34

(2d Cir. 2002); *Robidoux v Celani,* 987 F.2d 931, 938-39 (2d Cir 1993). Consequently, if the

court should grant class certification, Susan's other claims would not be moot, as they were not

moot at the time the complaint was filed. It is especially proper to invoke the relation back

doctrine in cases involving inherently transitory claims, in order to preserve the merits of the

case for judicial resolution. *Id. See County of Riverside* v. *McLaughlin,* 500 U.S. 44, 52 (1991);

*see also Swisher* v. *Brady,* 438 U.S. 204, 213-14, n. 11 (1978) (certifying class of juvenile

delinquents despite resolution of named plaintiff's claims as live controversy had existed

between unnamed class members and the State). Susan's claims regarding DCF's failure to

provide her a community based placement were certainly "inherently transitory," as well as

"capable of repetition, yet evading review." Thus, the relation back doctrine is properly invoked

in this case in order to preserve the case for judicial resolution.

---

[placement] can no longer be granted by the court to these plaintiffs" [DCF SJ
brief at 14-15].

[14]DCF previously moved to dismiss Susan K's ADA claim but its motion was
denied. *WR v. DCF,* 2003 WL 1740672, *2 (D. Conn. 2003).

(b)    Omar S.' Claims Are Not Moot

DCF also argues that Omar S.' claims are moot because he no longer is in DCF's custody. [DCF SJ Brf. at 15]. It is undisputed that Omar left Connecticut in April, 2005 by running away to reside with his mother in the Bronx, New York. However, Omar left because he had fears regarding his personal safety and because his placement at Barnard House in Hartford was not appropriate for him. It is also undisputed that the DCF filed a Motion to Revoke Commitment, which motion was granted on July 13, 2005 (Bear, J.). The Revocation of Commitment was a step towards mooting Omar's claim in this case. However, Omar sought permission to re-enter state care in August, 2005, and the Hon. Stuart Bear, Superior Court for Juvenile Matters, vacated his prior order granting the DCF's Motion to Revoke Commitment on July 13, 2005 and ordered the DCF to return Omar into its care. [Ex. 4, Pl. Rule 56(a)2 Statement, Application for Temp. Inj. Omar S.]. Omar returned to Connecticut that same evening and re-entered the care and custody of the DCF. [Att. B, Sosa Affidavit]. Omar returned to Connecticut hoping to receive a community based placement. He spent his first weekend, Labor Day weekend, in the Bent Shelter in Waterford, Connecticut, and, subsequently, was placed in two different foster homes. *Id.* As of the date of this motion, Omar continues to reside in Hampton, Connecticut with a foster family. Clearly, Omar has both a personal stake in the outcome of this case and, since he seeks to represent members of the proposed class, he has a legally cognizable interest in it, as well. *Murphy, supra,* 455 U.S. at 481-82. Consequently, his claims are not moot.

### 6.    **Omar's Claims Are Not Subject To *Res Judicata***

DCF next claims that Omar is a member of the *Juan F.* class and consequently, his claims

are barred by *res judicata*. As a general rule "one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party." *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115 (1940). There is, however, a recognized exception to that general rule in circumstances involving class actions, but only where it can be established that the issues raised in the first suit were directly addressed and resolved in favor of the class of which the later plaintiffs were members. *Figueroa v. Dean* 2002 WL 31426205 at 2-3 (SDNY 2002). This is because *res judicata* operates as "claim preclusion" thereby preventing parties from relitigating issues that were or could have been raised in the earlier action where a final judgement was entered on the merits of that case. *Interoceanica Corporation v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2nd Cir. 1997). *Res judicata* ordinarily applies "if the earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Stephenson v. Dow Chemical Co*, 273 F.3d 249, 259 (2nd Cir 2001) *citing Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Serv, Inc)*, 762 F2d 185, 190 (2nd Cir. 1985). Omar has never been a party to the *Juan F.* lawsuit.[15] Despite its assertion that Omar is a member of the *Juan F.* class [DCF SJ Brf. at 17], DCF has not produced a copy of the order certifying the *Juan F.* class to establish that Omar is a member of the class. It is undisputed that Omar did not begin receiving services from the DCF until 2001 and that he was not committed to the care of the DCF

---

[15]The named plaintiffs in that suit were Juan F., Becky M., Benjamin B., Jason B., Anna R., Dominique S., Patrick S., Daniel C., Florence J., and Judith Hyde and their next friends. [DCF Exhibit M to SJ motion].

until September 6, 2001, both of which occurred well after the *Juan F* consent decree.[16] [DCF SUF ¶¶13, 14]. Moreover, *res judicata* does not bind absent class members if to do so would violate due process. *Stephenson, supra,* 273 F3d at 260. To establish that Omar was an absent class member whose due process rights had not been violated, DCF would have to show that he was represented "at all times" throughout the litigation, notice "reasonably calculated....to apprise interested parties of the pendency of the action" was provided and that he had an opportunity to opt out. *Id. citing Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12, 105 S.Ct. 2965 (1985) DCF has produced no such documentation.

Although DCF appears to concede that Susan K. and Joseph R. are not class members of *Juan F.*, it does attempt to draw them in to its res judicata claim arguing that they are beneficiaries of *Juan F.* However, DCF has offered no precedent to support an argument that res judicata is appropriately extended beyond "parties and their privies" to mere beneficiaries. Such an extension would violate principles of due process and vastly extend the members of the *Juan F.* Class.[17] DCF's exposure to liability is not duplicative if plaintiffs were never proper parties to the prior judgment in the first place. *Stephenson, supra,* 273 F3d at 259.

In addition, even if all three of the named plaintiffs were parties in the *Juan F.* litigation,

---

[16] While DCF did not produce a copy of the consent decree as part of its Summary Judgment documents one of the documents it did produce indicates that the Consent Decree occurred sometime prior to 1992 [DCF SJ Exhibit N at ¶ 2]

[17] It is likely that if the *Juan F.* class does indeed include children "who are *or will be*" in DCF's care or custody or ...and "who are, *or will be* abused..." and "who are, *or will be* "...at risk..... [emphasis added] as defined in the *Juan F.* Complaint, that such a "sprawling" class would be found to be improperly certified under *Anchem Products Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct 2232, 138 L.Ed.2d 689 (1997). *Stephenson, supra,* 273 F3d at 260.

*res judicata* would not apply to bar their claims here because the facts do not stand up to a proper scrutiny of whether this suit involves the same "nucleus of operative facts" as in the *Juan F.* litigation. *Interoceanica Corporation v. Sound Pilots, Inc.*, 107 F3d 86, 90 (2nd Cir. 1997). Even if both suits involved the same parties, essentially the same course of wrongful conduct, similar or overlapping facts and similar legal issues, [18] that would not cause this suit to be barred by res judicata. *Id.* "A first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first." *Id.* at 91 (holding that recovery of pilotage fees involving the exact same type of occurrences - distinct voyages after those litigated in the first suit, were not barred because they did not arise out of the voyages which were the subject of the earlier litigation). While DCF argues that the legal issues are the same, that does not bar these plaintiffs. Rather, the facts must be "related in time, space, or origin to the previously litigated wrongs." *Id.* Aside from the essential difference in the legal theories, none of these plaintiffs were receiving service from DCF when the *Juan F* suit was filed in 1989. [DCF SUF ¶¶ 3,9,13, 42] In fact, Susan K. and Omar S. were only 6 and 8 years old respectively and Joseph R. was not even born. Consequently, their claims are clearly not related in time, space or origin to those in *Juan F.* DCF's res judicata argument against Omar, and tangentially against Susan K. and Joseph R.

---

[18]    Plaintiffs' individual and class claims are specific as to discrimination on the basis of the severity of their disability while the *Juan F.* complaint describes a general failure of the DCF system as it affects all children, thus the incredibly broad definition of the proposed class in that case. [DCF SJ Exhibit M].

must fall since DCF has failed to establish that any of them were parties to the *Juan F* suit or that this suit arises out of the same "nucleus of operative facts" as those in *Juan F.*

### 7.    Joseph R. Does Qualify For a Placement In a Less Restrictive Environment

Defendants also claim that the court should "dismiss" plaintiff Joseph R.'s claims since state clinicians do not recommend a less restrictive placement for him, noting that Joseph's mental-health related behavior has required one-to-one supervision. [DCF SJ Brf. at 21]. Defendants cite to SUF 63, an affidavit of DCF employee Kaplan, the chief administrator of the institution where Joseph R currently resides in (Connecticut Children's Place or "CCP"), to support its claim that Joseph can not be placed in a community based placement. *Id.* Defendants contention that CCP is not recommending placement in a community based placement is simply not true. A review of the treatment plan developed by CCP appended to DCF's exhibits shows it does recommend that Joseph enter a community based placement but notes that he needs to stabilize first. [Kaplan Affidavit ¶1]. Moreover, a Central Placement Team Request sent to DCF by Joseph's therapist in September, 2005, noted that "Joseph should be recommended for a small, structured, specialized group home...[with] twenty four hour supervision...in a small therapeutic environment...with a one to one staff in the event his requires this level of supervision and support". [Att. A, Joseph R. CPT Request]. Clearly this constitutes the state's clinicians recommending a less restrictive placement, thus Joseph meets the first prong of the *Olmstead* test. *See Olmstead v. L.C. Ex Rel. Zimring*, 527 U.S. 581 (1999).

### 8.    Joseph R's Claims Are Ripe For Adjudication.

DCF also argues that Joseph R.'s claims are not ripe for adjudication. [DCF SJ Brf. at

21]. DCF misunderstands the doctrine of ripeness as it applies to this case. "...[A]bsolute

certainty of injury is not required for a case to be constitutionally ripe." *Simmonds v. I.N.S.* 326

F.3d 351, 358 (2nd Cir. 2003). Conversely, issues have been deemed ripe when they would not

benefit from any further factual development and when the court would be in no better position

to adjudicate the issues in the future than it is now". *Id* at 359, *citing Whitman v. Am Trucking*

*Ass'ns*, 531 U.S. 457, 479, (2001); *Duke Power Co*, 438 U.S. at 81-82, (1978). "The ripeness

doctrine is invoked to determine whether a dispute has matured to the point that warrants a

determination. 13A Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice

and Procedure, Jurisdiction, 2d § 3532 (2004)......[T]he ripeness inquiry focuses on whether an

injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention."

*Chevron U.S.A, Inc v. Traillour Oil Co*, 987 F.2d 1138, 1153-1154 (5th Cir. 1993).

As noted earlier, Joseph's team is recommending a less restrictive placement for him,

thus his claim is ripe for adjudication. Even if his current plan called for him to stabilize before

being moved to a community based placement, Joseph's claim would remain ripe. It is common

for youth with severe mental illness to experience acute episodes where they require short term

residential placement. [Att. E, Pritchard Deposition p. 17-18]. Such a short term institutional

placement would not negate the ripeness of Joseph's claims (and indeed bolsters plaintiffs

arguments for class certification).

Defendants state that it is "very likely" than an opening in one of the therapeutic

group homes DCF is building will be available for Joseph and if not, then would be the

appropriate time for his to raise an Olmstead claim. [DCF SJ Brf. at 23]. However, professionals

began recommending that Joseph be placed in a community based placement in 2001 and he continues to languish in institutional care. [Attachment H, Institute of Living Summary]. Joseph should not need to wait any longer for DCF to provide a clinically appropriate placement to him.

## IV.    MATERIAL FACTS IN DISPUTE

Ultimately, as stated earlier, summary judgment should not be granted where material facts remain in dispute. In the instant case, numerous material facts remain in dispute, as noted below.

### A.    Material Facts In Dispute Under the ADA and Section 504 of The Rehabilitation Act of 1973

For plaintiffs to prevail on their federal claims in this case, they must show they have met the essential elements of their ADA and §504 claims:[18] In this case, there is no dispute that DCF is a public entity receiving federal funds. [DCF Answer ¶ 13, 14, 88]. There is also no dispute that those children and youth without severe mental illness who are in the care or custody of DCF are being provided with clinically indicated community based placements. [DCF Rev'd Resp. to 1st Req. to Admit ¶ 9, 29, 47]. Thus summary judgment could be issued *for plaintiffs* on these issues which are the first and third essential elements of their ADA and §504 claims against the DCF.

---

[18]Plaintiffs must show: (1) is the DCF a public entity receiving federal funds; (2) are the plaintiffs and the proposed class they represent being discriminated against on the basis of their disabilities or the severity of their disabilities; and (3) are children and youth in the care or custody of DCF who do not have severe mental illness being provided the clinically indicated community based placements being denied to the plaintiffs and the proposed class.

With regard to the second element, DCF has admitted Susan K., Omar S. and Joseph R.

have mental illness but has denied they have severe mental health issues. [DCF Answer ¶25, 34,

36, 53, 62] In contrast, DCF has also retreated from its initial denial concerning the severity of

disabilities of plaintiffs Susan K. and Joseph R., [DCF Rev'd Resp. to 1st Req. to Admit ¶ 7;

DCF Rev'd Resp. to 3d Req. to Admit ¶ 4, 9, 69, 74]. Consequently, this material fact remains

in dispute. Moreover, there remains a genuine issue of material fact as to the severity of Omar's

disability and whether DCF has discriminated against plaintiffs and the proposed class on the

basis of their disabilities or severity of their disabilities by failing to provide them with clinically

indicated community based placements and unnecessarily segregating them in institutional

settings. [Answer ¶ 90, 92; Att. I; DCF Rev'd Resp. to 1st Req. to Admit ¶ 16, 29, 37, 46, 55, 60].

Further, the documentation plaintiffs' have attached to this response to motion for summary

judgment supports plaintiffs' claims of discrimination on the basis of disability or severity of

disability. Since all documentation and pleadings must be read in the light most favorable to

plaintiffs when considering a motion for summary judgment, DCF's motion for summary

judgment regarding plaintiffs' ADA and §504 claims should be denied. *See Adikes v. Sh.H.*

*Krees & Co.*, 398 U.S. 144, 158-159 (1970).

**B.    Material Facts In Dispute Under State Law**

Connecticut General Statute §17a-3 requires DCF to develop and oversee a statewide

plan for children and youth in its care. Conn. Gen. Stat. 17a-3. That statute also requires that

DCF "*... shall provide services and placements that are clinically indicated and appropriate to*

*the needs of the child or youth*"(emphasis added). *Id.* In order to accomplish the purpose of

41

§17a-3 the DCF is required provide a flexible, innovative and effective program for the placement, care and treatment of children and youth in its care or custody, collect and publish statistics/data and conduct studies evaluating the effectiveness of its programs relating to children and youth within the department. *Id.*

Accordingly, the essential elements of a claim under §17a-3 are (1) whether the DCF has such a state-wide plan, (2) which it administers and evaluates it in accordance with the required guidelines of §17a-3 and (3) whether that plan provides services and placements that are clinically indicated and appropriate to the needs of children or youth with severe mental illness. Plaintiffs do not dispute that DCF has a state-wide plan. However, the question is whether the DCF failed to provide plaintiffs and the proposed class with clinically indicated and appropriate community based placements and therefore discriminates against plaintiffs. This is an essential element in dispute as DCF has denied such a violation of §17a-3, [Answer ¶ 94], and is a genuine issue of material fact because plaintiffs have alleged, and have supporting documentation, that DCF has not provided such placements to plaintiffs and members of the proposed class. [Amended Complaint§ 93, 94; *See* Pl. Rule 56(a)2 Statement].

A second material fact in dispute under state law concerns plaintiffs' rights to dignified and humane treatment while in DCF's care. Connecticut General Statute §17a-16 outlines the rights of children and youth under the supervision of the Commissioner of DCF. DCF has denied violating the plaintiffs' rights under §17a-16, and none of its Rule 56a(1) statements reference this claim. In addition to the allegations in their complaint, plaintiffs have documentation that their §17a-16 rights were violated. [Ex. 2, Pl. Rule 56(a)2 Statement, DCF Rev'd Resp to 3rd

42

Req. to Admit ¶21, 47, 49, 73] As a result, this is an issue in dispute. [Answer ¶ 94].

Article First §20 of the Constitution of the State of Connecticut prohibits discrimination on the basis of mental disability, exposing people to inhume and undignified treatment or unnecessarily segregating them in institutional settings. DCF has denied violating the state constitutional rights of the plaintiffs or members of the proposed class. [Answer ¶94]. Thus, this too is a disputed issue and DCF has made no claim in its Rule 56a(1) statements that any material facts relevant to this issue are not in dispute. Since plaintiffs' allegations and supporting documentation must be interpreted in the light most favorable to plaintiffs, summary judgment should be denied on all the state law claims.

## V. CONCLUSION

Despite DCF's assertions to the contrary, many material facts which might affect the outcome of the case under governing law do in fact exist and are in dispute [*See*, Plaintiffs' 56(a)2 Statement and Plaintiffs' Response to DCF's 56(a)1 Statement] Summary judgment is not proper when there is a genuine issue of material fact, *Weinstock v. Columbia University*, 224 F. 3d 33, 41 (2d Cir. 2000). Further, the court is obligated to "resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Nationwide Life Ins. Co. v Bankers Leasing Ass'n, Inc*, 182 F. 3d 157, 160 (2d Cir. 1999)(citation omitted). In deciding a motion for summary judgment, the court must ask itself not whether the evidence unmistakably favors judgement for the moving party, but whether a fair-minded jury could return a verdict for the plaintiffs on the evidence presented *Anderson v Liberty Lobby*, 477 U.S. 242 at 252 (1986). In view of the documentation attached by plaintiffs and defendant's documents

43

which illustrate there are in fact issues in dispute, plaintiffs have met their burden of

demonstrating that there are genuine issues of material fact.


Respectfully submitted,


Anne Louise Blanchard
Connecticut Legal Services
Federal Bar No. ct 08718
872 Main Street
Willimantic, Connecticut 06226
Telephone: (860) 456-1761
Fax:: 860 456-7420


Bet Gailor
Connecticut Legal Services
Federal Bar No. ct 01981
872 Main Street
Willimantic, Connecticut 06226
Telephone: (860) 456-1761
Fax:: 860 456-7420

Catherine L. Williams
Connecticut Legal Services, Inc.
Federal Bar No. ct02059
211 State Street
Bridgeport, CT 06604
Telephone: (203) 336-3851
Fax: (203) 333-4976


44

# CERTIFICATION

I certify that a copy of the foregoing Memorandum In Opposition to Defendants' Motion for Summary Judgment was mailed, postage prepaid, to the following counsel of record on the 26th day of September, 2005:

Attorney Susan T. Pearlman
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06106

Carolyn Signorelli
Assistant Attorney General
55 Elm Street
Hartford, CT 06105

Attorney Lori Welch-Rubin
129 Whitney Avenue
New Haven, CT 06515


_____
Anne Louise Blanchard

45