UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| W.R., individually and on behalf of her minor son, JOSEPH R.; SUSAN K., M.O., individually and on behalf of her minor son, OMAR S.; and on behalf of all others similarly situated<br>    Plaintiffs<br><br>VS.<br><br>CONNECTICUT DEPARTMENT OF CHILDREN AND FAMILIES, and<br><br>CHRISTINE REGALIA, in her official capacity as Commissioner of the Connecticut Department of Children and Families<br><br>    Defendants | CIVIL ACTION NO.<br>302CV429(RNC)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>OCTOBER 27, 2005 |

## DEFENDANTS' REPLY TO PLAINTIFFS' OBJECTION
## TO MOTION FOR SUMMARY JUDGMENT

**Introduction**

  This action was brought by three individuals seeking community-based mental health services from the defendants, the Commissioner of Children and Families and the Department of Children and Families. The defendants have filed a motion for summary judgment asserting there are no material issues in dispute and seeking judgment of dismissal. In response, the plaintiffs contend that "any reforms which have occurred have not reached" them and that they "continue to languish in institutions, inappropriate foster care and shelters…" (Pl. Brief, p. 1) Yet they have offered not a wit of evidence to support these hyperbolic claims and the undisputed facts clearly show that none of these plaintiffs is currently waiting for a community-based placement. Nor have they contradicted the overwhelming

evidence of the substantial progress made by the defendants to move mentally ill children into community settings. Many of their assertions assume the case has been certified as a class action (Pl. Brief, p. 18-20), yet this court has not certified a class and for reasons explained in the defendants' objection to class certification, should not do so. The court should find that there are no triable issues and therefore the motion for summary judgment should be granted.

## I. The Plaintiffs Have Failed to Present Genuine Issues of Fact

" To withstand the defendants' properly supported motion for summary judgment, plaintiff must show that evidence in the record, viewed most favorably to him, would be sufficient to support a jury verdict in his favor. Mere speculation and conjecture is insufficient. *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 498-99 (2d Cir. 2001). "Because the purpose of summary judgment is to isolate and dispose of claims that lack evidentiary support, the nonmoving party may not rest on the allegations of its pleadings, but must point to evidence showing that the case involves a genuine issue of material fact requiring a trial." *Lucibello v. Yale-New Haven Hospital* 2005 U.S. Dist. LEXIS 3604 (D. Conn. 2005) at *12. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc,* 477 U.S. 242, 248 (1986).

> When the party against whom summary judgment is sought would have the burden of proof at trial on a dispositive issue… the party moving for summary judgment must show that there is an absence of evidence to support a jury verdict in favor of the nonmoving party. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 *(1986).* The burden then shifts to the nonmoving party to present by affidavit (or other evidentiary materials) affirmative evidence from which a jury could reasonably return a verdict for that party. See *Anderson,* 477 U.S. at 248-52, 257.

*Knox v. City of New Haven,* 357 F. Supp. 2d 449, 451-452 (D. Conn. 2005).

"...[T]o defeat a motion for summary judgment, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, as the plaintiffs are seeking damages under the ADA, they must offer "concrete evidence" to support a finding of discriminatory intent. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 61-62 (2d Cir. 1998)

Here, the plaintiffs do not dispute that Susan K. is now 21 years old and receiving services from the Department of Mental Health and Addiction Services; (SUF ¶ 9-10) she is not receiving services from the defendants and is no longer eligible for DCF services or programs. *Id.* They also do not dispute that Omar was living, until this past spring, in a group home in Hartford, Connecticut where he was receiving round the clock supervision from mental health counselors. (SUF ¶ 18-19) *Omar chose to leave that program voluntarily.* (SUF ¶ 23) Since the filing of the motion for summary judgment, Omar has asked to be returned to DCF care and is now living in a foster home and attending public school. (Ex. A) *Omar, who is now 18, has advised his social worker that he wishes to remain in his current placement. Id.*

The plaintiffs also acknowledge that Joseph is currently placed at the Connecticut Children's Place (CCP) in East Windsor, Connecticut, after having been hospitalized for several months following his assaultive behavior in Brightside Treatment program. (SUF ¶ 45) His aggressive and dangerous behavior has continued at CCP and although DCF has plans to place Joseph in a therapeutic group home, he is currently too unstable to be relocated. (SUF ¶ 50, 63) Joseph's therapists have concluded that he is not ready for a less restrictive setting, a conclusion the plaintiffs do not contradict. *Id.*

Other undisputed facts relate to DCF's greatly expanded community mental health services and funding. The plaintiffs do not dispute that children with mental health problems can be placed in foster care, that foster care is often the preferred option as it is the most home-like setting for a child, and even mentally ill children can develop optimally in such settings. (SUF ¶ 208) They do not dispute that specialized foster homes have been successful placements for children who are mentally ill, and that the number of children in such placements has expanded from 800 in 2003 to 961 in 2005.[1] (SUF ¶¶210, 211) They further do not disagree with evidence produced by the defendants showing that DCF is expanding the most intensive foster care programs for such children, namely treatment foster care and multidimensional treatment foster care; both of these programs are designed to care for seriously mentally ill children. (SUF ¶ 214, 216). These facts are particularly material, given that the burden is on the plaintiffs to articulate a reasonable accommodation that should be made by the defendants. Instead, the plaintiffs urge this court to ignore foster care as an accommodation, (Pl. Brief, 21) despite the fact that foster care provides a community placement option for mentally ill children, including one of the plaintiffs.

In responding to the defendants' motion for summary judgment, the plaintiffs assert that there are material facts in dispute – however, their primary claim is that the *severity* of their disability is in dispute, an issue that is not material for the resolution of this motion. (Pl. Brief, p. 41). )The plaintiffs also claim that the adequacy of the new services, programs and placements developed by the state may be in dispute, but they have not offered any evidence to show how *they* are currently being deprived of a community-based placement. (Pl. Brief, p. 20). As the matter is not a class

---

[1] The plaintiffs take the position that they cannot dispute this information because the defendants failed to provide them with the data in response to discovery requests; however, the plaintiffs' discovery requests specifically exclude information regarding foster care. (See ¶1of Plaintiffs Second Set of Interrogatories, dated June 20, 2003, Ex. C).

4

action, the main issue is the adequacy of the accommodations available for the three plaintiffs. In the present case, Omar is already in a community-based placement, and Joseph can be placed in a therapeutic group home once his condition stabilizes.[2] No further accommodations are needed.

If the court elects to consider what accommodations are being made for mentally ill children in general, ample undisputed evidence has been offered to show the full breadth of services being developed by the defendants to maintain these children in community settings; under the state-sponsored KidCare program, such children now qualify for mobile crisis teams, intensive home-based mental health services, care coordination, crisis stabilization beds and a number of nontraditional support services. (SUF ¶ 84, 87, 95, 99, 100, 101, 102, 103, 104) These programs and services have helped mentally ill children avoid hospitalizations and remain in their communities. (SUF ¶ 99) Funding for such programs has increased exponentially over the last few years, and community-based mental health programming is occurring throughout the agency. (SUF ¶ 246)

The plaintiffs do not deny the massive evidence produced by the defendants to demonstrate the agency's commitment to keeping mentally ill children out of hospitals and residential treatment facilities. Instead, their argument is that the most severely mentally ill children *may* not benefit from such programs[3] (Pl. Brief, p. 16) – this is mere conjecture and cannot substitute for the "concrete evidence" needed to counter the state's evidence.

Another argument posed by the plaintiffs is that the court must ignore this evidence because it was not disclosed by the defendants in response to discovery requests and specifically as part of a

---

[2] Susan is not seeking further services from DCF.
[3] Their claims do not dispute the evidence offered by the defendants but rather are based on opinions offered in stale depositions that are two or three years old.

party's duty to supplement disclosure under F.R.C.P. Rule 26. (Pl. Brief, p. 7-9) However, the plaintiffs have failed to identify what specific responses were not properly supplemented justifying exclusion of the evidence.

In fact, most of the evidence submitted by the defendants was never requested by the plaintiffs – the first set of interrogatories (Ex. B) asked for a list of witnesses and their proposed testimony[4] as well as "reports, statements, memorandum or testimony DCF has obtained from any person concerning issues relating to the range and specific nature of residential placements DCF provides, effect of institutional placements of residents, effect of long term hospitalization on residents, benefits of community placements, obstacles to the provision by DCF of community placements, nature and limitations of various types of foster home placements DCF provides, and the comparative fiscal cost of different types of residential placements DCF provides." The second set of interrogatories only asked about number of children in various types of residential placements excluding foster care. (Ex. C) The defendants responded to the discovery and updated the information in 2004; moreover, much of the information sought by the plaintiffs was available on DCF's webpage. There is little overlap between the evidence presented by the defendants to support summary judgment and the plaintiffs' discovery requests. For example, the plaintiffs' discovery requests do not seek information about home and community-based services, about numbers of children in foster care placements, about state mental health plans, about discharge planning, about length of time in various placements, about mental health funding, about federal court proceedings in other cases, about requests for proposals for therapeutic group homes, about federal reimbursement, about demand for additional services, about the number of children in

---

[4] Until a trial is scheduled, the defendants cannot supplement the witness list provided in 2003, given the fluid nature of the evidence and frequently changing DCF management.

6

voluntary services, about memoranda of agreement regarding responsibility for mentally retarded children; about assessing children's needs; about the process for placing children in residential facilities, or about the benefits of foster care. In addition, information about the number of children in various placements is maintained on DCF's webpage so the plaintiffs had ample opportunity to review those records.

Even if this court concludes some additional disclosure was required, preclusion of evidence is within the court's discretion; *Newman v. GHS Osteopathic Inc.*, 60 F.3d 153 (3d Cir. 1995), and in this case is not justified because there exists a genuine dispute concerning compliance. *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995)(citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

> Exclusion is an extreme sanction. In weighing whether to exclude evidence under *Rule 37(c)*, the Court should consider "the importance of the testimony to the case, the prejudice to the party inconvenienced, and the administrative difficulty which the court itself would face." *Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir. 1988); see also *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F. 3d 592, 697-598 (4th Cir. 2003) (identifying factors including bad faith; prejudice; need for deterrence; availability of less drastic sanction).

*GU Mkts., LLC v. Supermarket Equip. Resale, Inc.*, 2003 U.S. Dist. LEXIS 20539 at *6-7 (D. Vermont, 2003). Here, because the plaintiffs have not specified which discovery request was not supplemented, justifying exclusion under Rule 37(c), the plaintiffs cannot show how they were prejudiced. For this reason, the court should consider the undisputed facts set forth in Defendants' Local Rule 56(a) statement.

## II. The Plaintiffs Have Not Satisfied Their Burden under *Olmstead* for Injunctive Relief.

Although the plaintiffs recognize *Olmstead v. L.C. by Zimring*, 119 527 U.S. 581 (1999) as the "definitive Supreme Court decision" in this area, and even acknowledge that their complaint

7

"encompasses the identical" ADA and Rehabilitation Act claims as were made in the *Olmstead* case, curiously they totally ignore the burden imposed by that ruling on the plaintiffs to support their case for injunctive relief. Under *Olmstead,* an ADA claim involving unnecessary institutionalization must be premised on three factors: 1. the state's treatment professional have determined that community placement is appropriate; 2. the transfer to a less restrictive setting is not opposed by the disabled individual and 2. the placement can be reasonably accommodated, taking into account the resources available to the state and the needs of others with mental disabilities. *Olmstead at 587.*

Again, the plaintiffs have not countered the defendants' evidence that they have failed to even meet the first parts of the test. Susan K., is no longer eligible for DCF services. Omar voluntarily left a group home, and now is in a foster home, where he would like to remain; Joseph R. is not ready to be moved to a less restrictive setting.

Instead, the thrust of the plaintiffs' argument is that although the defendants may be offering community-based services to mentally ill children, they are still being discriminated against because they are *severely* mentally ill. The plaintiffs are not asking this court to compare them to non-disabled individuals but rather to other *less impaired* mentally ill children. They claim that the "state's system of delivering mental health services to children discriminates against the severely disabled since the services are not being meted out equitably." (Pl. Brief. p. 18)

However, neither the ADA nor the Rehabilitation Act authorizes the court to address differential treatment among disabled individuals. "To state a claim under the ADA, plaintiffs must allege that the defendants treated them differently from nondisabled [individuals] or that defendants' practices have a disparate impact upon disabled [individuals] relative to non-disabled

8

[individuals]. Where plaintiffs are claiming that the defendants are discriminating among disabled individuals, "the ADA does not proscribe such conduct." *Brennan v. Comptroller of the State of New York,* 1996 U.S. App. LEXIS 2430 at *4. (2nd Cir. 1996), citing *Traynor v. Turnage,* 485 U.S. 535, 549 (1988) "(Rehabilitation Act does not require that 'any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons.')" *Id. See also, Doe v. Pfrommer,* 148 F. 3d 73, 83-84 (2nd Cir. 1998)("The central purpose of the ADA and §504 of the Rehabilitation Act is to assure that disabled individuals receive 'evenhanded' treatment in relation to able-bodied...").

Even if the plaintiffs' claim of differential discrimination was actionable, they still have not addressed the third prong of *Olmstead* - namely the state's numerous efforts to reasonably accommodate the needs of children with mental illness. Inasmuch as the case is *not* a class action, at this stage, the defendants must only show how those efforts accommodate the three plaintiffs. Here the only plaintiff currently seeking a less restrictive placement is Joseph and a therapeutic group home is available for him when his condition stabilizes. There is no reason to make any any further accommodation. Where a defendants' efforts are already reasonable, there is no need for injunctive relief. *Henrietta D. v. Bloomberg,* 331 F. 3d. 261, 282 (2nd Cir. 2003).

Moreover, even if this case were treated as a class action, under *Olmstead,* a defendant may show it has made such accommodations to move disabled institutionalized individuals into community settings by having a "comprehensive, effective working plan" for placing such individuals in less restrictive settings and a "waiting list that moves at a reasonable pace." *Olmstead, supra at 605-606.* In other words, the defendants can fully satisfy the reasonable accommodation requirement of federal law by showing a good faith effort to implement a

9

comprehensive plan to move disabled individuals into the community. Here, the evidence clearly and undisputably shows the defendants have such a plan.[5]

The plaintiffs do not directly refute this evidence; rather their sole argument that the defendants have not made reasonable accommodation is an assertion challenging the adequacy of the therapeutic group homes, (Pl. Brief, p. 23) one small part of the state's plans for deinstitutionalizing mentally ill children. They do not dispute[6] the fact that the agency intends to open 35 new therapeutic group homes within the next year to care for severely mentally ill children. (SUF ¶ 158) Instead, they assert that because there are 1500 children in residential facilities, "even if the group homes are built, they would house only a minimal number of those residentially placed." (Pl. Brief, p. 23).

This argument is without merit – first, as explained above, the only question is whether the efforts being made are reasonable accommodations for the named plaintiffs and there is no question that the defendants have met that burden; second, even examining the issue more globally, the plaintiffs cannot show how many of the children in residential facilities would even be clinically recommended for a less restrictive placement; thirdly, the argument totally ignores the substantial and detailed evidence regarding other community-based services and placements, including foster care, and home-based services, that are in place or being developed for mentally ill children, all of which show the state's good faith efforts to make reasonable accommodations for these disabled individuals.

---

[5] In addition to the plans cited in the motion for summary judgment, P.A. 05-280 also reflects the state's plans to achieve the goals of deinstitutionalization. See *infra*.
[6] The plaintiffs assert that the court must ignore this evidence because the defendants did not disclose the information during discovery but information about plans to develop additional therapeutic group homes was not specifically requested by the plaintiffs in their discovery motions.

More specifically, the defendants have fully documented its plans for community-based services, and has demonstrated how these plans are being implemented. Undisputed evidence of the effectiveness of the plan appears in the the reduction in the number of days at Riverview Hospital (SUF ¶ 77), the decrease in the number of Riverview Hospital beds (SUF ¶81); the reduction in length of stay at High Meadows residential treatment facility (SUF ¶82); the increase in the number of families served by community care coordinators (SUF ¶ 95); the increase in the number of children receiving mobile crisis services in their community(SUF ¶98); the increase in the number of children receiving services through crisis stabilization beds (SUF ¶104); the increase in the number of children served though specialized foster care (SUF ¶ 214) and the reduction in the average length of stay at residential treatment facilities(SUF ¶ 150)[7]

Because there has been no facts to counter the broad-based evidence offered by the defendants to prove reasonable accommodations are being made, the court should conclude that there is no reason to issue injunctive relief.

### III. The Court Should Abstain Under *Burford* or under *Younger*.

The plaintiffs assert that this court should not abstain from hearing this case, under the theory established by *Burford v. Sun Oil Co*, 319 U.S. 315 (1943); under that doctrine, this court may dismiss a case if, *inter alia*, its adjudication would be dirsuptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. The Supreme Court has urged the lower court to recognize that principles of federalism and comity support applying this abstention doctrine to avoid interfering with a state's administration of its own affairs.

---

[7] The plaintiffs have attempted to obfuscate the issues by denying statements of undisputed facts relating to the reduction in number of children placed in residential treatment facilities, by improperly relying on DCF records for different time periods than the periods covered in the Rule 56 statement. (e.g. SUF ¶149, 151)