> Though 'abstention from the exercise of federal jurisdiction is the exception, not the rule,' *Colorado River Water Conservation Dist. V. United States,* 424 U.S. 800, 813, 96 S. Ct. 1236, 47 L. ed. 2d 483 (1976), its importance in our system of dual sovereignty cannot be underestimated. It safeguards our federal system from the 'delay, misunderstanding of local law, and needless conflict with state policy' that inevitably result from federal judicial intrusions into areas of core state prerogative.' *Burford,* 319 U.S. 327, 63 S. Ct. 1098.

*Ives v. Advanced Broadband Solutions, Inc.* 2004 U.S. Dist. LEXIS 968 at *9 (D. Maryland 2004)

The plaintiffs dispute the application of *Burford* abstention in this case because "there is no such specialized system in Connecticut which addresses discrimination in the community based placement needs of children with severe mental health issues." (Pl. Brief. p 27). This argument misses the point – the question is whether the adjudication of this claim would be disruptive of the state's effort to direct a comprehensive scheme for community-based mental health services for children who are mentally ill. The overwhelming and undisputed evidence supports the finding that the relief sought by the plaintiffs would clearly interfere with the operation of the state's community mental health system.

As the motion for summary judgment more fully explains, the defendants are engaged in a massive effort to put new systems and programs in place to avoid institutionalizing mentally ill children. New legislation, P.A. 05-280, provides in extraordinary detail, the blueprint for the delivery of mental health services to Connecticut children. Sec. 91 of P.A. 05-280 calls for an "integrated behavioral health service system" for children enrolled in the state's health care system (HUSKY), for children in the voluntary service program (which would include Joseph) and other children served by DCF. This system is known as the Behavioral Health Partnership and the "partners" are DCF and and the Department of Social Services (DSS). Under Sec. 92 of the Act, the two agencies must each appoint a director for the Partnership who "shall coordinate

the responsibilities of his or her department... for the planning, development, administration and evaluation of the activities specified under subsection (a) of section 91 of this act to increase access to quality behavioral health services." Those enumerated activities include

> "(1)[e]xpansion of individualized, family-centered community-based services; (2)maximization of federal revenue to fund behavioral health services; (3) reduction in the unnecessary use of institutional and residential services for children; (4) capture and investment of enhanced federal revenue and saviys derived from reduced residential services and increased community-based services; (5) improved administrative oversight and efficiences; and (6) monitoring of individual outcomes, provider performance, taking into consideration the acuity of the patients served by each provider, and overall program performance."

*Sec. 91, P.A. 05-280.*

The General Assembly also established, in Sec. 94 of the Act, a "Behavioral Health Partnership Oversight Council" to advise the agencies on the planning and implementation of these new policies and programs. The council is charged with making specific recommendations, reviewing the administrative service organization contract that the two agencies are negotiating (*see infra*), and reviewing the Partnership's progress in achieving "service delivery system goals." The goals cited include reducing unnecessary admissions and lengths of stay in hospitals and residential treatment settings, and increasing the availability of outpatient services. *Sec. 92, P.A. 05-280.*

Furthermore, this new act also requires the two agencies to "direct the activities of the administrative service organization...in the development of a community system of care." This organization will be under contract with the state to "provide clinical management, provider network development and other administrative services." [8] *Sec. 93 and 100, P.A. 05-280.*

---

[8] The administrative service organization, beginning on or after October 1, 2005, will be performing utilization management, intensive care management, quality management, provider network development and management and will authorize services

13

Although the two agencies are required to develop clinical management policies and procedures, another external review committee was established to develop clinical management guidelines for the Partnership. *Sec. 95, P.A. 05-280*.[9]

In short, the legislature has enacted a very comprehensive, detailed scheme, which must be implemented by the defendants, to address the very issues the plaintiffs are asking the court to adjudicate. The defendants are already subject to two federal court orders requiring deinstitutionalization of mentally ill children. See, *Juan F. v. Rell*, H-89-859 *and Emily J. v. Rell*, 3:93CV01944, and is engaged in the expansion of KidCare programs and services. There cannot be any doubt that this is an area of great public importance in Connecticut and any orders from this court could interfere with the state's massive efforts to implement a "coherent policy in an area of comprehensive ... administration." *American Disposal Servs. v. O'Brien, 839 F. 2d 84, 87 (2nd Cir. 1988)*. Moreover, any court order mandating new services or programs for mentally ill children would also affect DSS, another state agency who is not a party to this proceeding, but is a partner to DCF in the delivery of mental health services to children.

In sum, the "degree of specificity" in the new act, coupled with the "necessity of discretionary interpretation" of the law, the fact that mental health treatment has traditionally been one of state concern (see, e.g. Conn. Gen. Stat. § 17a-450 et al); see, *Bethpage Lutheran Services v. Weicker 965 F. 2d 1239, 1243 (2nd Cir. 1992)* and the risk that a court order would have an adverse affect on the implementation of the law as well as on an agency that is not a party

---

based on the clinical guidelines approved by the Partnership. the oversight council and the clinical management committee. *Sec. 100, P.A. 05-280.*

[9] The Act also establishes a consumer grievance requirement, providing consumers with a right to appeal decisions made by the administrative service organization. *Sec. 96, P.A. 05-280.*

14

to this case, all support applying *Burford* abstention in this case.[10]  *See also, Does v. Mills,* 2005 U.S. LEXIS 6603 (D. N.Y 2005) (Class action brought by parents of disabled children challenging new state education regulations was dismissed under Burford abstention because court found a complex state administrative process was in place, in an area of traditional state concern, and involving discretionary interpretation of state law).

The plaintiffs rely in *Dittmer v. County of Suffolk,* 146 F. 3d. 113 (2nd Cir. 1998) to buttress their contention that the court should not abstain from hearing this case. But that case is inapposite; there the Second Circuit found no danger that the federal court would overturn a prior state court or agency determination and thereby disrupt a state administrative scheme because the action concerned the constitutionality of a state law, "a controversy federal courts are particularly suited to adjudicate." *Dittmer, supra at 117* (citations omitted). Moreover, the *Dittmer* plaintiffs were not seeking to influence a state administrative proceeding but only raised federal claims. Here, the plaintiffs are raising both federal and state law claims; they not challenging the constitutionality of any state law; their action could well influence an existing state probate court action (see *infra* ) and the systemwide relief the plaintiffs are seeking would clearly interfere with the complex statutory scheme in place.

The plaintiffs also assert that this court should decline to abstain under *Younger* abstention principles. As explained in the defendants' motion to dismiss, a federal court may not enjoin or interfere in a pending state court proceeding. *Younger v. Harris,* 401 U.S. 37 (1971).[11] In the present case, the defendants assert that pending probate court proceedings concerning placement

---

[10] Additional support for abstaining under *Burford* can be found in the various detailed plans and federal court orders submitted with the motion for summary judgement that would be affected by an adjudication in this case.
[11] The defendants ask this court to refer to the prior motion for further argument in support of abstention on this basis.

of Joseph would be affected by a ruling of this court. Although the plaintiffs claim that any order from this court would not interfere with those proceedings, a review of the latest probate court order involving this plaintiff (Ex. D) will demonstrate that an adjudication in this case could interfere with that pending state court matter. For these reasons, the court should abstain from hearing the case.

**IV. There is no basis to award damages against the defendants; consequently the case is moot as to Susan K. and Omar S.**

Although the plaintiffs acknowledge that Susan is no longer receiving services from DCF and the case is therefore moot as to her, they assert that nevertheless the case should not be dismissed because she still is entitled to money damages. (Pl. Brief, p.32). Omar's claim is also moot as he is no longer seeking a less restrictive placement and is opposed to being moved from foster care.

The plaintiffs' demand for money damages cannot stand. As this court found in its prior ruling on the motion to dismiss, "A private plaintiff suing a government entity under the ADA may recover money damages only if the violation is motivated by "discriminatory animus or ill will based on [the plaintiff's] disability." *W.R. v. Connecticut Department of Children and Families*, 2003 U.S. Dist. LEXIS 5128 (D. Conn. 2003) at *7, quoting *Garcia v. S.U.N.Y. Health Sciences Center, 280 F. 3d 98, 111-112 (2nd Cir. 2001)*. They have admitted that "DCF has made a full commitment to the systems of care model for community-based mental health services...has dedicated itself to incorporating these principles at every level of the organization...Planning for and creating greater community resources is occurring both locally and through the ongoing budget process..." (SUF ¶ 180). They also admit that "there has been a sea change within the organization, placing much

16

greater emphasis on the agency's mental health mandate and particularly on efforts to expand community mental health services." (SUF ¶ 184). They further admit that the agency is committed to the fundamental principle that "each child should be placed in the least restrictive clinically appropriate treatment setting." (¶196). All of these admissions undermine any claim for damages and despite extensive discovery, the plaintiffs still do not have any basis to prove discriminatory animus or ill will based on their disabilities. Moreover, inasmuch as they cannot show a violation of either the ADA or the Rehabilitation Act, there is no legal basis to proceed to trial on the claims for injunctive relief or damages.

### IV. Mootness is Not Avoided by the Relation Back Doctrine

The plaintiffs claim that Susan's claims are not moot because, under the relation back doctrine, this court should look at her status, not at this time, but rather at the time the complaint was filed, as a member of a proposed class. They contend that because of the "inherently transitory" nature of the complaint, if the court grants class certification, her claims would not be moot. However, the caselaw cited to support the application of the relation back theory to this case are all distinquishable. In each case, the court refused to dismiss the case as moot because the court *could not reasonably act on a motion for class certification before the case would be resolved.* In *Swisher v. Brady,* 438 U.S. 204 (1978), a proposed class of delinquents were challenging court procedures that allowed prosecutors to file exceptions with masters before the adjudication of their case. The Supreme Court found that it would be impossible for a court to rule on a motion to certify class before a master would consider and act on these exceptions and therefore a class should be certified. Similarly the Supreme Court ruled in *Gerstein v. Pugh,* 420 U.S. 103 (1975*),* that the likelihood that a pretrial detainee would be released from custody before the court could rule on a request to certify

class led to the determination that the relation back doctrine applied. *See also, Krimstock v. Kelly*, 306 F. 3d 40 (2nd Cir. 2002) (relation back doctrine applied when case would likely become quickly moot when plaintiffs had vehicles seized but returned to them before the court could issue preliminary injunction or certify a class), *Robidoux v. Celani*, 987 F. 2d 931 (2d Cir. 1993)( claim of delayed processing of public assistance beyond 30 day time limit was so inherently transitory that relation back doctrine applied).

Here, the plaintiffs' action has been pending for nearly four years and there is no basis to conclude that the action is inherently transitory[12] or that the court would not have had sufficient time to determine the class before the matter would become moot. *See, e.g. Holstein v. City of Chicago*, 29 F. 3d. 1145 (7th Cir. 1994)( the plaintiff did not even move for class certification "prior to the evaporation of his personal stake" and the nature of the claim concerning unconstitutionality of Chicago's towing statute is not so transitory to support application of relation back doctrine.) Similarly here, the plaintiffs did not file a second motion for class certification until a few months ago, essentially sitting on their rights, rather than expeditiously pursuing class certification. The nature of the action, seeking additional community-based residential placements, is not so transitory as to justify maintaining jurisdiction over moot claims. Therefore the relation back doctrine has no applicability in this case.

---

[12] In fact, the plaintiffs' contention that their case is "inherently transitory justifying applying the relation back doctrine undermines their claim that they are "languishing in placement."

18

## Conclusion

For all of these reasons, the defendants ask that the action be dismissed.

DEFENDANTS

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Susan T. Pearlman
Assistant Attorney General
Federal Bar No. 06338
110 Sherman Street
Hartford, CT 06105
Tel: (860) 808-5480
Fax: (860) 808-5595
Susan.Pearlman@po.state.ct.us

Carolyn Signorelli
Assistant Attorney General
Fed. Bar No. 17534
55 Elm St. 3rd Floor Annex
Hartford, CT. 06106

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 27th day of October, 2005 first class postage prepaid to:

Attorney Catherine L. Williams
Connecticut Legal Services
211 State Street
Bridgeport, CT 06604
Phone: 203 336-3851
Fax: 203 333-49776

Attorney Lori Welch-Rubin
129 Whitney Avenue
New Haven, CT 06515
Phone: 203 772-6680
Fax: 203 772-2194

Attorney Bet Gailor
Attorney Anne Louise Blanchard
Connecticut Legal Services
872 Main Street
Willimantic, CT 06226
Phone: 860 451761
Fax: 860 456-7420

Susan T. Pearlman
Assistant Attorney General

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| W.R., ET. AL.<br>*Plaintiffs* | : | CIVIL ACTION NO.<br>3:02CV429(RNC) |
| v. | : | |
| CONNECTICUT DEPARTMENT OF<br>CHILDREN and FAMILIES, ET AL.,<br>*Defendant* | : | October 26, 2005 |

### AFFIDAVIT OF ERIC MOORE

I, Eric Moore, having been sworn, depose and say:

1. I am over eighteen years of age and believe in the obligation of an oath. This affidavit is based upon my personal knowledge.

2. I am currently a social worker employed by the Department of Children & Families ("DCF") and have been assigned to the case of Omar S., a youth currently participating in DCF's voluntary program for youth over the age of 18.

3. On July 13, 2005, the Superior Court for Juvenile Matters in Willimantic granted the Department's Revocation of Commitment based upon Omar having left his placement at Barnard House in Connecticut on April 9, 2005 and he and his mother having signed letters refusing further services from the Department at his mother's home in New York on May 31, 2005.

4. On August 25, 2005, three days prior to Omar's 18th birthday, counsel for the plaintiff's in this case filed an Application for Temporary Injunction with the Superior Court for Juvenile Matters at Willimantic requesting that Omar be permitted to re-enter the custody of DCF.

EXHIBIT A

5. At a hearing before the Juvenile Matters Court held August 26, 2005, DCF agreed to a court order vacating the July 13, 2005 order granting the Revocation of Commitment.

6. Omar re-entered DCF's custody on August 26, 2005 and agreed to participate in its voluntary service program for youth who are committed to DCF on their 18th birthday.

7. Omar was placed in a DCF licensed foster home in Hampton, CT and is receiving appropriate educational services at Parish Hill High School. According to the reports of his teachers, the school psychologist and his foster mother, Omar is functioning well in his current setting.

8. Omar has expressed to the undersigned that he wishes to remain in his current placement and to continue his education at Parish Hill. Omar has not and is not requesting a different placement at this time.

9. I have read the above statements and they are true and accurate to the best of my knowledge.

_____
Eric Moore

STATE OF CONNECTICUT    )
COUNTY OF WINDHAM       )

Sworn and subscribed before me on this 26th day of October, 2005.

_____
Notary/
Commissioner of the Superior Court

**EILEEN M. LEE**
**COMMISSION EXPIRES 2/28/09**