# ATTACHMENT B

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

W.R., individually and on behalf of her minor son,
JOSEPH R.; SUSAN K.; M.O., individually and on
behalf of her minor son, OMAR S.; and on behalf
of all others similarly situated

    PLAINTIFFS

VS.                                                    CIV. NO. 302CV429 (RNC)
CONNECTICUT DEPARTMENT OF CHILDREN
AND FAMILIES, and

CHRISTINE REGALIA, in her official capacity as
Commissioner of the Connecticut Department of
Children and Families

    DEFENDANTS                                  June 20, 2003

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFFS' SECOND SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION

**PLEASE TAKE NOTICE** that you are hereby required. pursuant to Fed.R.Civ.P.

33. as amended, to serve upon the undersigned a copy of your individual answers and

objections, if any, in writing and under oath to the following interrogatories related to

class certification within thirty (30) days after service of the interrogatories.    The

answers should be inserted in the space provided.   If there is insufficient space to

answer an interrogatory, the remainder of the answer should   follow on a supplemental

sheet.

These shall be deemed to be continuing interrogatories. If, between the time of your answers and the time of the trial of this case, you or anyone acting on your behalf learn of further information not contained in your answers, you shall promptly furnish said information to the undersigned by supplemental answers.

## INSTRUCTIONS

The following instructions and definitions form an integral part of these interrogatories, and the interrogatories are to be read in accordance with these instructions and definitions.

I. "Document":

The term "document" means any written, printed, typed, or other graphic matter of any kind or nature, however produced or reproduced. whether sent or received or neither, including drafts and copies bearing notations or marks not found on the original, and includes, but is not limited to:

(a)   all contracts, agreements, representations, warranties, certificates, opinions,

(b)   all letters or other forms of correspondence or communications. including envelopes, notes. telegrams, cables, telex messages. messages (including reports, notes, notations and memoranda of or relating to telephone conversations or conferences),

(c)   all memoranda, reports, test results, financial statements or reports, notes, transcripts, tabulations, studies, analyses, evaluations, projections, work papers, corporate records or copies thereof, lists, comparisons, questionnaires, surveys, charts, graphs, summaries, extracts, statistical records, compilations,

2

(d)   all desk calendars, appointment books, diaries,

(e)   all books, articles, press releases, magazines, newspapers, booklets, circulars, bulletins, notices, instructions, manuals,

(f)   all minutes or transcripts of all meetings,

(g)   all photographs, microfilms, phonographs, tapes or other records, punch cards, magnetic tapes, discs, data cells, drums, print-outs, and other data compilations from which information can be obtained.

II.   "Communications":

The term "communication" means not only oral communications but also any "documents" (as such terms in defined in paragraph I above), whether or not such document or the information contained therein was transmitted by its author to any other person.

III.   "Identify". "Identity" or "Identification":

A.   When used in reference to a natural person, the terms "identify". "identity or identification" mean to provide the following information:

(i)   full name;

(ii)   present or last known business and residence addresses;

(iii)   present or last known business affiliation; and

(iv)   present or last know business position (including job title and a description of job functions, duties and responsibilities).

B.   When used with reference to any entity other than a natural person, state;

(i)   its full name;

(ii)   the address of its principal place of business;

    (iii)    the jurisdiction under the laws of which it has been organized or incorporated and the date of such organization or incorporation;

    (iv)    the identity of all individuals who acted and/or who authorized another to act on its behalf in connection with the matters referenced to;

    (v)    in the case of a corporation, the names of its directors and principal officers; and

    (vi)    in the case of an entity other than a corporation, the identities of its partners or principals or all individuals who acted or who authorized another to act on its behalf in connection with the matters referred to.

C.    When used in reference to a document, the terms "identify", "identity" or "identification" mean to provide the following information:

    (i)    the nature of the document(e.g. letter, contract, memorandum) and any other information (i.e , its title, index or file number) which would facilitate in the identification thereof;

    (ii)    its present location and the identity (as defined in Paragraph III(A) hereof) of its present custodian or, it its present location and custodian are not known, a description of its last known disposition;

    (iii)    its subject matter and substance or, in lieu thereof, annex a legible copy of the document to the answers of those interrogatories;

    (iv)    the identity (as defined in paragraph III(A) hereof) of each person who performed any function or had any role in connection therewith

4

(i.e., author, contributor of information, recipient, etc.) Or who has any knowledge; and

(v) if the document has been destroyed or is otherwise no longer in existence or cannot be found, the reason why such document no longer exists, the identity (as defined in paragraph III(A) hereof) of the person(s) responsible for the document no longer being in existence and of its last custodian.

D. When used in connection with an oral communication, the terms "identify", "identity" and "identification" mean to provide the following information:

(i) its general nature (i.e., conference, telephonic communications, etc.);

(ii) the time and place of its occurrence;

(iii) its subject matter and substance;

(iv) the identity (as defined in paragraph III(A) hereof) of each person who performed any function or had any role in connection herewith or who has any knowledge thereof together with a description of each such person's function, role, or knowledge, and

(v) the identity (as defined in paragraph III(C) hereof) of each document which refers thereto or which was used, referred to or prepared in the course or as a result thereof.

IV    "Describe" or "Description":

A. When used with respect to any act, accounting, activity, audit, practice, process, occurrence, occasion, course of conduct, happening,

negotiation, relationship, scheme, communication, conference, discussion, development, service, transaction, instance, incidence or event, the terms "describe" or "description" mean to provide the following information:

    (i)    its general nature;

    (ii)    the time and place thereof;

    (iii)    a chronological account setting forth each element thereof, what such element consisted of and what transpired as part thereof;

    (iv)    the identity (as defined in paragraph III(A) hereof) of each person who performed any function or had any role in connection therewith (i.e., speaker, participant, contributor or information, witness, etc.) Or who had any knowledge thereof together with a description of each such person's function, role or knowledge;

    (v)    the identity (as defined in paragraph III(C) hereof) of each document which refers thereto or which was used, referred to or prepared in the course or as a result thereof; and

    (vi)    the identity (as defined in paragraph III(D) hereof) of each oral communication which was a part thereof or referred thereto.

B.    When used in connection with any calculation or computation, the terms "describe" or description" mean to provide the following information:

(i)    an explanation of its meaning (including the nature, source and meaning of each component part thereof);

(ii)    an explanation of the manner in which it was derived;

(iii)    the identity (as defined in paragraph III(A) hereof) of each person who performed any function with respect thereto and a description of his function;

(iv)    the identity of each document (as defined in paragraph III(C) hereof) which refers thereto or which was used, referred to or prepared in the course or as a result thereof; and

(v)    the identity (as defined in paragraph III(D) hereof) of each oral communication which occurred in the course of the preparation thereof or which referred thereto.

V.    "Factual basis":

The term "factual basis" means (A) set forth each item of information upon which the allegation, contention, claim or demand to which it pertains is based, and (B) with respect to each such item of information, identify each person having knowledge thereof and identify and describe (as defined in paragraph III and IV hereof) each source thereof including but not limited to each document, oral communication, act, action, activity, accounting negotiation, practice, process, occurrence, occasion, course of conduct, happening, relationship, scheme, conference, discussion, development, service, instance, incident, event, calculation and computation upon which you rely with respect thereto.

VI.    "Relates to" or "thereto":

The terms "relates to" or "thereto", relating to" or "thereto" when used in connection with any act, action, activity, accounting practice, process, occurrence, occasion, course of conduct, contractual provision or document, happening, relationship, scheme, conference, discussion, development, service, instance, incident, event, etc., means used or occurring or referred to in the preparation therefore, on in the course thereof, or as a consequence thereof, or referring thereto.

VII.    Answer by Reference to Documents:

If any interrogatory is answered by reference to a document or group of documents, with respect to each such interrogatory answer, identify (as defined in paragraph III(C) hereof) the specific document or documents containing the requested information.

VIII.    "Person":

The term "person" means all natural persons, corporations, partnerships or other business associations, public authorities, municipal corporations, state governments, local governments, all governmental bodies, and all other legal entities.

IX.    "You" or "Your":

the terms "you" or "yours" shall be deemed to refer to Defendants.

X.    The purpose of these interrogatories is not to place any unfair burden on the defendants, but rather the purpose is to obtain all information that will be used at trial. The defendants need only provide as many examples to support any particular claim as they intend to use at trial. If defendants intend to only refer to one example at trial, they

need only state such example here. If Defendants intend to introduce more than one example, then they need to state all examples here.

The plaintiffs realize that defendants may argue that they are only presenting representative examples at trial, however plaintiffs are entitled to know what representative examples will be used in order for them to prepare their defense.

1.    At the close of the last completed fiscal year, for children and youth residentially placed by DCF, provide:

   a.    Total number of children and youth in placement.

   b.    The number of children and youth in placement in Connecticut Childrens' Place.

   b.    The number of children and youth in placement in High Meadows.

   d.    The number of children and youth in placement in Connecticut Junior Training School.

   e.    The number of children and youth in placement in Riverview Hospital.

   f.    The total number of children and youth in placement in shelters.

   g.    The number of children and youth in placement in residences (excluding those mentioned in above paragraphs a-f) with 25 or more beds.

      a.    The names, addresses and number of beds for each of the residences.

   h.    The number of children and youth in placement in residences (excluding those mentioned in above paragraphs a-f) with more than 10 and less than 25 beds.

      a.    The names, addresses and number of beds for each of the

residences.

i.  The number of children and youth in placement in residences, other than foster homes, with 10 or less beds.

    a.  The names, addresses and number of beds for each of the residences.

    a.  The number of children and youth in placement in foster homes.

2.  Provide the average annual non-educational cost for a child or youth residentially placed at:

    a.  Connecticut Children's Place.

    b.  High Meadows.

    c.  Connecticut Junior Training School.

    d.  Private residential placements with 25 or more beds.

    e.  Private residential placements with more than 10 but less than 25 beds.

    f.  Private residential placements with 10 or less beds.

3.  Identify all DCF reports, studies and documents by title and author discussnig residential costs and benefits and or detriments of the various types of residential placements provided by DCF.

4.  Identify all persons who assisted in the preparation of answers to these interrogatories and state the specific interrogatory(ies) which each person provided assistance in answering.

## REQUEST TO PRODUCE (INSTRUCTION)

If the defendants refuse to answer and/or objects to any production request in whole or in part, describe the basis for the refusal or objection in detail

10

sufficient to permit the Court to adjudicate the validity of such refusal or objection.

Where exact information cannot be furnished, estimated information should be supplied to the extent possible. Where estimation is used, the same should be so indicated, and an explanation given as to the basis upon which the estimate was made.

Each document produced must be labeled to indicate to which request for production it is responsive.

If a document responsible to any request has been lost, mutilated or destroyed, so state; identify such document and state to which request(s) the document would have been responsive.

If there are no such documents in the defendants' custody or control with respect to a particular request for production, so state.

If any document falling within the scope of any request for production is withheld under a claim of privilegé, so state and identify such document, state to which request(s) it would have been responsive, and include information as to the date of the document, the name of the person or entity who drafted or authorized it, its title, the person or entity to whom it was addressed, sent or delivered, and state the ground(s) on which such document is considered to be privileged from production.

"Document" or "record" means any printed, typewritten, handwritten, or otherwise recorded matter of whatever character, including, but without limitation, files, correspondence, contracts, logs, minutes of meetings, agreements, letters, purchase orders, memoranda, telegrams, notes forms, catalogues, brochures, manuals, diaries, reports, calendars, interoffice communications, instructions, statements, jottings,

announcements, depositions, affidavits, negotiable instruments, photographs, tape

recordings, motion pictures and any carbon or photographic copies of any such material

if defendants do not have custody of the original

    1. Please provide all documents identified in, described in, or supporting the

defendants' responses to the above Interrogatories.

By_____
    Douglas Crockett, Esq.
    Bet Gailor, Esq.
    Anne Louise Blanchard, Esq.
    Connecticut Legal Services
    Federal Bar No. ct 06166
    Federal Bar No. ct 01981
    Federal Bar No. ct 08718
    872 Main Street
    Willimantic, Connecticut  06226
    Telephone:  (860) 456-1761
    Fax:: 860 456-7420
    Dcrockett@connlegalservices.org
    Bgailor@connlegalservices.org
    Ablanchard@connlegalservices.org

# CERTIFICATION

I certify that a copy of the foregoing Plaintiffs' First Set of Interrogatories and Request for Production was mailed, by United States mail, postage prepaid, to the following counsel of record on the 11th day of July, 2003:

Attorney Susan T. Pearlman
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06106

Attorney John Tucker
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06106

Lori Welch-Rubin, Esq.
Engelman & Welch-Rubin, LLP
195 Church St., 11th floor
New Haven, CT 06510

Douglas Crockett

# ATTACHMENT C



**CONNECTICUT LEGAL SERVICES**

A PRIVATE NONPROFIT CORPORATION
872 MAIN STREET P.O. BOX 258 WILLIMANTIC, CT 06226-258
TELEPHONE (860) 456-1761 OR 1-800-413-7796 (CLIENT TOLL-FREE LINE)
FAX (860) 456-7420
E-MAIL CLSWILLIMANTIC@CONNLEGALSERVICES.ORG

SHIRLEY BERGERT
DIRECTOR OF
 PUBLIC BENEFITS TASK FORCE

ANNE LOUISE BLANCHARD
DIRECTOR OF CHILDREN AT
 RISK AND LITIGATION TEAM

ELLEN J. DOWNING
CHERYL DIANE FEUERMAN
BET GAILOR
JOELEN J. GATES
ANNE E. LUCAS
WENDY W. WANCHAK
ATTORNEYS-AT-LAW

THOMAS W. CRATTY JR.
LAUREL J. FREEMAN
PARALEGALS

ADMINISTRATIVE OFFICE
62 WASHINGTON STREET
MIDDLETOWN, CT 06457
(860) 344-0447

ROBERT DOLIAN
BOARD CHAIR

MARVIN FARBMAN
EXECUTIVE DIRECTOR

LAW OFFICES

211 STATE STREET
BRIDGEPORT CT 06604

587 MAIN STREET
NEW BRITAIN CT 06051

153 WILLIAMS STREET
NEW LONDON CT 06320

20 SUMMER STREET
STAMFORD CT 06901

85 CENTRAL AVENUE
WATERBURY CT 06702

872 MAIN STREET
WILLIMANTIC CT 06226

SATELLITE OFFICES
(CALL FOR OFFICE HOURS)

5 COLONY STREET
MERIDEN, CT 06451

62 WASHINGTON STREET
MIDDLETOWN, CT 06457

98 SOUTH MAIN STREET
SOUTH NORWALK CT 06854

564 PROSPECT STREET
TORRINGTON CT 06790

155 WEST MAIN STREET
ROCKVILLE CT 06066

April 15, 2004

Attorney Susan Pearlman
Office of the Attorney General
110 Sherman Street
Hartford, CT 06106

<u>VIA FACSIMILE</u>

<u>Re: WR v. Dunbar, Civ. No. 302CV429 (RNC)</u>

Dear Susan:

The purpose of this letter is to advise you that we would like to postpone the deposition of Karen Synder that we scheduled yesterday for April 28, 2004 at 8:30 a.m. The reason for the postponement is two-fold: first, Lori-Welch Rubin is unavailable that day and wants to attend. Second, and more significantly, we do not wish to conduct the deposition when we have not had access to the documents that we requested in our previously filed requests for production and without review of supplemental answers to interrogatories. The deposition will run more smoothly if we have had an opportunity to review recent data prior to the deposition.

Thus, we ask that the DCF comply with its obligation to promptly provide us with supplementation of all documents and information described in our first and second sets of interrogatories and requests for production as required by the federal rules. I suggest that the DCF provide us with this information no later than Friday, April 30, 2004. If we have obtained the documents by that date, then we would be willing to schedule Ms. Synder's deposition for late the following week.

Catherine Williams and I will both be away on vacation next week.



Attorney Susan Pearlman
April 15, 2004
Page 2


Please contact Anne Louise if you have any questions or concerns regarding this matter; she will be back in the office on Monday.

Very truly yours,

Bet Gailor


Enclosure

c:  Attorney Carolyn Signorelli (via facsimile)
    Attorney Lori Welch-Rubin (via facsimile)

# ATTACHMENT D

You forwarded this message on 12/15/2005 12:42 PM.

**Anne Louise Blanchard**

| From: | Bet Gailor | | |
|---|---|---|---|
| To: | 'susan.pearlman@po.state.ct.us' | Sent: | Fri 7/23/2004 10:58 AM |
| Cc: | Anne Louise Blanchard; Catherine Williams | | |
| Subject: | WR v. DCF discovery | | |
| Attachments: | | | |

Dear Susan,

As you may recall, at the deposition of Karen Synder, we asked DCF to up-date its discovery responses so that we could complete her deposition. It is my understanding that later, at the Milstein deposition, you expressed some confusion regarding what documents we were seeking. I trust this e-mail will clarify matters for you.

As you know, the interrogatories and requests for production we presented to you last summer are continuing interrogatories, as stated therein. We haven't received any supplemental records or responses of any kind from your office since last summer, however. Please refer to items 1-6 in Plaintiffs' First Set of Interrogatories dated June 20, 2003 and the requests for production that follow them, and to Plaintiffs' Second Set of Interrogatories and Request for Production dated June 20, 2003, pages 9-12 for issues pertaining to the Snyder depositions in particular. We are aware that throughout the past year the DCF has been making efforts to develop a greater number of in-state placements for children who are currently placed in out-of-state residential facilities. (For example, the DCF held a conference to solicit RFPs from service providers last April, a conference at which Karen Synder presented.) Information relating to this effort, as well as the names of the other staff members who worked on it, must be provided to us. If you still are confused, let me know. Otherwise, let me know when the documents are ready and I will gladly pick them up.

Also, with regard to plaintiffs' discovery responses to defendants, we received written notice yesterday that Yale Hospital does not have any records pertaining to Shonna. Since that is clearly incorrect, we will pursue obtaining those documents from Yale.

Finally, as you know, we filed an Application for Temporary Injunction on Wednesday for Shonna. It is our understanding that the application will be heard on Wednesday or Thursday of next week. We can ask for the hearing to be continued if DCF is willing to commit to continuing Shonna's current placement until after it discharges its obligations to her under the Settlement and Interagency Agreements.

Bet
860 490-3657, ext. 111
860 490-3657 (cell)

# ATTACHMENT E

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**COPY**

W.R., INDIVIDUALLY AND ON          :
BEHALF OF HER MINOR SON,
ET AL.,                            :

JEANNE MILSTEIN, CHILD             :
ADVOCATE OF THE STATE OF
CONNECTICUT,                       :

                    PLAINTIFFS,    :          CIV. NO. 302CV429 (RNC)

VS.                                :

CONNECTICUT DEPT. OF CHILDREN:
AND FAMILIES, AND
                                   :
DARLENE DUNBAR, IN HER OFFICIAL
CAPACITY AS COMMISSIONER OF THE
CONNECTICUT DEPARTMENT OF
CHILDREN AND FAMILIES,             ;

                    DEFENDANTS.    :

                                   WEDNESDAY, APRIL 14, 2004
                                   9:10 O'CLOCK A. M.

DEPOSITION OF KAREN LEE SNYDER

WALTER ROCHOW, L.S.R.
Licensed Shorthand Reporter
P.O. BOX 5416
HAMDEN, CONNECTICUT 06518-5416
203-281-1778
CT Lic. #004

2

APPEARANCES:

CONNECTICUT LEGAL SERVICES, INC.
ATTORNEYS FOR PLAINTIFFS
872 MAIN STREET
P. O. BOX 258
WILLIMANTIC, CONNECTICUT 06226
BY:  BET GAILOR, ESQ., OF COUNSEL.

CONNECTICUT LEGAL SERVICES, INC.
ATTORNEYS FOR PLAINTIFFS
211 STATE STREET
BRIDGEPORT, CONNECTICUT 06604
BY:  CATHERINE L. WILLIAMS, ESQ., OF COUNSEL.

LORI WELCH-RUBIN, ESQ.
ATTORNEY FOR CHILD ADVOCATE OFFICE,
  STATE OF CONNECTICUT
195 CHURCH STREET
NEW HAVEN, CONNECTICUT 06510
(NOT IN ATTENDANCE)

OFFICE OF THE ATTORNEY GENERAL
ATTORNEY FOR DEFENDANTS
110 SHERMAN STREET
HARTFORD, CONNECTICUT 06106
BY:  SUSAN T. PEARLMAN, ESQ., OF COUNSEL., AND
     CAROLYN SIGNORELLI, ESQ., OF COUNSEL.

1    K A R E N    L E E    S N Y D E R,

2    505 Hudson Street, Hartford, Connecticut,

3        called as a witness, having been first duly

4        sworn by Walter Rochow, a Notary Public

5        in and for the State of Connecticut, was

6        examined and testified as follows:

7    DIRECT EXAMINATION

8    BY MS. WILLIAMS:

9        Q.  Good morning.  Could you please tell me

10   the name of your employer and your current

11   title?

12       A.  I work for the Department of Children

13   and Families.

14                    I am the chief of

15   operations/assistant commissioner.

16       Q.  What does that mean, chief of

17   operations?  What does that entail?

18       A.  It means that I oversee the

19   programmatic operations of the department.

20       Q.  The programmatic operations is what,

21   specifically?

22       A.  It involves overseeing the Bureau of

23   Child Welfare, the Bureau of Behavioral Health.

24   More recently, the Bureau of Juvenile Justice.

25       Q.  Your educational background, please?

1    your family and supported by your family, but

2    not with your family, but you live in a group.

3        Q.  Do any of those group homes exist in

4    Connecticut now?

5        A.  Yes.

6        Q.  Where are they located --  I will back

7    up.

8                How many of them exist?

9        A.  I don't know.  If you want to know the

10    exact number, I would need to get that for you.

11                MS. WILLIAMS:  I would appreciate

12    it if we could get that.

13                MS. PEARLMAN:  That must be

14    upstairs.

15        Q.  Do you recall, roughly, where they are

16    located?

17        A.  They are located in various areas.

18                I know there is one in Enfield.

19    They are around the state.  I can get you that

20    list, and then tell you how many and where they

21    are.

22        Q.  Would you be able to say that there are

23    10?  20?  30?

24                MS. PEARLMAN:  If you want to

25    take a break, I can go up and get the list.

1    money on behavioral health services.

2                    Being hopeful and anticipatory

3    that, in fact, that which is in the governor's

4    budget or some close facsimile of that will be

5    approved out of this elective session.

6                    Just recently we issued an RFP

7    for family support team, two group homes, and

8    treatment foster care.

9                    MS. WILLIAMS:  Let's take a

10   break.

11                   (Recess:  11:00 to 11:05 a.m.)

12   BY MS. WILLIAMS:

13       Q.   The reference in your last answer to

14   the RFP, that is a request for proposal -- is

15   that what it is?

16       A.   Yes.

17       Q.   I am skipping ahead in a series of

18   questions that I had since you raised it,

19   anyway.  The one you are referencing is request

20   for proposal for therapeutic community services

21   for children and families, is that correct?

22       A.   Yes.

23       Q.   And that is out of your department?

24       A.   Yes.

25       Q.   Are you aware that DCF is under a

1    continuing obligation to provide the W.R.

2    plaintiff with such information pursuant to

3    earlier discovery requests?

4        A.  No.  Meaning that I need to send them

5    that?

6        Q.  Yes.

7        A.  No, I did not know that.

8        Q.  Who, in your department, is assigned to

9    ensure DCF complies with continuing discovery

10   requests?

11           MS. PEARLMAN:  I will object to

12   the form of the question.

13           There is no obligation by DCF to

14   assign somebody to do that kind of work.

15           MS. WILLIAMS:  Then all she has

16   to say is that nobody has been assigned.

17       A.  Actually, I don't know.  I don't know

18   if anyone was assigned.

19       Q.  In the "Purpose" section of the RFP

20   that you referenced, it says, "This RFP advances

21   an opportunity for significant system

22   development through the introduction of

23   treatment foster homes, family support teams,

24   and therapeutic group homes."

25           Is the term "introduction"

## CERTIFICATE

106

I, WALTER ROCHOW, L.S.R., A LICENSED SHORTHAND REPORTER AND NOTARY PUBLIC, DO HEREBY CERTIFY THAT I AM DULY COMMISSIONED AND QUALIFIED TO ADMINISTER OATHS IN AND FOR THE STATE OF CONNECTICUT.

I FURTHER CERTIFY THAT THE DEPONENT NAMED IN THE FOREGOING DEPOSITION WAS BY ME DULY SWORN AND THEREUPON TESTIFIED AS APPEARS IN THE FOREGOING TRANSCRIPT; THAT SAID DEPOSITION WAS TAKEN BY ME STENOGRAPHICALLY, AND REDUCED TO A TRANSCRIPT BY ME OR UNDER MY DIRECTION; THAT THE FOREGOING TRANSCRIPT IS A TRUE, ACCURATE AND COMPLETE RENDITION OF THE TESTIMONY GIVEN BY THE DEPONENT.

I FURTHER CERTIFY THAT I AM NEITHER OF COUNSEL, NOR ATTORNEY TO ANY OF THE PARTIES TO SAID CAUSE, NOR AM I INTERESTED IN THE OUTCOME OF SAID MATTER.

WITNESS MY HAND AND SEAL AS A NOTARY PUBLIC THIS __20TH__ DAY OF __APRIL, 2004__ .

WALTER ROCHOW, L.S.R.
NOTARY PUBLIC.

MY COMMISSION EXPIRES: JUNE 30, 2006.

WALTER ROCHOW, L.S.R.
Licensed Shorthand Reporter
P.O. BOX 5416
HAMDEN, CONNECTICUT 06518-5416
203-281-1778
CT Lic. #004