UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BARBARA P., on her own behalf,

PLAINTIFFS

CIV NO. 302CV429 (RNC)

VS.

CONNECTICUT DEPARTMENT OF CHILDREN
AND FAMILIES and
DARLENE DUNBAR, in her official capacity as
Commissioner of the Department of Children and
Families                                                                    April 18, 2006
DEFENDANTS
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>MEMORANDUM IN SUPPORT OF PLAINTIFF BARBARA P.'S
MOTION FOR JOINDER UNDER FED. RULE CIV. P. 20(A)</u>

I. <u>Introduction</u>:

Barbara P. submits this memorandum in support of her Motion for Permissive Joinder of a Party to *WR v DCF*, Civ. No. 302CV429 (RNC), pursuant to Fed. Rule Civ. Proc. 20(a) and Local Rule of Civ. Proc. 7(a). She also submits the Complaint of Proposed Plaintiff Barbara P.

Proposed plaintiff Barbara P. is a nineteen year old young woman with a long history of serious emotional disabilities and behavioral issues who has been raised by the Department of Children and Families ("DCF") since the age of five years as a committed child. Barbara P. suffered sexual abuse as a young child and suffered physical abuse both

prior to and while in the custody of DCF. She has been variously diagnosed as having Oppositional Defiant Disorder ("ODD"), Post Traumatic Stress Disorder ("PTSD"), Attention Deficit Hyperactivity Disorder ("ADHD"), Victim of Sexual and Physical Abuse, Nonverbal Learning Disability, Psychosocial Stressors including dysfunctional family, history of abuse, multiple behavior problems, Adjustment Disorder, Disturbance of Conduct, Major Depression Disorder, and Reactive Attachment Disorder. Barbara P. was most recently assessed at the Genesis Center in November 2005, at her initiation, for purposes of renewing medical prescriptions. The Genesis Center diagnosed her with ADHD, R/O (rule-out) Bipolar Disorder, R/O Pervasive Developmental Disorder and R/O Borderline Personality Disorder. *Proposed Complaint,* ¶¶ *1, 15*

Barbara P. remained continuously in DCF custody for the following fourteen years, through September of 2005. During that time, DCF psychiatrically hospitalized Barbara at least five times: at Newington Children's Hospital, Elmcrest Hospital (twice), Natchaug Hospital and Mt. Sinai Hospital. Barbara P. also had a history of partial hospitalization as well as out patient therapy. In addition to those disruptions in her placement, DCF moved Barbara P. at least thirty-nine additional times - in and out of regular foster homes, residential facilities, relative foster care, therapeutic foster homes, specialized foster care, group homes, transitional living placements (TLAP programs), youth shelters, adult shelters, independent living placements (IL programs), community housing assisted placement (CHAPs), and out of state placements. DCF also sporadically placed Barbara in her mother's home although she had been adjudicated neglected by her mother's care. As Barbara became older, DCF failed to find placements for her, forcing

her to spend nights on the street while moving from shelter to shelter. DCF's past and ongoing failure to provide placements to Barbara to meet her treatment needs and to keep her safe caused and continues to cause her irreparable harm. Moreover, DCF placed Barbara P. in these inappropriate placements with full knowledge that they were detrimental to her and were unsafe. *Proposed Complaint, ¶4.*

In addition, the fact of her multiple placements was listed in her DSM IV diagnosis as a psychosocial and environmental stressor impacting her mental health functioning. The multiple placements resulted in her ongoing fear of rejection and abandonment which actually inspired disruptive behavior on her part so that she could leave placements on her own terms rather than those of her foster parents. *Proposed Complaint, ¶¶39, 40.*

Despite repeated warnings of experts regarding Barbara's need for stability, structure, permanency and support, DCF instead provided her with multiple placements in settings which did not provide the supports she needed. Even in the two foster situations which had actually enabled Barbara to have some stability, if only from the chance to stay in one place for a time, DCF failed to support the placements. As a result, they too failed. *Proposed Complaint, ¶¶20,22,24,26,28,31-32,38,41,44-45, 59, 71.*

The physical, psychological, social, and emotional harm Barbara has suffered over the past fifteen years in DCF care is a direct result of the DCF's failure to provide her with clinically appropriate treatment in community-based settings in violation of Barbara's rights under the Americans with Disabilities Act, Section 504 of the

Rehabilitation Act, Conn. Gen. Stat. §17a-3, Conn. Gen. Stat. §17a-16, and Article First, §20 of the Constitution of the State of Connecticut.

During the entire time of Barbara's commitment, DCF failed to provide her with the stability and long term intensive treatment she required, exposed her to harm, including physical abuse and homelessness, prevented her from making progress in her treatment goals, and isolated her from the community due to the incredible string of short term placements it provided. With thirty-nine placements in fifteen years, Barbara P., an ADHD child with post traumatic stress disorder, depression and severe behavioral issues, clearly needed structure, nurturing and stable supports, yet averaged only 4.6 months in each placement (not counting the disruptions due to hospitalizations).

The details of Barbara's history at the hands of DCF arise out of the same set of circumstances that gave rise to the claims of the other named plaintiffs in the *W.R. v. DCF* suit; namely, the systemic failure of DCF to provide clinically appropriate treatment in community-based settings to mentally ill children in its care. Like the other named plaintiffs, Barbara was placed in multiple foster home placements which failed to provide the intensive level of care she required. DCF is aware that Barbara's needs can be met in a professionally staffed community-based placement and that the overall cost of such a placement is comparable to the cost of the institutional care she has been provided. Even more importantly, DCF is aware that the intensive level of services Barbara requires can be provided in a smaller, more family-like setting in the community where she is more likely to achieve positive outcomes and learn skills necessary to live in the community as an adult. Nevertheless, Barbara remains without any placement, and is in fact homeless,

4

solely because DCF has not created the therapeutic group home she needs in order to transition into the community. Barbara P. seeks declaratory and injunctive relief, as well as damages.

II. Argument

    A.  <u>Plaintiff Barbara P.'s motion for permissive joinder should be granted because her claims arise out of the same series of transactions or occurrences as the claims of the named plaintiffs Susan K., Omar S., and Joseph R, and there are questions of law and fact in common.</u>

    F.R.C.P. 20(a) provides, in pertinent part:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action..... A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

"The well-established policy underlying permissive joinder is to promote trial convenience and expedite the resolution of lawsuits." *Puricelli v. CNA Insurance*, 185 F.R.D. 139, 142 (N.D.N.Y. 1999), *citing Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1421 (S.D.N.Y. 1989). "The Supreme Court has recognized this policy, stating that 'the impulse [under the Rule] is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Puricelli v. CNA Ins. Co.*, 185 F.R.D. at 142, *citing United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1137, 16 L.Ed.2d 218 (1966).

"The provisions for permissive joinder under Rule 20 are very broad and the court is given discretion to decide the scope of the civil action and to make such orders as

5

will prevent delay or prejudice." *Fed. Deposit Ins. Corp. v. Haines*, 179 F.R.D. 66, 68 (D. Conn. 1997), citing *Arrington v. City of Fairfield*, 414 F.2d 687, 693 (5th Cir. 1969); *Briarpatch Ltd., L.P. v. Pate*, 81 F.Supp.2d 509, 515 (S.D.N.Y. 2000), citing *Wyant v. National R.R. Passenger Corp.*, 881 F.Supp. 919, 921 (S.D.N.Y.1995); CJS Fed. Civ. Proc. §141.

> Joinder of parties under rule 20(a) is not unlimited..... The rule imposes two specific requisites to the joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence; and (2) some question of law or fact common to all the parties will arise in the action. Both of these requirements must be satisfied in order to sustain party joinder under rule 20(a).

*Wright & Miller, 7 Fed. Prac. & Proc. Civ.3d §1653.*

"District courts in [the 2d Circuit] have generally agreed that in exercising the discretion whether to admit new parties, 'courts first consider whether joinder would be appropriate under Rule 20 and then proceed to weigh the competing interests in efficient adjudication and the need to protect diversity jurisdiction from manipulation.'" *Briarpatch Ltd., L.P. v. Pate*, 81 F.Supp.2d at 515, citing *Wyant v. National R.R. Passenger Corp.*, 881 F.Supp. at 922.

"A determination of whether claims arise out of the 'same series of transactions or occurrences' is a 'flexible' standard which " enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding under the provisions of Rule 20." *Wright & Miller, 7 Fed. Prac. & Proc. Civ.3d §1653.* "Courts have generally adopted a case-by-case approach in determining whether plaintiffs' claims constitute a "single

6

transaction or occurrence' for purposes of Rule 20." *Puricelli v. CNA* at 142, *citing Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). Rule 20(a) permits "all logically related claims by or against different parties to be tried in a single proceeding". *Epstein v. Kemper Insurance Co.*, 210 F.Supp.2d 308, 320 (S.D.N.Y. 2002), *citing Blesedell v. Mobil Oil Co.*, 708 F.Supp. 1408, 1421 (S.D.N.Y. 1989).

District courts in the Second Circuit have found Rule 20(a)'s requirements satisfied where plaintiffs in discrimination cases have raised similar legal issues and where the factual bases for the claims are essentially the same. In *Epstein v. Kemper Insurance Co., supra,* for example, defendants filed a motion to sever, claiming that employment decisions regarding each plaintiff were based solely upon each person's individual circumstances. The court disagreed, finding that "[p]laintiffs allege similar questions of fact and law, and rely upon the same statistical and circumstantial evidence supporting their allegations of age discrimination...." *Id.* at 319.

Moreover, "[t]he presence of material dissimilarities between the substantive allegations of the joined plaintiffs does not automatically bring such claims outside the 'same transaction or occurrence' language". *Puricelli v. CAN*, 497 F.2d 1330 at 142, *citations omitted*. In *Puricelli v. CNA,* an age discrimination case brought by former employees of CNA, defendants moved to sever the claims of two plaintiffs on the grounds that they were misjoined, contending the claims neither arose out of the same transaction or occurrence nor presented common questions of fact or law and that a joint trial would cause undue prejudice and confusion. *Id.* at 140-141. The court denied the motion, holding that plaintiffs had satisfied Rule 20(a)'s requirement with respect to the

7

same transaction or occurrence, since "[d]espite the differences in the factual underpinnings of their respective claims, plaintiffs have alleged a pattern of conduct ... which discriminated against them on the basis of age." *Id.* at 143. In addition, the court found that plaintiffs had satisfied the "common question of law or fact" requirement, noting that Rule 20(a) "does not require the commonality of all questions of law and fact raised in the dispute, rather, the requirement is satisfied if there is any question of law or fact common to all parties", *Id*, citing *Blesedell v. Mobil Oil Co., 708 F Supp. 1408, 1422 (S.D.N.Y. 1989).*

In this case, as in *Puricelli* and *Kemper, supra,* proposed plaintiff Barbara P. has alleged precisely the same pattern of conduct by DCF as alleged by the original named plaintiffs. While certain facts, such as those relating to Barbara's individualized needs and the nature of her mental illness, are unique, such "differences in factual underpinnings", *Puricelli v. CNA, supra,* should not defeat Rule 20(a)'s "same occurrence" requirement, since the pattern of DCF's conduct toward Barbara is the same. Like the other named plaintiffs, Barbara P. was placed by DCF in a string of inappropriate foster homes, shelters, and institutionalized placements where she suffered harm. Proposed plaintiff Barbara P. claims that DCF's failure to provide her with appropriate community-based placements violated her rights under the ADA, Section 504, as well as various state and federal constitutional mandates. Since Barbara P.'s claims for relief are identical to the claims of the original plaintiffs, and are based on the same pattern of conduct by DCF alleged by the original plaintiffs, she has satisfied the first two requirements of Rule 20(a).

8

### B. Joinder of proposed plaintiff Barbara P. will not result in prejudice to defendants, and is consistent with principles of fundamental fairness, thereby satisfying the further requirements of Rule 20(a).

"Even once [the requirements of Rule 20(a)] are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1276 (9th Cir. 2000), *cert denied Gentile v. Quaker Oats Co.*, 533 U.S. 950, 121 S.Ct. 2592, 150 L.Ed.2d 751 (2001); *Briarpatch Ltd., L.P. v Pate*, 81 F.Supp.2d 509, 515 (S.D.N.Y. 2000). In making the determination of whether joinder is fundamentally fair or prejudicial to the non-moving party, courts in the Second Circuit balance the factors for and against joinder. In determining whether joinder is appropriate, "[t]he following factors are generally considered: "1) any delay, and the reasons for the delay, in seeking to amend; (2) any resulting prejudice to the defendant; (3) the likelihood of multiple litigation; and (4) the plaintiffs' motivation in moving to amend." (citations omitted). *Briarpatch Ltd.* 81 F.Supp. 2d. at 515.

Where plaintiffs have the same claims and have not unnecessarily delayed the proceedings and where defendants do not claim prejudice, joinder is appropriate. *Ford v. Air Line Pilots Ass'n Intern.*, 268 F.Supp.2d 271, 296 (E.D.N.Y 2003). In the instant case, joinder is appropriate because plaintiff Barbara P. did not unreasonably delay the filing of her motion.[1] Plaintiffs have had motions for class certification pending during much of the time the suit has been pending; thus, it was not clear that joinder would be

---

[1] The deadline for filing motions to join parties in this case was within thirty days of a ruling on the motion to dismiss, which was dated March 24, 2003. *See* Order Regarding Case Management Plan, signed by Judge Chatigny on May 20, 2002.

9

necessary to protect additional plaintiffs. The first Motion for Class Certification was filed on July 11, 2003. The court issued a ruling on September 30, 2004, denying plaintiffs' motion without prejudice. While the motion was pending, a motion for intervention was filed by a proposed additional plaintiff, Kevin P. The court denied that motion without prejudice, due to the pendency of the motion for class certification. Plaintiffs filed a Second Motion for Class Certification on May 1, 2005. As of the date of filing this memorandum, the court has not yet ruled on the latter motion. In light of these circumstances, plaintiff's timing in filing the motion for joinder should not be considered "delay".

These circumstances also distinguish the instant case from cases denying motions for joinder where plaintiffs failed to request class status, and later sought to avoid mootness by adding additional plaintiffs. *See Fox v. Board of Trustees of the State University of New York*, 42 F.3d 135, 144 (2d Cir. 1994) (district court did not abuse its discretion in denying plaintiffs' permission to amend their complaint by adding additional student plaintiffs who were still attending SUNY.)[2]

Courts have found joinder to be improper where the addition of additional parties would delay litigation and would open "a Pandora's box of discovery", further protracting an already protracted case. *Barr Rubber Products Company v. Sun Rubber*

---

[2] In the underlying decision, *Fox v. Board of Trustees of the State University of New York*, 148 F.R.D. 242 (N.D.N.Y. 1993), *aff'd* 42 F.3d 135 (2d Cir. 1994), the district court vacated a prior order that had permitted plaintiffs to amend their complaint by adding additional student plaintiffs pursuant to Rule 15(a) and dismissed the complaint on mootness grounds, noting that plaintiffs could have avoided dismissal if only they had filed for class certification. See also *Menton v. Experian Corp*, 2003 WL 21692820 (S.D.N.Y 2003) (In Fair Credit Reporting Act case, motion for joinder denied on grounds that Rule 21 was not enacted as a means for a party to avoid dismissal on mootness grounds." and where the facts surrounding the joiner's claim did not arise out of the same transaction.)

*Company*, 425 F.2d 1114, 1127 (2d Cir. 1970), *cert. denied* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970). In *Fed. Deposit Ins. Corp. v. Haines*, 179 F.R.D. 66 (D. Conn. 1997), for example, Judge Covello denied defendant's motion to cite in additional defendants for the purpose of apportioning liability due to the fact that the court had granted defendants four previous motions to join additional defendants during the previous year.

Similarly, Judge Eginton denied a defendant's motion to join additional parties in *Landmark Development Group v. JEG Holdings, Inc.*, 185 F.R.D. 126 (D. Conn. 1999), since the motion was filed on the eve of a jury trial and would prejudice plaintiff because his attorney would be disqualified from representing him. *Id.*

The above-cited cases are distinguishable from the instant case, however. Here, joinder of Barbara P. would neither result in significant delays in the litigation of this case, nor "open a Pandora's Box" of additional discovery. The Complaint of Proposed Plaintiff Barbara P. recites facts and circumstances already well-known to defendants, since Barbara P. was in custody of the Commissioner for the entire time period in which her claims arose. Since DCF is required to keep a running case narrative detailing Barbara's placement history and other facts, the defendant is already in possession of all the documentary evidence which would be used in the instant case; thus, any additional discovery would be minimal. This situation distinguishes the instant case from the above-referenced district court cases where joinder of parties would necessitate substantial discovery with respect to the facts underlying the claims of the proposed parties.

11

Furthermore, as of the date of filing this memorandum, there are still numerous outstanding discovery issues before the court. These issues relate to the failure of defendants to provide on-going discovery to plaintiffs with regard to the state's provision of services to children with mental illness. *See Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment* dated September 25, 2005, and Plaintiffs' Local Rule 56(a)2 Statement of September 26, 2005. Joinder of Barbara P. would not in any way complicate these outstanding discovery issues or cause delay or other prejudice to defendants. In fact, given the complexities of discovery in the *WR v. DCF* litigation, and absent class certification, joinder of Barbara P. would prevent the duplicative and time-consuming lawsuit which Barbara P. would need to file for herself if her motion were denied.

Finally, the balance of the competing interests in this case should weigh in favor of joinder where, as here, the facts alleged in Barbara P.'s complaint, which to a large extent are substantiated in DCF running case narrative, raise compelling issues which merit the court's consideration.

III.   Conclusion:

Proposed plaintiff Barbara P. alleges a pattern of conduct by DCF which is precisely the conduct alleged in the *WR v. DCF* complaint, and upon which her identical legal claims are founded, thereby satisfying the "same occurrence" and "common question" requirements of Rule 20(a). Furthermore, since joinder will neither protract the litigation of this case, nor result in prejudice to defendants, joinder of Barbara P. comports with principles of fundamental fairness and will expedite the resolution of

lawsuits. Therefore, Barbara P. respectfully requests that her Motion for Joinder be granted, and that the court accept the Complaint of Proposed Plaintiff Barbara P.

Respectfully submitted,

PLAINTIFF, Barbara P.,

By: *[signature]*
Catherine L. Williams,
Bet Gailor,
Connecticut Legal Services, Inc, her attorneys
211 State Street
Bridgeport, CT 06604
Fed. Bar No. ct02059
cwilliams@connlegalservices.org
Tel: 203-336-3851
Fax: 203-333-4976

CERTIFICATION

I certify that a copy of the foregoing Motion for Joinder was mailed, postage prepaid, to the following counsel of record on the 18th day of April, 2006 to:

Attorney Susan T. Pearlman
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06106

Attorney Carolyn Signorelli
Assistant Attorney General
55 Elm Street
Hartford, CT 06105

Attorney Anne Louise Blanchard
Connecticut Legal Services, Inc.
872 Main Street
P. O. Box 872
Willimantic, CT 06226

Attorney Bet Gailor
Connecticut Legal Services, Inc.
872 Main Street
P. O. Box 872
Willimantic, CT 06226

Attorney Winona Zimberlin
2 Congress Street
Hartford, CT 06114

Catherine L. Williams