5. For each plaintiff, describe the types of services that would be required to maintain that plaintiff in a community based placement, as defined above.

6. List each known community-based placement available in Connecticut or other state and for each placement, provide address, phone number, description of the placement, including services offered, average annual cost per child, name of director and the name of the public agency supporting such placement.

7. Identify all witnesses who will provide evidence in support of the allegations in paragraph 45 of the amended complaint and provide a summary of their testimony.

     8.     Describe the factual basis and identify all witnesses supporting the allegation that the cost of such placements is comparable to institutional care.

     9.     For each plaintiff,

         a. Provide the names of each institution in which that plaintiff has been placed;

         b. Provide the names of all foster homes in which that plaintiff has been placed;

         c. For each such institutional or foster care placement, identify all witnesses who will be testifying that such placement was "inappropriate."

10. Describe the "procedural protections" adopted by DCF and DMHAS, as referred to in paragraph 34 of the amended complaint and how the defendants failed to comply with those protections.

11. In the case of Susan,

    a. Describe her need for specialized medical treatment

    b. State whether the defendants have prevented her from obtaining specialized medical treatment and if so, explain the basis for that statement.

    c. Describe whether the defendants have provided Susan with any training for independent living and if so, describe the training she has received.

    d. Describe whether Susan was offered training for independent living through her educational programming and if so, whether she accepted that training.

12. Provide the factual basis and identify all witnesses supporting the allegation that the defendants failed to provide Susan with a "long term community based residential placement is based on her disability."

13. Provide the factual basis, including statutory or regulatory authority, and identify all witnesses supporting the allegation that Susan was prevented from participating in a "federally funded program providing community based placements for children."

14. Provide the factual basis, including the statutory or regulatory authority, and identify all witnesses supporting the allegation that independent living plans must be developed for every youth who is over 15.5 years old.

15. Provide a list of each occasion in which Joseph was the subject of "excessive use of physical restraints," a description of each such incident, including the restraint used, and identify all witnesses to these incidents.

16. Provide a list of each occasion in which Joseph was subjected to "illegal and inappropriate chemical restraints;" a description for each such incident of the restraint used and identify all witnesses to these incidents.

17. Provide a list of each occasion in which Joseph was inadequately supervised, as a result of which he ran away from CCP, and identify all witnesses who will be testifying to these incidents.

18. Identify who will be testifying regarding the inappropriateness of arresting an assaultive child with serious mental health problems.


      19.    Describe what services Omar failed to receive after he was placed at Thomas Bent Shelter.

      20.    Describe the "severe behaviors" that Omar exhibited.

      21.    Identify all witnesses who will be testifying that foster home placements for children with serious mental health needs "exacerbate the children's disabilities, prohibit them from learning self-control and how to live independently in a community setting and prevent them from developing properly into adulthood."

## REQUESTS FOR PRODUCTION

The defendant(s) requests the plaintiff to produce, or make available for inspection and copying, the following:

1.   Copies of all reports and records pertaining to examination and/or treatment of the plaintiffs for serious mental illness as alleged in the Complaint, including but not limited to, nurse's notes, charts, treatment summaries, physician's reports, reports or records relating to prescription drugs or medicines, physician's, psychologist's or therapist's or counselors' services.

**RESPONSE:**

2.   Copies of any and all documents of any kind or description, including reports, studies, letters, memoranda, notes, calendars, journals, tape recordings, drawings, charts, photographs, diagrams, maps, models or other tangible evidence concerning any of the events or

violations alleged in the Complaint, or other tangible evidence expected to be used at trial and which were identified in the plaintiffs' answers to the Interrogatories above.

**RESPONSE:**

THE DEFENDANTS
CONNECTICUT DEPARTMENT
OF CHILDREN AND FAMILIES

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Susan T. Pearlman    Juris No. 085361
Assistant Attorney General
110 Sherman Street
P.O. Box 120
Hartford, CT 06141-0120
Tel.: (860) 808-5480
Fax: (860) 808-5595

## CERTIFICATION

I hereby certify that a copy of the foregoing Interrogatories and Requests for Production was mailed, first class postage prepaid, this 14th day of August, 2003 to:

Attorney Douglas Crockett
Attorney Bet Gailor
Attorney Anne Louise Blanchard
Connecticut Legal Services
872 Main Street
Willimantic, CT 06226

Lori Welch-Rubin, Esq.
Engelman & Welch-Rubin, LLP
195 Church St., 11th Floor
New Haven, CT 06510

Susan T. Pearlman
Assistant Attorney General

**EXHIBIT B**

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF CONNECTICUT

* * * * * * * * * * * * * * * * * *

W.R., individually and on behalf of her minor son,
JOSEPH R.; SUSAN K.; M.O., individually and on
behalf of her minor son, OMAR S.; and on behalf
of all others similarly situated

JEANNE MILSTEIN, CHILD ADVOCATE OF
THE STATE OF CONNECTICUT

    PLAINTIFFS

VS.                                                              CIV. NO. 302CV429 RNC
CONNECTICUT DEPARTMENT OF CHILDREN
AND FAMILIES, and

DARLENE DUNBAR, in her official capacity as
Commissioner of the Connecticut Department of
Children and Families

    DEFENDANTS                                February 27, 2004

* * * * * * * * * * * * * * * * * * * * * * * * * *

<u>Plaintiff' Amended Response to Defendants' First Set of Interrogatories
and Requests for Production:</u>

1. Describe how each of the names plaintiffs is disabled.

   Each named plaintiff is mentally ill.

2. For each plaintiff describe the behaviors that make placement in foster homes
   inappropriate, and on what basis that plaintiff alleges the behavior is disability-
   related.

Each named plaintiff exhibits behaviors consistent with their mental illness which prevent them from being appropriately placed in foster homes. Plaintiffs rely on the records currently within DCF's possession which document the disability-related nature of plaintiffs' behavior. These documents include DCF's running narrative, psychological and psychiatric records, as well as witness testimony.

3. Define the following terms as used in the amended complaint:

a) Community-based placements are placements with 24 hour a day, 7 day a week professional staffing in small supported living arrangement with educational and therapeutic/clinically appropriate components which are located in a community.

b) institutions
   Congregate living facilities where child/youth receives all educational, therapeutic, residential services on site rather than a community setting.

c) inappropriate placement:
   placement that does not meet the needs of the person placed therein.

d) professionals: persons who are recognized as having sufficient training, education, and expertise in a particular occupation.

4. Are there other identified individuals known to the plaintiffs that would qualify to be members of the proposed class? If so, identify each individual and the basis on which the individual would qualify to be included in the proposed class.

   Additional class members:

   Yes, there are additional potential class members, including Jeffrey MacDonald and Kevin Patterson. Plaintiffs object to naming any remaining individuals, as they are protected by attorney-client privilege. Additionally, these individuals are concerned that if their names are disclosed, DCF will act in a retaliatory manner toward them.

5. For each plaintiff, describe the types of services the would be required to maintain that plaintiff in a community based placement, as defined above.

   Plaintiffs need 24 hour a day, 7 day a week professional staffing in small supported living arrangement with educational and therapeutic/clinically

appropriate components in the community.

6. List each known community-based placement available in Connecticut or other state and for each placement, provide address, phone number, description of the placement, including services offered, average annual cost per child, name of director and the name of the public agency supporting such placement.

*Examples of community-based placement in Massachusetts are attached. Examples in Connecticut include the Ranney Road program described in DCF discovery.*

7. Identify all witnesses who will provide evidence in support of the allegations in paragraph 45 of the amended complaint a summary of their testimony.

   The following witnesses will testify regarding the irreparable harm to Susan: Robin Gant-Hall. Hal Gibber and Mary Lou Sudders will also testify regarding the harm of long-term institutionalization to children/youth similar to Susan.

   Their testimony will include:

   Reasons and examples underscoring the harm done to children and youth through long-term institutionalization.

8. The following witnesses will testify that the costs of community-based placements are comparable to institutional care:

   Mary Lou Sudders; Hal Gibber.

9a. Objection: All requested information is already in DCF's possession. *Plaintiffs' define all of Joseph's placements by DCF as institutional placements.*

9b. Objection: All requested information is already in DCF's possession.

9c. Dr. Robin Grant-Hall
    Dr. Lynne Zimmerman
    Mary Lou Sudders

10. The procedural protections adopted by DCF and DMHAS regarding

transferring youth from DCF to DMHAS are described in the Interagency Agreement between DCF and DMHAS (subtitled Client Transition from The Department of Children and Families to The Department of Mental Health and Addiction). Defendants failed to follow the required steps outlined in the Agreement.

11.a. *Plaintiff Susan K. needs clinically appropriate specialized mental health treatment to address her disabilities, including appropriate treatment for her past sexual abuse.*

11b. *Defendants' failure to provide plaintiff Susan K. with a stable community-based placement prevented her from receiving clinically appropriate specialized mental health treatment. Although Susan is currently in the care of DCF and the defendant currently has access to her treatment plans and records which describe her treatment needs, plaintiffs will also provide copies of documents obtained from Susan's treatment providers as requested by DCF, once obtained.*

11c. *Defendants' failure to provide plaintiff Susan K. with a stable community-based placement prevented her from meaningful independent living training. Any training DCF did provide is described in her Treatment Plans, which are already in the possession of DCF.*

11d. *Defendants' failure to provide plaintiff Susan K. with a stable community-based placement prevented her from receiving meaningful training for independent living through her educational program. All such training is specified in Susan's IEPs, which are in the possession of DCF.*

12. *Plaintiffs will show that defendants failed to provide Susan with a community based placement though DCF documents and employees and the testimony of Dr. Grant-Hall. Plaintiffs will show that DCF provides these placements to non-mentally ill children/young adults through DCF documents and employees.*

13. Factual and statutory basis and witnesses supporting the allegation that Susan was prevented from participating in a federally funded program providing community based placements for children are as follows:

American With Disabilities Act, 42 USC 121010 *et. seq.*
Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 701 *et. seq.*

14. Factual and statutory basis and witnesses supporting the allegation that independent living plans must be developed for all youth over the age of 15.5 years old are:

    DCF Policy Manual: Section 36-5-6; 42-20 et. seq.
    Witness: Jeanne Milstein.

15. *Defendants' failure to offer Joseph a clinically appropriate community-based placement rendered all use of physical restraint as excessive. All requested data regarding the restraints is already in DCF's possession through Joseph's treatment plans and the DCF Running Narrative.*
    *Plaintiffs will also provide the documents received from the therapists recently identified by DCF, upon receipt.*
    *Dr. Grant-Hall and Ms. Roberts will also testify regarding the restraints.*

16. *Defendants' failure to offer Joseph a clinically appropriate community-based placement rendered all use of chemical restraint as excessive. All requested data regarding the restraints is already in DCF's possession through Joseph's treatment plans and the DCF Running Narrative.*
    *Plaintiffs will also provide the documents received from the therapists recently identified by DCF, upon receipt.*
    *Dr. Grant-Hall and Ms. Roberts will also testify regarding the restraints*

17. *The ability of Joseph, a mentally-ill child to run away from CCP is de facto evidence of inadequate supervision. All requested data regarding the occasions Joseph ran away are documented in CCP records and in the DCF Running Narrative which are already in DCF's possession.*

18. Mary Lou Sudders, Hal Gibbers; Lynne Zimmerman

19. Services Omar failed to receive while at the Thomas Bent Shelter include: The ability to live in a community-based setting rather than an institutional setting.

20. *Omar's behaviors are related to his mental health issues, including his Reactive Attachment Disorder, Oppositional Defiant Disorder, running away*

*behavior and poor social skills.*

21. Witnesses testifying that foster home placements harm children:
    None. Plaintiffs have not claimed that placement in foster homes harms children. Plaintiffs will provide witnesses which will testify that placement in inappropriate foster homes harms children. Those witnesses are Jeanne Milstein, Hal Gibbers and Mary Lou Sudders.

    Requests for Production:

1. Objection: All requested data is already in DCF's possession. Plaintiffs are currently in the care of DCF and the defendant currently has access to their DCF running narratives, treatment plans, medical records and incident reports for these children and youth. Moreover, plaintiffs have twice previously provided Susan K.'s comprehensive file to DCF, when defendant claimed to have lost her file.

2. No such documents were identified.

By _____
Plaintiffs' Attorney
Anne Louise Blanchard
Connecticut Legal Services
Federal Bar No. ct. 08718
872 Main Street
Willimantic, Connecticut 06226
Telephone: (860) 456-1761
Fax:: 860 456-7420


Subscribed and sworn to me on February 27, 2004.

_____
Cheryl diane Feuerman
Commissioner of the Superior Court

## Examples of Community Based Placements in Massachusetts

**1) The Dexter Street Apartment Program, operated by the Center for Human Development. Program is located in Holyoke, Mass.**

Ages served: 17 up to age 19, co-ed

A 2 person program, but can serve a 3rd in a shared bedroom, depending on the gender mix

Model: Staffed apartment. One staff member present at all times. Staff provide supervision. Program has a clinical element -groups are offered, either by staff themselves, or by other agency staff. Also do life education programming, such as pregnancy prevention, S/A prevention, HIV prevention, STD prevention, etc. Also do skill development, e.g. how to get a job, driver's licenses, money management.

Cost is about $140,000. No differential if there are 2 or 3 kids in the program.
Used for kids moving toward independent living and needs additional skills to manage

**2) The Young Adult Program, operated by The Mental Health Assn of Greater Springfield."**

Mission of this agency is finding reasonable and appropriate housing.

Ages served: 18 to 25.

A six person program. Cost is $50,000 per client.. Clients contribute from SSI. Most of the kids move into the adult DMH system; if not they are helped with other transition.

One big house. Contract does not include a clinical piece. If needed, it comes from the mental health center. Program has one staff person on at all times. Focus is on skill development -money, cooking. Program arranges for specialized programming as needed -e.g. work with fire-setters.

**3) Prescott St, in Arlington, operated by Wayside. 8 or 9 bed.**

Ages served is 18 - 22. Cost is approximately 60-70K per bed per year. Has capacity for 8 - 9 young adults.

Clinical model, with some independent living flavor. 24-7 with awake staff. Used for step down from more intensive level of care, including inpatient.

**4) Northboro residence in Northboro operated by The Bridge of Central Mass -**

Ages served: 18-22 years old in an 8 bed residence.

Clinical model. There is an apartment in the same building that can be used for preparing kids for more independent living or just as another bedroom. It would be supervised by the same staff, Part of a blended rate, but cost is 60-80K.

## CERTIFICATION

I certify that a copy of the foregoing Interrogatory Responses was mailed, postage prepaid, to the following counsel of record on the 27th day of February, 2004:

Attorney Susan T. Pearlman
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06106

Attorney Carolyn Signorelli
Assistant Attorney General
55 Elm Street
Hartford, CT 06105

Lori Welch-Rubin, Esquire
Engelman & Welch-Rubin, LLP
195 Church St., 11th Floor
New Haven, CT 06510

_____
Anne Louise Blanchard