W.R. v. CT DCF

3/31/2004                                                        Jeanne Milstein

Page 61

1                    STATE OF CONNECTICUT

2

3       I, Aretha S. Martin, a Notary Public duly

4   commissioned and qualified in and for the State of

5   Connecticut, do hereby certify that pursuant to notice

6   there came before me on the 31st day of March, 2004, the

7   following-named person, to wit: Jeanne Milstein, who was

8   by me duly sworn to testify to the truth and nothing but

9   the truth; that she was thereupon carefully examined upon

10  her oath and examination reduced to writing under my

11  supervision; that this deposition is a true record of the

12  testimony given by the witness.

13      I further certify that I am neither attorney nor

14  counsel for nor related to nor employed by any of the

15  parties to the action in which this deposition is taken,

16  and further that I am not a relative or employee of any

17  attorney or counsel employed by the parties hereto, or

18  financially interested in this action.

19      IN WITNESS THEREOF, I have hereunto set my hand this

20  6th day of April, 2004.

21

22         Aretha S. Martin, Notary Public

23  My Notary Expires:  June 30, 2007.

24

25

# Attachment 2

W.R. vs CDCF

11/7/2003                                                    Mark Frankinberger

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2                DISTRICT OF CONNECTICUT
 3
    W.R., individually and on    :
 4  behalf of her minor son,     :
    JOSEPH R.; SUSAN K.; M.O.,   :
 5  individually and on behalf   :
    of her minor son, OMAR S.;   :
 6  and on behalf of all         :
    others similarly situated;   :
 7  JEANNE MILSTEIN, CHILD       :
    ADVOCATE OF THE STATE OF     :
 8  CONNECTICUT,                 :
         Plaintiffs,             :  Civil Action Number
 9                               :  CIV. NO. 302CV429 (RNC)
    vs.                          :
10                               :
    CONNECTICUT DEPARTMENT OF     :
11  CHILDREN AND FAMILIES, and    :
    DARLENE DUNBAR, in her        :
12  official capacity as          :
    Commissioner of the           :
13  Connecticut Department of     :
    Children and Families,        :
14       Defendants.              :
15
16  ------------------------------------------------
        Deposition of: MARK FRANKINBERGER
17  ------------------------------------------------
18
         Taken before Annette F. Brown, LSR and Notary
19  Public for the State of Connecticut, at the law
    office of Connecticut Legal Services, 872 Main
20  Street, Willimantic, Connecticut, on November 7,
    2003, commencing at approximately 1:35 p.m.
21
22
23              ANNETTE F. BROWN, LSR
                 LSR Number: 00009
24         Brandon Smith Reporting Service
                 44 Capitol Avenue
25          Hartford, Connecticut   06106
                  (860) 549-1850
```

COPY

aa221c1c-d529-475f-8484-3a0c686b3445

W.R. vs CDCF

11/7/2003                                                    Mark Frankinberger

Page 23

1    the three.

2         Q    In your experience, is there a waiting list

3    for children to get into each of those types of

4    foster homes?

5         A    There would be a wait list for professional

6    and therapeutic foster care.

7         Q    And how long is that wait list?

8         A    It varies from week to week, month to

9    month, and also the type of child and the age of the

10   child because those are all programs that are

11   operated outside of DCF.  So they have their own

12   admission criteria and list of homes that are

13   available.  So they try to match the child with the

14   homes that are available.

15        Q    Who operates those programs?

16        A    They're privately owned; private,

17   nonprofit.

18        Q    And they are under the Department of

19   Children and Families?

20        A    No, they have contract arrangements with

21   DCF, but they're operated independently.

22        Q    But they are contracted through DCF?

23        A    Yes.

24        Q    And DCF licenses them?

25        A    Yes.

aa221c1c-d529-475f-8484-3a0c686b3445

W.R. vs CDCF

11/7/2003                                          Mark Frankinberger

Page 60

```
 1    evaluator recommended that type of placement, what

 2    would you do?

 3        A    I wouldn't have any role in that.  That

 4    would be something that the social work supervisor

 5    would have to look at and probably talk to somebody

 6    else within DCF, because I don't get involved in

 7    that.  I don't get involved in designing programs.

 8        Q    But I just want to try and put this into

 9    context of what you talked about earlier.  It's my

10    understanding of your job, as part of the RRG, that

11    if a social worker or social work supervisor has a

12    question about a child's treatment needs or

13    placement, they come to you and ask you for your

14    recommendations and your assistance; is that right?

15        A    Yes.

16        Q    And you review evaluations in order to

17    assist you in making a decision about how to assist

18    the social worker and the social work supervisor; is

19    that right?

20        A    Yes.

21        Q    And in that evaluation, if there is a

22    recommendation for a 24-hour, community-based program

23    just tell me what steps you would take to -- when you

24    saw that recommendation?

25             MS. PEARLMAN:  Are we talking about a
```

aa221c1c-d529-475f-8484-3a0c686b3445

W.R. vs CDCF

11/7/2003                                                    Mark Frankinberger

Page 62

```
1    you got that type of a recommendation and it's for a

2    service that doesn't exist, would you then go back to

3    the social worker and say, This doesn't exist; talk

4    to somebody else?  How would you handle that

5    situation?

6         A    I think I would just tell them that I don't

7    know of an existing program that is described that

8    way.

9         Q    And so then how is the child placed?

10         A    Again, I don't know.  I don't handle

11    placements.

12         Q    No, I understand.  You said that.

13         A    But I just review --

14         Q    Did you tell them to speak to somebody

15    else, and if so, who?  Or is it just not your area

16    and so you don't deal with it at all?

17         A    I don't deal with it at all.

18         Q    Have you ever seen that type of

19    recommendation?

20         A    Of a group home less --

21         Q    For the child alone or maybe one roommate.

22         A    Yes.

23         Q    And do you recall when that was?

24         A    Well, it was recently on one of the cases

25    that you have.
```

W.R. vs CDCF

11/7/2003                                                    Mark Frankinberger

Page 116

```
1                        CERTIFICATE OF REPORTER

2

3             I, Annette F. Brown, LSR and Notary Public,

4    duly commissioned and qualified in and for the State

5    of Connecticut, do hereby certify that pursuant to

6    notice there came before me on the 7th day of

7    November 2003, the following-named person, to wit:

8    MARK FRANKINBURGER, who was by me duly sworn to

9    testify to the truth and nothing but the truth; that

10   he was thereupon carefully examined upon his oath and

11   his examination reduced to writing under my

12   supervision; that this deposition is a true record of

13   the testimony given by the witness.

14             I further certify that I am neither

15   attorney nor counsel for nor related to nor employed

16   by any of the parties to the action in which this

17   deposition is taken, and further that I am not a

18   relative or employee of any attorney or counsel

19   employed by the parties hereto, or financially

20   interested in this action.

21             IN WITNESS THEREOF, I have hereunto set my

22   hand this 20th day of November 2003.

23   _____

                  Annette F. Brown, LSR, Notary Public

24       My Commission Expires: November 30, 2004

              Licensed Shorthand Reporter:   00009

25
```

# Attachment 3

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

COPY

W.R., INDIVIDUALLY AND ON          :
BEHALF OF HER MINOR SON,
ET AL.,                            :

JEANNE MILSTEIN, CHILD             :
ADVOCATE OF THE STATE OF
CONNECTICUT,                       :

                    PLAINTIFFS,    :        CIV. NO. 302CV429 (RNC)

VS.                                :

CONNECTICUT DEPT. OF CHILDREN:
AND FAMILIES, AND
                                   :
DARLENE DUNBAR, IN HER OFFICIAL
CAPACITY AS COMMISSIONER OF THE
CONNECTICUT DEPARTMENT OF
CHILDREN AND FAMILIES,             ;

                    DEFENDANTS.    :

                                    WEDNESDAY, OCTOBER 15,
                                    2003.  3:50 O'CLOCK P. M.

                    DEPOSITION OF JOANNE E. AUWOOD

1          Out of state is anything out of

2   Connecticut.  But within the department, because

3   we are so close to the Rhode Island,

4   Massachusetts borders, they are out of state,

5   but they are utilized by our processes in the

6   state because of the availability to the

7   northeast corner.

8        Q.  So even they are literally located out

9   of the state of Connecticut the CPT would look

10  at those as in state -- quote, unquote --

11  options?

12        A.  Yes.

13        Q.  Have you seen children in the voluntary

14  services program not being placed because there

15  was no appropriate placement?

16               You talked earlier about

17  placement not as appropriate.  But where the CPT

18  and the local team have identified particular

19  types of placements, have you seen instances

20  where the CPT has come back and said there is a

21  waiting list and there is no possibility for

22  that kind of placement for six months or for any

23  period of time?

24        A.  Specific to a nonverbal kid, yes.

25               I guess the answer is yes.

43

## CERTIFICATE

I, WALTER ROCHOW, L.S.R., A LICENSED SHORTHAND REPORTER AND NOTARY PUBLIC, DO HEREBY CERTIFY THAT I AM DULY COMMISSIONED AND QUALIFIED TO ADMINISTER OATHS IN AND FOR THE STATE OF CONNECTICUT.

I FURTHER CERTIFY THAT THE DEPONENT NAMED IN THE FOREGOING DEPOSITION WAS BY ME DULY SWORN AND THEREUPON TESTIFIED AS APPEARS IN THE FOREGOING TRANSCRIPT; THAT SAID DEPOSITION WAS TAKEN BY ME STENOGRAPHICALLY, AND REDUCED TO A TRANSCRIPT BY ME OR UNDER MY DIRECTION; THAT THE FOREGOING TRANSCRIPT IS A TRUE, ACCURATE AND COMPLETE RENDITION OF THE TESTIMONY GIVEN BY THE DEPONENT.

I FURTHER CERTIFY THAT I AM NEITHER OF COUNSEL, NOR ATTORNEY TO ANY OF THE PARTIES TO SAID CAUSE, NOR AM I INTERESTED IN THE OUTCOME OF SAID MATTER.

WITNESS MY HAND AND SEAL AS A NOTARY PUBLIC THIS _16_ DAY OF _Oct, 2003_.

_____
WALTER ROCHOW, L.S.R.
NOTARY PUBLIC.

MY COMMISSION EXPIRES: JUNE 30, 2006.

WALTER ROCHOW, L.S.R.
*Licensed Shorthand Reporter*
P.O. BOX 5416
HAMDEN, CONNECTICUT 06518-5416

# Attachment 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
* * * * * * * * * * * * * * *
W.R. Individually and on behalf  *
of her minor son, JOSEPH R.;     *   CIV. 302CV429(RNC)
SUSAN K.; M.O., individually     *
and on behalf of her minor son,  *
OMAR S.; and on behalf of all    *
others similarly situated,       *
          PLAINTIFFS,            *
                                 *
                                 *
vs.                              *
                                 *
CONNECTICUT DEPARTMENT OF        *
CHILDREN AND FAMILIES, and       *
DARLENE DUNBAR, in her official  *
capacity as Commissioner of the  *
Connecticut Department of        *
Children and Families ,          *
          DEFENDANTS.            *
* * * * * * * * * * * * * * *
```

ORIGINAL

CONFIDENTIAL

----------------------------------------
DEPOSITION OF:  SANDRA RUDIN
----------------------------------------

        Taken before Sarah B. Najemy, Licensed
Shorthand Reporter (#00069) and Notary Public
in and for the State of Connecticut, pursuant
to the Federal Rules of Civil Procedure, at the
offices of Attorney General, 110 Sherman Street,
Hartford, Connecticut, on September 18, 2003 at
10:10 a.m.


        BRANDON SMITH REPORTING SERVICES
                44 Capitol Avenue
                Hartford, CT 06106
            Tel:  (860) 549-1850
            FAX:  (860) 549-1537

Page 91

1      leave prematurely.  She had to be moved because

2      of some behavioral issues.  Others in the

3      shelter were feeling threatened by her.

4   Q   So, the shelter couldn't handle her aggressive

5      behaviors?

6   A   Correct.  So, at that point, she went to the

7      Salvation Army shelter in Waterbury.

8   Q   How long did she stay there?

9   A   She was there from March 19th of 2001 to June

10      28th, 2001.

11   Q   Was her placement there based on the

12      recommendation of the treatment team?

13   A   That's another emergency shelter program.  It's

14      a temporary stop gap for kids while we're

15      looking for a placement.

16   Q   But you didn't answer the question.  Was her

17      placement there based on her treatment team

18      recommendation?

19   A   It was recommended that that was the only

20      placement available to her.

21   Q   Did the treatment team believe her needs could

22      be met at the shelter at Salvation Army in

23      Waterbury?

24   A   I don't think we were looking at that.  I think

25      we were feeling like her basic needs of housing

Page 116

```
 1           Hospital?

 2      A    The staff of Wellspring, in conjunction with us.

 3           She was exhibiting unsafe behaviors.  They felt

 4           she needed to be brought to the emergency room

 5           at the hospital.

 6      Q    Okay.  So, they took her to the ER?

 7      A    Yes.

 8      Q    And then was she admitted?

 9      A    One day.  August 18 to August 19, '02.

10      Q    Okay.  And were any recommendations made by the

11           hospital when they discharged her?

12      A    They felt that she required a structured

13           placement.

14      Q    Was there such a placement available?

15      A    Not at that time, no.

16      Q    So what did she do?

17      A    She went home.

18      Q    Was it in her best interest to return home?

19      A    She wanted to go home.

20      Q    That's not the answer to the question.

21      A    Was it in her best interest to go home?

22      Q    Yes.

23      A    Probably not.

24      Q    Did any DCF staff take a position on whether she

25           should return home?  Let me rephrase the
```

CONFIDENTIAL

Page 130

1   A   I haven't had anyone who's been in what I

2       consider an institution.

3   Q   And you don't consider any of your clients to

4       be institutionalized?

5   A   No.

6   Q   Are you familiar with the term community-based

7       placements?

8   A   Yes.

9   Q   And what does that word mean to you?

10  A   Well, placements out in a community, with

11      preference to a child's own community, where all

12      of the services can be met through the

13      community. And it could be a number of -- it

14      could be foster care, therapeutic, IPP,

15      professional foster care. It could be a group

16      home type setting. Any type of a placement in a

17      community where they can get the services.

18  Q   Do you believe there are any community-based

19      placements in Connecticut now for children with

20      mental health issues?

21  A   I believe that there are. I mean, we have

22      community-based placements.

23  Q   So, in your opinion the foster home placements

24      that you've talked about today are

25      community-based placements?

CONFIDENTIAL

9/18/2003          W. R. Individually vs Ct. Dept. of Children          Sandra Rudin

Page 131

```
 1   A    Yes.  I wouldn't say for severe mental health

 2        issues.  But I would say we have a lot of

 3        children with mild mental health issues, or

 4        behavioral difficulties, who can remain in a

 5        foster care setting in the community, attend

 6        school in the community, get all the services

 7        they need.

 8   Q    Do you think it's possible for someone like

 9        Shonna to be in a community-based placement?

10   A    That's a difficult question to answer.  I think

11        if we had one available to us, maybe.  But we

12        don't.  We have limited resources, as I said.  I

13        don't believe we have any.

14              MS. GAILOR:  Just for the record

15           Catherine Williams needs to leave.  I'll be

16           done in just a few minutes.

17   BY MS. GAILOR:

18   Q    Have you participated in any trainings with

19        respect to children in residential placements?

20   A    I can't say that I've had trainings.  I think

21        I've been to a number of residential facilities

22        when I was a social worker.  And I know how they

23        operate.  I know the type of population they

24        have.  I work with a number of residential

25        facilities.  And I think it's more by experience
```

Page 133

CERTIFICATE OF REPORTER

1

2     I, Sarah Najemy, a Notary Public duly

3   commissioned and qualified in and for the State of

4   Connecticut, do hereby certify that pursuant to

5   Notice, there came before me, on the 18th day of

6   September, 2003, the following named person, to wit:

7   SANDRA RUDIN, who was by me duly sworn to

8   testify to the truth and nothing but the truth;

9   that she was thereupon carefully examined upon her

10  oath and her examination reduced to writing under

11  my supervision; that this deposition is a true

12  record of the testimony given by the witness.

13     I further certify that I am neither attorney

14  nor counsel for, nor related to, nor employed by

15  any of the parties to the action in which this

16  deposition is taken, and further that I am not a

17  relative or employee of any attorney or counsel

18  employed by the parties hereto, or financially

19  interested in the action.

20     IN WITNESS THEREOF, I have hereunto set my

21  hand on this 6th day of October, 2003.

22  Sarah B. Najemy,  _____

23  Notary Public, License No. (#00069)

24  My commission expires:  8/31/05

25

Attachment 5

W. R., et al vs. State of CT

9/3/2003                                                    Cathleen Connolly

```
                                                              Page 1
     1              UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT
     2

     3

     4                                    )     COPY
         W.R., individually and on behalf )
     5   of her minor son, JOSEPH R.;     )
         SUSAN K.; M.O., individually and )
     6   on behalf of her minor son, OMAR )
         S.; and on behalf of all others  )
     7   similarly situated, and          )
         JEANNE MILSTEIN, CHILD ADVOCATE   )
     8   OF THE STATE OF CONNECTICUT,      )
                         Plaintiffs        )
     9                                     )  Civil Action
         Vs.                               )  No:302CV429 (RNC)
    10                                     )
         CONNECTICUT DEPARTMENT OF CHILDREN )
    11   AND FAMILIES, and DARLENE DUNBAR,  )
         in her official capacity as       )
    12   Commissioner of the Connecticut   )
         Department of Children and        )
    13   Families,                         )
                         Defendants        )
    14                                     )
    15
                    Deposition of CATHLEEN CONNOLLY, taken
    16   before Judith L. Kline, Certified Shorthand
         Reporter/Notary Public in and for the State of
    17   Connecticut, pursuant to notice, at the offices of The
         Attorney General, 110 Sherman Street, Hartford,
    18   Connecticut, on September 3, 2003 at approximately
         12:34 p.m.
    19
         APPEARANCES:
    20   FOR THE PLAINTIFFS:
                 DOUGLAS CROCKETT, CHIEF COUNSEL
    21           ANNE LOUISE BLANCHARD, ESQUIRE
                 CONNECTICUT LEGAL SERVICES
    22           872 Main Street
                 P.O. Box 258
    23           Willimantic, CT 06226-0258
    24   FOR THE DEFENDANTS:
                 SUSAN T. PEARLMAN, ASSISTANT ATTORNEY GENERAL
    25           110 Sherman Street
                 Hartford, CT 06105
```

046a7d95-0b5c-409e-9473-27312d067580

W. R., et al vs. State of CT

9/3/2003                                                    Cathleen Connolly

Page 37

1    have a narrative by my supervisor, saying child will

2    be returning from IOL to CCP.  We are continuing to

3    explore appropriate placement services.

4              MS. PEARLMAN:   Could I clarify, Ann?  Are

5    you talking about the Probate Court hearing on

6    December 20th, with IOL's recommendation, where it was

7    discussed?

8              MS. BLANCHARD:  No.  I think we're talking

9    about -- I'm talking about Superior Court.

10             MS. PEARLMAN:   Oh, Superior Court.

11      Q    (By Ms. Blanchard)  Let me ask you a different

12   question.  There was a time when CCP refused to take

13   Joe back; isn't that right?  They refused to reaccept

14   him?

15      A    They had said he was discharged.  And then

16   there was a period where we had to have discussions

17   about having them take him back.

18      Q    Right.  And there was a Court Order that led to

19   him going back to CCP?

20      A    Right.  Well, I think they were going to before

21   that.  But, yes.

22      Q    Okay.  And you don't recall the recommendations

23   by the Institute of Living staff, other than the fact

24   that they disagreed with the idea of foster care?

25      A    Right, I don't.

W. R., et al vs. State of CT

9/3/2003                                                    Cathleen Connolly

Page 38

```
 1      Q    Okay.  And were they recommending, if you

 2   remember, residential programming, or were they

 3   recommending group home, or --

 4      A    I sort of feel like I need just their letter,

 5   because that's very clear what their letter was.

 6   I recall meeting with Joe.

 7            MS. PEARLMAN:   Hold on.  Are you about to

 8   give her a letter that would help?

 9            THE WITNESS:   Thank you.

10      Q    (By Ms. Blanchard)  (Hands document to

11   witness.)

12      A    This is what I remember; the calls about the

13   problems there.  Okay.  The recommendation was a

14   specialized therapeutic community based supervised

15   living situation, where staff are available 24 hours a

16   day to provide clinical services, and to ensure that

17   rules are enforced -- oh, be sought.

18            THE COURT REPORTER:  Are enforced or be

19   sought?

20            THE WITNESS:   Are enforced -- I cut into

21   the -- they were recommending a specialized

22   therapeutic community based supervised living

23   situation, with 24 hour staff.

24      Q    (By Ms. Blanchard)  And is that your

25   recollection of the Institute of Living's
```

046a7d95-0b5c-409e-9473-27312d067580

W. R., et al vs. State of CT

9/3/2003                                                    Cathleen Connolly

Page 39

1    recommendations?

2        A    Yes.

3        Q    Okay.  And did DCF find that placement for Joe?

4        A    No.

5        Q    Why not?

6        A    Because that isn't available.  That isn't

7    available.

8        Q    Okay.  If it was available, do you think you

9    would have placed him there, based on IOL's

10   recommendations?

11       A    I don't know.  I don't know.  I guess so.

12       Q    Okay.  So the placement wasn't available, so

13   instead he went back to CCP?

14       A    Yes.

15       Q    Okay.  And during that time after he was at

16   CCP, there was an action in Probate Court; do you

17   remember that?

18       A    In December?

19       Q    Uh-huh.

20       A    (Nods head.)  This was supposed to help me.

21       Q    Tell me what you remember about the Probate

22   Court action?

23       A    In December?

24       Q    Yes.

25       A    The judge ordered an appropriate placement by