UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| W.R., individually and on behalf of<br>Her minor son, Joseph R; Susan K,<br>M.O. individually and on behalf<br>of all others similarly situated<br>    Plaintiffs<br>vs.<br><br>Connecticut Department of<br>Children and Families<br>    and<br>Darlene F. Dunbar, in her official<br>capacity as Commissioner of the<br>Department of Children and Families<br>    Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3: 02-cv-00429 (RNC)<br><br><br><br><br>JUNE 29, 2006 |

## OBJECTION TO BRANDON L'S MOTION TO INTERVENE

This lawsuit was filed on March 8, 2002. On June 14, 2006, over four years later and approximately a year after the defendants' motion for summary judgment was filed, a new proposed party, Brandon L., has moved for permissive intervention pursuant to Rule 24 (b) of the Federal Rules of Civil Procedure. Because the motion is untimely and will unduly delay the proceedings as well as prejudice the defendants, the defendants respectfully object.

### I. Motion To Intervene Is Untimely

Rule 24 (b) provides in relevant part: "Upon timely application anyone may be permitted to intervene in an action: . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." The determination of the timeliness of a motion to

intervene is within the discretion of the district court, "evaluated against the totality of the circumstances before the court." *Farmland Daries* v. *Comm'r of the N.Y. State Dep't of Agric. and Markets*, 847 F. 2d 1038, 1043-1044 (2nd Cir. 1988).

If Brandon L's motion to intervene is denied, Brandon cannot point to any prejudice to him since he is free to pursue his own lawsuit either in state or federal court.

On the other hand, the original parties would be highly prejudiced if Brandon is allowed to intervene. The existing plaintiffs assert serious claims that concern the welfare of severely mentally ill children, youth or young adults. Although the defendants do not believe that the plaintiffs' claims are meritorious, it would seem to be highly improper for the existing plaintiffs to wait for the intervening plaintiff's case to be litigated before their own claims can be adjudicated. The plaintiffs have averred that they have a "desperate need" for community based placements.

The proposed intervening plaintiff claims $1,250,000.00 in damages as well as injunctive and declaratory relief. The defendants believe that substantial discovery would be required in Brandon's case. It is likely that the defendants would file a motion to dismiss and certainly a motion for summary judgment would be required.

Aside from the certain prejudice to the existing plaintiffs, allowing intervention at this stage would be highly prejudicial to the defendants. The present motion to intervene comes well after the expiration of the court ordered deadline for joinder of parties, discovery and dispositive motions. The defendants filed their motion for summary judgment approximately a year ago on July 21, 2005. The lawsuit has been pending over four years. The defendants desire that the Court adjudicate their motion for summary judgment. To allow intervention at this time presumably would require the

filing of a revised motion for summary judgment, to the obvious prejudice of the defendants. *See Southmark Corp. v. Cagan*, 950 F. 2d 416 (7th Cir. 1991) (denial of permissive intervention upheld because the rights of the original parties would be prejudiced where intervention sought after motion for summary judgment was filed); *Mrs. W. v. Tirrozi*, 124 F.R.D. 42 (D. Conn. 1989) (motion to intervene denied as untimely where application sought intervention four years after action filed). To add Brandon as a plaintiff at this point in the litigation would be highly prejudicial to the defendants, "further protracting an already unduly distended case." *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F. 2d 1114, 1127 (2nd Cir. 1970). Cf. *Ansam Associates, Inc. v. Cola Petroleum, Inc.*, 760 F. 2d 442 (2nd Cir. 1985) ("permitting the proposed amendment [is] especially prejudicial [when] discovery had already been completed and [the non-movant] had already filed a motion for summary judgment").

**II. It Is Inequitable To Allow Intervention.**

On June 12, 2006 at 2:05pm, plaintiff's counsel, Attorney Anne Louise Blanchard, sent an e-mail, with attachments, to defendants' counsel that stated in pertinent part:

> Over the weekend, the Child Advocate's Office provided the treatment plans etc. of 68 children pulled from the list of youth in DCF residential placements to Mary Lou Sudders to review for limited testimony on Thursday. I am disclosing them to you as part of our ongoing discovery obligations to you as potential plaintiffs, as well.

Brandon L was one of the individuals identified by the Child Advocate in its belated review process. According to the plaintiffs' e-mail, the Office of the Child Advocate, which moved to intervene in this action on **April 23, 2003**, waited until the weekend of **June 10-11, 2006** to conduct this review. (E-Mail attached as Exhibit A)

3

As is apparent from the plaintiff's e-mail, the Office of the Child Advocate has access to DCF records. As reflected in the proposed intervener's complaint Brandon has a longstanding involvement with the Department. Neither the Child Advocate nor the other existing plaintiffs have asserted any justification for failing to timely identify Brandon.

In the course of discovery the defendants propounded their first set of interrogatories and requests for production dated August 14, 2003 (attached as Exhibit B). The plaintiffs, represented by Connecticut Legal Services, Inc., served an amended response to defendants' first set of interrogatories and requests for production dated February 27, 2004 (attached as Exhibit B). Interrogatory 4 states:

> "Are there other identified individuals known to the plaintiffs that would qualify to be members of the proposed class? If so, identify each individual and the basis on which the individual would qualify to be included in the proposed class."

(Exhibit B).

In answer to interrogatory 4, the plaintiffs state:

> "Yes, there are additional potential class members, including Jeffrey M . . .and Kevin P. . . .Plaintiffs object to naming any remaining individuals, as they are protected by attorney-client privilege. Additionally, these individuals are concerned that if their names are disclosed, DCF will act in a retaliatory manner toward them."

(Exhibit C).

The plaintiffs represented in February, 2004 that they were aware of the identity of additional potential class members, but refused to divulge their identity. The plaintiffs

4

asserted attorney-client privilege. The attorney–client privilege cannot be used as both a shield and sword. *United States* v. *Bilzerian*, 926 F. 2d 1285, 1292 (2nd Cir. 1991). "A [party] may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." *Id.*, citing *In re von Bulow*, 828 F. 2d 94, 103 (2nd Cir. 1987). "The rules of discovery are designed to make a trial less a game of blind man's [bluff] and more a fair contest with the basic issues and facts disclosed to the fullest [practicable] extent." (Citations omitted; internal quotation marks omitted.) *Sturdivant* v. *Yale-New Haven Hospital*, 2 Conn. App. 103, 106 (1984).

Here, in February, 2004, Connecticut Legal Services, Inc. saw fit to assert the privilege, refusing to disclose potential class members known to them, thereby obstructing the defendants' efforts to obtain information related to the purported class. Now, over two years later, Connecticut Legal Services, Inc. is, apparently waiving the privilege for tactical reasons, revealing the identity of proposed class members only after discovery is closed and nearly a year after summary judgment was filed. This type of gamesmanship is antithetical to the liberal discovery provisions of the Federal Rules of Civil Procedure. The motion for intervention should not be entertained.

### III. No Common Issues Of Law Or Fact.

According to the proposed complaint the proposed intervenor is a twenty year old adult recipient of voluntary services from the Department. According to the complaint, Brandon made progress in his placement at High Meadows. He now attends high school in the community and will graduate in June, 2006. However, he continues to be at risk for sexually inappropriate behavior. Although the proposed intervener parrots the same causes of action as the existing plaintiffs: Joseph, Susan or Omar; Brandon's situation

does not have common issues of fact or law with the existing plaintiffs. For this reason too, the motion for intervention should be denied.

**WHEREFORE,** For the reasons stated above the defendants respectfully object to Brandon's motion for intervention.

DARLENE F. DUNBAR, MSW
COMMISSIONER

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:

/s/
JOHN E. TUCKER
Assistant Attorney General
Federal Juris No. CT 04576
110 Sherman Street
Hartford, CT 06105
Tel: (860) 808-5480
Fax: (860) 808-5590
John.Tucker@PO.State.Ct.Us.

## **CERTIFICATION**

I hereby certify on this day of June 29, 2006, a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure, via first class mail, postage prepaid to:

Anne Louise Blanchard, Esq.
Bet J. Gailor, Esq.
Douglas M. Crockett, Esq.
Connecticut Legal Services, Inc.
PO Box 872
872 Main Street
Willimantic, CT 06226
Tel: (860) 456-1761
Fax: (860) 456-7420

Catherine L. Williams, Esq.
Connecticut Legal services, Inc.
211 State Street
Bridgeport, CT 06604
Tel: (203) 336-3851
Fax: (203) 333-4976

Winona Wellman Zimberlin, Esq.
2 Congress Street
Hartford, CT 06114
Tel: (860) 249-5291
Fax: (860) 247-4194

Mildred Doody, Esq.
426 State Street
New Haven, CT 06510
Tel: (203) 946-4811
Fax: (203) 498-9271

_____/S/_____
John E. Tucker
Assistant Attorney General

**EXHIBIT A**

## Tucker, John E.

| | |
|---|---|
| **From:** | Anne Louise Blanchard [ABlanchard@connlegalservices.org] |
| **Sent:** | Monday, June 12, 2006 2:05 PM |
| **To:** | Pearlman, Susan T. |
| **Cc:** | Tucker, John E. |
| **Subject:** | Residential Files |
| **Attachments:** | 10.pdf; 1.pdf; 2.pdf; 3.pdf; 4.pdf; 5.pdf; 6.pdf; 7.pdf; 8.pdf; 9.pdf |

<<10.pdf>> <<1.pdf>> <<2.pdf>> <<3.pdf>> <<4.pdf>> <<5.pdf>> <<6.pdf>> <<7.pdf>> <<8.pdf>> <<9.pdf>>

Hi Susan-

Over the weekend, the Child Advocate's Office provided the treatment plans etc. of 68 children pulled from the list of youth in DCF residential placements to Mary Lou Sudders to review for limited testimony on Thursday. I am disclosing them to you as part of our ongoing discovery obligations to you as potential plaintiffs, as well.

I will be sending this in 6 batches. Youth number 56 was omitted from the papers.

*Anne Louise*


Anne Louise Blanchard
Litigation Director
Connecticut Legal Services, Inc.
P.O. Box 258
Willimantic, CT  06226
Tel: (860) 456-1761 x109
Fax: (860) 456-7420

6/15/2006

# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF CONNECTICUT

*********************************************

W.R. individually and on behalf of her minor son
JOSEPH R.; SUSAN k.; M.O., individually and on
Behalf of her minor son, OMAR S.; and on behalf o
All others similarly situated

PLAINTIFFS

Vs.                                                                                         CIV. No. 302 CV 429 (RNC)

CONNECTICUT DEPARTNE OF CHILDREN
AND FAMILIES, and

CHRISTINE REGALIA, in her official capacity as
Commissioner of the Connecticut Department of
Children and Families

DEFENDANTS                                                             AUGUST 14, 2003

*********************************************

### DEFENDANTS' FIRST SET OF INTERROGATORIES
### AND REQUEST OF RRODUCTION

**PLEASE TAKE NOTICE** that you are hereby required, pursuant to Fed. R.Civ.P. 33, as amended, to serve upon the undersigned a copy of your individual answers and objections, if any, in writing and under oath to the following interrogatories related to class certification within thirty (30) days after service of the interrogatories. The answer should be inserted in the space provided. If there is sufficient space to answer an interrogatory, the remainder of the answer should follow on a supplemental sheet.

These shall be deemed to be continuing interrogatories. If, between the time of your answers and the time of the trial of this case, you or anyone acting on your behalf learn of further information not contained in your answers, you shall promptly furnish said information to the undersigned by supplemental answers.

## INSTRUCTIONS AND DEFINITIONS

1. These interrogatories and requests for production shall be deemed to be continuing in nature. Amended answers are required, to the date of the trial, if any, as supplemental or additional information is discovered.

2. If no one person is competent to answer all the interrogatories and/or requests for production, the responses should be separately answered, under oath, by as many agents of the plaintiff as might be necessary.

3. If a claim of privilege is asserted concerning any information or documents sought herein:

    (a) Identify such information or document with sufficient particularity to allow the matter to be brought before the Court;

    (b) State the nature of the privilege asserted; and,

    (c) State the factual or legal basis for the claim of privilege.

4. If a particular interrogatory or request for production cannot be answered or fulfilled in its entirety after exercising due diligence to secure the information or documentation requested, so state and answer it to the extent possible. Specify the basis for the inability to answer the remainder of the interrogatory and provide whatever information, knowledge or documentation that you have concerning the unanswered portion.

2

5. If, in the exercise of due diligence, the claimant cannot furnish the exact information requested, he should supply estimated information to the extent possible. When estimated information is used, it should be so indicated. An explanation should be furnished as to the basis on which the estimate was made and the reason(s) why the exact information requested cannot be provided.

6. As used herein, the term "you" means you, yourself, the person to whom these interrogatories and requests for production are addressed or any of your agents, partners, associates or any employees, employers or organizations of which you are a member or an employee, or other person acting on your behalf.

7. Use of the term "identify" with reference to an individual person, means to state his full name, his business and home addresses and telephone numbers, his present position and business affiliation or employment, if any, his date of birth, and his social security number.

8. Use of the term "identify" with reference to a communication means to state the date of the communication; the mode of the communication; if by telephone, the place where such communication originated and terminated; the identities of the maker(s) and the receiver(s) of the communication and the subject matter discussed.

9. As used herein, the term "identify" or "identification" with reference to a document means to state the date of its creation, its author, the addressee or intended recipient(s) of the document, and the present or last known location and the name, business and home address, and telephone numbers of the person(s) having control or custody of such document or a copy thereof. If any such document was, but is no longer in your possession or subject to your control, state the disposition made of it, the reason for such disposition and the date thereof, its

3

present location and the name, business and home address and telephone number of the person(s) having control or custody of such document, with sufficient particularity to enable to defendants to request its production.

10. As used herein, the term "statement" means; (a) a written statement in the handwriting of the person making it, or one which is signed, or initialed, or otherwise in writing adopted or approved by the person making it, or (b) a stenographic, mechanical, electrical or other recording or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and which is contemporaneously recorded.

11. As used herein, the term "document" means the original as well as any copy, regardless of origin or location, of any typewritten, handwritten, printed or recorded material including, but not limited to, any book, pamphlet, periodical, letter, memorandum, telegram, report, record, study, note, draft, chart, paper, graph, index, tape, disc, data sheet, diary, calendar or any other written, recorded, transcribed, punched, taped, filmed or graphic matter, however produced or reproduced, to which you have or have had access or control.

12. A document is deemed to be in your "control" if you have the right or the ability to secure the document or a copy thereof from another person or public or private entity having actual possession thereof.

13. Wherever it may be used herein, the masculine shall be deemed to include the neuter or feminine gender and vice versa, unless the context expressly indicates otherwise; the singular shall be deemed to include the plural and vice versa; the present tense shall include the past tense and vice versa; and the word "or" wherever it may be used shall be construed either

conjunctively or disjunctively to bring within the scope of these interrogatories and requests for production any information which might otherwise be looked upon as outside their scope.

14. If there is insufficient space following any particular interrogatory in which to completely and truthfully provide all of the information requested, attach additional sheets of plain paper upon which your answer to such an interrogatory may be given, and note the phrase "see attached sheets" in the space provided for said interrogatory.

15. To the extent that any of these interrogatories may be fully and completely answered by attaching copies of documents, you may attach such documents in lieu of making a narrative response, but must specifically identify which page or portion of such document is responsive to which interrogatory.

1. Describe how each of the named plaintiffs is disabled.

2. For each plaintiff describe the behaviors that make placement in foster homes inappropriate, and on what basis that plaintiff alleges the behavior is disability-related.

3. Define the following terms as used in the amended complaint:

   a. "community based placements"

   b. "institutions"

   c. "inappropriate placement"

   d. "professionals"

4. Are there other identified individuals known to the plaintiffs that would qualify to be members of the proposed class? If so, identify each individual and the basis on which the individual would qualify to be included in the proposed class.

5. For each plaintiff, describe the types of services that would be required to maintain that plaintiff in a community based placement, as defined above.

6. List each known community-based placement available in Connecticut or other state and for each placement, provide address, phone number, description of the placement, including services offered, average annual cost per child, name of director and the name of the public agency supporting such placement.

7. Identify all witnesses who will provide evidence in support of the allegations in paragraph 45 of the amended complaint and provide a summary of their testimony.