UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| W.R., individually and on behalf of her minor son, JOSEPH R.; SUSAN K.; M.O., individually and on behalf of her minor son, OMAR S.; and on behalf of all others similarly situated, and | ) ) ) ) ) | |
| JEANNE MILSTEIN, CHILD ADVOCATE OF THE STATE OF CONNECTICUT | ) ) ) | |
| PLAINTIFFS | ) ) | |
| V. | ) ) ) | CIV. NO. 302 CV 429(RNC) |
| CONNECTICUT DEPARTMENT OF CHILDREN AND FAMILIES, and | ) ) ) | |
| Darlene Dunbar, Commissioner of the Connecticut Department of Children and Families, | ) ) ) ) | April 18, 2007 |
| DEFENDANTS | ) | |

## SETTLEMENT AGREEMENT

### I. Introduction

A. This Settlement Agreement is made by and between the plaintiffs, defendants, proposed intervenor plaintiffs and proposed joinder plaintiffs in: *W.R., individually and on behalf of her minor son, Joseph R; Susan K; M.O., individually and on behalf of her minor son, Omar S.; and on behalf of all others similarly situated v. Connecticut Department of Children and Families and Darlene F. Dunbar, in her official capacity as Commissioner of the Department of Children and*

*Families*; Civil Action No. 3:02-cv-00429 (RNC) (hereinafter referred to as *WR* v. *DCF*). This Settlement Agreement covers a three year time period and then shall terminate. This Agreement is a full and final resolution of this lawsuit.

B. On March 8, 2002, the plaintiffs: Susan K., Joseph R., and Omar S., (hereinafter referred to collectively as plaintiffs) filed this action, entitled *W.R.* v. *Department of Children and Families*, Civil Action No. 3:02-cv-00429 (RNC), against the State of Connecticut, Department of Children and Families (hereinafter referred to as "DCF" or "the Department") and its Commissioner in her official capacity on their own behalf and on behalf of a proposed class. With the permission of the District Court, the plaintiffs are prosecuting this action pseudonymously.

C. The plaintiffs, in their Amended Complaint dated June 1, 2002, seek injunctive and declaratory relief on behalf of the purported class. In that complaint, the named plaintiff, Susan, seeks monetary damages.

D. The named plaintiffs, on their own behalf, and on behalf of the proposed class, commenced the *W.R.* v. *DCF* suit due to DCF's alleged failure to comply with federal law requiring it to implement policies and procedures designed to ensure that mentally ill youth in the care of DCF, either through commitment or voluntarily, have a continuum of placements available to them which would enable them to successfully live in the community, when appropriate. Plaintiffs alleged violations of the American with Disabilities Act, Section 504 of the Rehabilitation Act, Conn. Gen. Stat. §17a-3, Conn. Gen. Stat. §17a-16, and Article First, §20 of the Constitution of Connecticut.

E. On May 28, 2003, the District Court granted the Office of the Child Advocate permission to intervene as a party plaintiff.

F. The plaintiffs filed a Motion for Class Certification seeking certification on July 11, 2003, which was denied without prejudice on September 30, 2004. Plaintiffs filed a second Motion for Class Certification on May 5, 2005, amended on June 20, 2006. The defendants objected to the motion for class certification, which was denied without prejudice on March 24, 2007.

G. The defendants filed a Motion for Summary Judgment on July 21, 2005 which the court denied without prejudice on September 30, 2006.

H. At the time of the execution of this Agreement, Barbara P., Samuel C., and Brandon L. had filed motions seeking to intervene or be joined as party plaintiffs. The defendants objected to these motions. These motions, which are being prosecuted pseudonymously with the permission of the District Court, were denied without prejudice on March 24, 2007.

## II. General Recitals

WHEREAS, the parties intend, through this Settlement Agreement, to make and maintain significant and substantial improvement to procedures, placements, and programs by which mentally ill youth and/or youth with serious behavior issues who are committed to DCF or who are voluntarily in DCF's care can access and receive appropriate community based placements, where appropriate;

WHEREAS, the parties desire to settle this action on terms and conditions just and fair to all parties;

WHEREAS, the parties agree that a class, as defined in Section IV, Class Certification below, is hereby certified;

WHEREAS, DCF has established or committed to establish at least 45 therapeutic community based group homes prior to July 1, 2010, to partially address the needs evidenced by the proposed class as alleged in the Amended Complaint;

NOW, THEREFORE, IT IS HEREBY AGREED by and between the parties, as represented below, as follows:

## A. Resolution of Pending Suit

The parties believe that resolving this matter through negotiation rather than adversarial litigation is in the best interests of both plaintiffs and defendants. The agreement to settle this case, subject to the approval of the District Court in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, is the outcome of negotiations and bargaining by the parties. Each party has made concessions the party believed were necessary in light of prevailing law and the facts of this action. In addition, each party has been able to obtain favorable concessions and agreements potentially beyond the reach of that party if this action had been decided by the District Court, instead of being resolved through negotiations.

## B. Scope of Agreement

1. This Agreement embodies the entire Agreement and understanding of the parties with respect to the subject matter contained herein. The parties hereby declare and represent that no promise, inducement, or agreement has been made other than those contained in this document, and the parties acknowledge that the terms and

conditions of this Agreement are contractual and not a mere recital.

2.  This Settlement Agreement is contingent upon approval in accordance with the provisions of Connecticut General Statutes §3-125a and such "fairness hearings" as may be dictated by the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure of the U.S. District Court for the District of Connecticut, and the rulings of the District Court.

3.  This Settlement Agreement shall become effective, final and binding upon the parties, including all class members, their successors and assigns, only at such time as it is approved by the District Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

4.  The Agreement will remain in effect for a three year period, which the parties intend will commence on July 1, 2007, and conclude on June 30, 2010.

5.  In reaching this settlement, DCF expressly does not admit liability, or violation of the law, as to any claims raised or which could have been raised by plaintiffs pertinent to events giving rise to this lawsuit.

**III. Definitions**

The following definitions apply to this Settlement Agreement:

A. **"ARG"** refers to DCF Area Resource Group;

B. **"Commit"** refers to DCF's obligation to either expend money in accordance with its obligations under the Settlement Agreement or to sign contracts allocating or authorizing the appropriate expenditure of money in accordance with DCF's obligations under this Settlement Agreement;

C. **"Defendants"** refer to the named defendant Commissioner of the State of Connecticut Department of Children and Families in this action and her successors and assigns and the Connecticut Department of Children and Families;

D. **"The Department of Children and Families," "DCF"** or **"the Department"** refers to the State of Connecticut Department of Children and Families or any successor agency, its officers, administrators, staff, employees, agents and assigns;

E. **"EMPS"** refers to Emergency Mobile Psychiatric Services;

F. **"ICBO"** refers to Individual Community Based Options;

G. **"Plaintiffs"** refers to the named plaintiffs in this action, the proposed plaintiff class, and proposed intervenor and joinder plaintiffs and all class members;

H. **"Year"** refers to the state fiscal year, July 1 to June 30;

I. **"Youth"**, for purposes of class certification and this Agreement, refers to all children ages 0-21 years in the care of DCF, including those receiving voluntary services.

## IV. Class Certification

The parties agree that for the purposes of this Settlement Agreement, this matter shall be treated and approved as a class action and that the sole definition of plaintiff class is:

> "[m]entally ill youth and/or youth with serious behavioral issues in the care of DCF whose mental health needs cannot be met in traditional foster home placements or institutions, who are in need of community based placements and/or who have experienced or are at high risk of

experiencing, multiple failed placements."

## V. Increasing the Ability of DCF to Serve Class Members

### A. Emergency Mobile Psychiatric Services

(1) For years one, two and three of this Settlement Agreement, the defendants agree to commit $1,000,000.00 (one million dollars) per year to support expanded hours of service of EMPS. These funds will be used to increase the number of EMPS staff during peak and expanded hours to allow for maximum mobility and more immediate response times. The following DCF geographic areas will receive additional resources: New Haven, Hartford, Bridgeport, Waterbury, and New Britain. Defendants will make good faith efforts to ensure the expenditure of the funds allocated in accordance with the Settlement Agreement.

(2) For Year One of this Settlement Agreement, the defendants agree to commit an additional amount of $187,500 (one hundred eighty-seven thousand five hundred dollars) per year, and, for Years Two and Three of this Settlement Agreement, the defendants agree to commit an additional $250,000 (two hundred fifty thousand dollars) per year, to enhance the EMPS currently offered in Eastern Connecticut and/or as appropriate and at the discretion of the Department of Children and Families after consulting with the Consultant, to provide EMPS crisis interventions for particular class members identified in this region. Eastern Connecticut is defined as the areas served by the Willimantic and Norwich offices of the Department of Children and Families at the time of the execution of the agreement. Defendants will make good faith efforts to ensure expenditure of the

funds allocated in accordance with the Settlement Agreement.

(3)  Defendants reserve the right to periodically review the allocation of all EMPS services as compared to demand and need for the services.  If defendants determine a reallocation or modification of resources for the benefit of class members is appropriate, defendants will notify the Consultant and the plaintiffs regarding any recommendation to make reasonable reallocations to other geographic areas based on these reviews.    If the Consultant and plaintiffs are in agreement with such recommendations, the resources will be reallocated accordingly.

### B. Individualized Community-Based Options (ICBO)

(1)  **Introduction.**  Defendants, in conjunction with the Consultant, agree to develop and implement an ICBO program to assist class members in obtaining and remaining in appropriate community based placements.  Defendants will commit the expenditure of $5,312,500 (five million three hundred and twelve thousand five hundred dollars) on ICBO services over the course of this Agreement, to be allocated as set forth below.    Nothing in this agreement prevents DCF from committing more than that amount on such services.

### (2) ICBO Services

(a) In Year One of the term of this Settlement Agreement, defendants will commit $1,312,500.00 (one million three hundred and twelve thousand five hundred dollars) to develop and implement ICBO for class members who would otherwise remain in inappropriate residential placements, be at high risk of placement in such facilities due to their mental or behavioral health problems, or have

experienced multiple unsuccessful foster care placements, group home placements, or other community based placements. Specifically, these funds will be used to provide therapeutically supported living, crisis supports, and related services to help maintain these individuals successfully in the community. It is contemplated that the bulk of these services or supports will be directed to class members who are adolescents and have experienced multiple placements. The defendants will identify ICBO funds as a separate budget line item for the purpose of augmenting, and not replacing, the current service array provided to class members. Development and implementation of all ICBO services will be done in consultation with the Consultant.

(b) In Years Two and Three, defendants will commit $2,000,000.00 (two million dollars) per year to develop and implement ICBO, as described in paragraph V.(B)2 above, for class members who would otherwise remain in residential treatment facilities, be at high risk of placement in such facilities due to their mental or behavioral health problems, or have experienced multiple unsuccessful foster care placements. Development and implementation of all ICBO services will be done in consultation with the Consultant.

3. **Guidance**

The defendants, in collaboration with the Consultant, agree to provide regular and structured guidance to ARG staff, program supervisors, social workers, social work supervisors and individuals/organizations that contract with DCF to provide services to class members in the following areas:

(a) transition planning for clients aging out of DCF's care, beginning at age

fourteen (14);

(b) unconventional or individualized "out of the box" planning options related to the plaintiff class, including strength-based planning and understanding that there is a "no eject/no reject" policy for services for all DCF clients, including services available for class members; and

(c) the increased availability of EMPS services, as well as the availability of the group homes and ICBO services, under this Agreement.

## VI. Consultant

A. The plaintiffs and defendants shall agree upon a third party consultant for the purposes of implementing the Settlement Agreement. The defendants will pay the Consultant an annual salary of up to $175,000 (one hundred seventy-five thousand dollars). The defendants will advertise, and both parties will recruit, candidates for interviewing and selection mutually by plaintiffs and defendants. The Consultant will be housed at the Central Office of DCF and will work with Chief of Program Operations or equivalent position. The Consultant's work will be evaluated annually jointly by the parties. If the parties conclude that the Consultant must be replaced or the Consultant position becomes vacant, the defendants will advertise and both parties will recruit candidates and the parties will interview and select a replacement that is mutually acceptable. The Consultant will meet on a monthly basis with plaintiffs' counsel and/or staff from the Office of the Child Advocate to review progress under this Agreement.

B. If the parties cannot come to agreement regarding the selection of the Consultant or a replacement Consultant, should one become necessary, the parties agree to submit the names and pertinent information regarding each candidate to Dr. Bob Carl for selection of the Consultant or replacement Consultant. Should Dr. Carl be unavailable to make this decision, the parties will agree on a third party to determine who will fulfill the role of the Consultant.

C. The Consultant's duties are as follows:

(1) assist the Department in establishing eligibility criteria for ICBO and an appropriate transition process for participation in the ICBO program;

(2) identify best and promising practices for clinical services and other supportive services provided in group home settings, EMPS and ICBO services and make recommendations for improvements to these programs;

(3) assist with the development of a broad array of ICBO services for class members which

(a) are consistent with best and promising practices;

(b) ensure class member access to ICBO services;

(c) which promote stability in placements for class members;

(4) provide a quarterly report to the defendants and to plaintiffs' counsel during each of the three years of the Agreement on services provided in group home settings, as well as the EMPS and the ICBO services related to the plaintiff class, and the nature and extent of the guidance provided in section V.(3) above;

(5) assist the defendants in the development of transition planning and policy to help older adolescent class members prepare for adulthood, and, if appropriate, transition to services provided by DMR or DMHAS;

(6) assist in developing and implementing more user-friendly, effective practices, to encourage class members to report problems and concerns to DCF for assessment and appropriate action by DCF;

(7) oversee the provision of specific relief to individual named plaintiffs as provided in this Agreement;

(8) ensure the defendants publicize and provide information regarding the expansion of EMPS to DCF staff, youth in DCF's care, families and community groups in contact with DCF; and

(9) ensure information regarding ICBO and group homes is disseminated to juvenile court personnel, probate court personnel and child advocate groups in contact with DCF.

D. The purpose of the Consultant's recommendations is to help the Department assess the programs and services provided to class members. It is understood and agreed that the Consultant's reports shall be based upon data generated by the Department as well as the experience of the Consultant in conducting his or her duties. The recommendations of the Consultant are not binding on any party.

E. The Consultant will describe his or her activities and make recommendations to the defendants regarding the matters listed in Paragraph VI C,

including the expenditure of monies directed to class members, in his or her quarterly written report, or at such other times as he or she deems appropriate. Defendants shall provide the Consultant with the necessary data and support to complete his or her reports on the implementation of the Agreement. DCF will provide the Consultant with the information outlined in Attachment A to this Settlement Agreement. By June 1, 2010, the Consultant will submit a final report which shall include:

(1) a comprehensive review of the implementation of the Settlement Agreement;

(2) recommendations regarding the efficacy of the services and programs offered under the Settlement Agreement;

(3) recommendations regarding reducing DCF's reliance on residential treatment and expanding defendants' capacity to provide mental health services and placements in the community; and

(4) review recommendations regarding the efficacy of the augmented EMPS program based on the Reporting Data attached to the Settlement Agreement as Attachment A.

## VII. Relief For Individual Plaintiffs

A. On or about July 1, 2007, the defendants agree to deposit five thousand dollars ($5,000) in each of the respective Special Needs Trusts attached hereto as Exhibit 1 established by counsel for the plaintiffs or their agents for the following plaintiffs or proposed intervenors: Omar S., Joseph R., Samuel C., and Brandon L.

It is the intent of the parties that the Special Needs Trusts shall be qualified trusts pursuant to 42 United States Code section 1396p(d)(4), which shall not cause the respective plaintiff or proposed intervenor to be or become ineligible for any state assistance; nor should transfers to such trusts, as provided under 42 United States Code section 1396p(c)(2)(B), subject the respective plaintiff or proposed intervenor to a period of ineligibility from such assistance. The drafting of the trust documents including compliance with 42 United States Code section 1396p(d)(4) is solely the responsibility of the plaintiffs or their agents. Failure of any of the trust documents to meet the requirements for qualified trusts under said section is not a violation of this agreement nor is failure of any of the beneficiaries to qualify for such trusts.

B. **Joseph R.**

(1) As long as Plaintiff Joseph R. is continuing his education, complying with his treatment plan and chooses to accept DCF's voluntary services or equivalent DCF program, he will be eligible for all DCF adolescent/young adult services, including, but not limited to, those services outlined in DCF Policy Manual Chapter 42. Joseph will receive the same priority for services and have the same right to challenge his treatment plan as committed youth. DCF services will remain in place during the pendency of any challenge to Joseph R.'s treatment plan. Joseph's eligibility will remain through his 23rd birthday.

(2) As an accommodation for Joseph's mental health issues, full time enrollment in college level courses will not be required for eligibility for adolescent/young adult services from DCF.

(3)    Joseph will remain eligible for ICBO and all other DCF adolescent/young adult services during the time he remains in DCF's care to the extent that ICBO services exist after the conclusion of the Settlement Agreement.

(4)    Joseph will not be exited from DCF services or transferred to the Department of Mental Health and Addiction Services without written notice given to Joseph and his mother.

C. Services for **Susan K.** and **Barbara P.**

(1)    Upon approval of this Agreement by the District Court, DCF, on behalf of Susan K. and Barbara P., will enter into a **Memorandum of Agreement (MOA)** with the Department of Mental Health and Addiction Services (DMHAS) to provide services for these two plaintiffs.    The proposed **MOA** is attached as Attachment B and made a part of this Agreement.

(2)    Under the **MOA**, DMHAS will arrange for services based upon Individual Service Plans attached as Attachments C and D to this Agreement and prepared in consultation with each of these plaintiffs, which plans will include a case manager, educational and vocational mentors, living expenses, educational services, health care services, and related expenses.

(3)    DCF will continue to have financial responsibilities to these plaintiffs to assure such services are provided, although DMHAS will have programmatic responsibility.

(4)    The parties acknowledge that DMHAS is not a party to this action, and is not liable to any of the plaintiffs.

(5)  In the event that neither Susan K. nor Barbara P. is participating in DMHAS services under the **MOA**, and DMHAS has determined to discontinue offering any further services, the **MOA** shall become null and void.

(6)  In the event DMHAS declines or fails to provide the services outlined in Attachments C and D without just cause, DCF will make arrangements for the provision of these services as outlined in the plans.

(7)  Funds may be reallocated from one category in the individual service plans to another category in the individual service plans to assist in providing the services outlined in the plans, as set forth in the **MOA.**

(8) In the event either or both Susan and Barbara have participated in their Individual Service Plan services consistently and money remains in their Individual Service Plans at the end of any fiscal year, the remaining funds will be deposited into the respective Special Needs Trust attached hereto as Exhibit 1 established by counsel for the plaintiffs or their agents, for Susan and Barbara.  It is the intent of the parties that the Special Needs Trusts shall be qualified trusts pursuant to 42 United States Code section 1396p(d)(4), which shall not cause the respective plaintiff or proposed intervenor to be or become ineligible for any state assistance; nor should transfers to such trusts, as provided under 42 United States Code section 1396p(c)(2)(B), subject the respective plaintiff or proposed intervenor to a period of ineligibility from such assistance.  The drafting of the trust documents including compliance with 42 United States Code section 1396p(d)(4) is solely the responsibility of the plaintiffs or their agents. Failure of any of the trust documents to

meet the requirements for qualified trusts under said section is not a violation of this agreement nor is failure of any of the beneficiaries to qualify for such trusts.

### D. Waivers

It is the intent of the parties that the proceeds of the Settlement shall not be pursued for any recovery of debt to the State. Therefore, the defendants and the Department of Administrative Services agree not to pursue the proceeds of the Settlement for any recovery of debt to the state incurred by the plaintiffs in the present or the future. However, the plaintiffs are not otherwise relieved of liability for any state services they have received or may receive in the future.

### VIII. Implementation/Terms of Settlement Agreement

A. The sole remedy for enforcement of this Settlement Agreement if defendants fail to substantially comply with the terms of this Settlement Agreement will be an independent action for breach of contract, or other contract action. Plaintiffs and/or class members may bring such an action with respect to any alleged failure of defendant to substantially implement and comply with the terms of this Settlement Agreement, during the time the Settlement Agreement is in effect. For class members, substantial compliance will be determined by reference to the extent of defendant's compliance with the obligations of this Settlement Agreement as applied to the plaintiff class, and not solely by reference to the individual circumstances of any one individual plaintiff or plaintiff class member. For individual plaintiffs, substantial compliance will be determined by reference to individual circumstances.

B. A plaintiff and/or class member will not file an action for breach of contract unless they have first provided thirty (30) days advance notice specifically detailing the factual basis for the claimed substantial noncompliance, except in emergency circumstances when they will provide notice that is practicable under the circumstances. The parties agree to discuss and to attempt to resolve in good faith any claimed substantial noncompliance prior to seeking any relief from court. The parties shall agree to attend at least one in person meeting within thirty (30) days from receipt of notice of noncompliance to discuss the claimed substantial noncompliance unless emergency circumstances exist. The parties agree to continue to comply with all provisions of the Agreement not in dispute until a court adjudicates the action, grants injunctive or other equitable relief, makes a ruling excusing further compliance with the Agreement, or the dispute between the parties is otherwise resolved.

C. DCF, through staff designated by the defendants, will convene a quarterly meeting with the Consultant and with plaintiffs' counsel, beginning in September 2007, to jointly assess the defendants' compliance with the provisions of this Settlement Agreement. The parties may also convene a meeting at any time to raise specific concerns regarding compliance with this Settlement Agreement. One month prior to the quarterly meeting, the defendants and/or the consultant will provide a written report to the plaintiffs indicating progress to date in implementing the obligations of this Agreement, and including such further information as the parties mutually agree shall be included.

D. Subject to the release language described Section IX below, nothing in this Agreement shall prevent any member of the plaintiff class from bringing an action for relief, including an action in court, or an administrative proceeding, seeking individualized relief related to his or her own specific individual and unique circumstances based upon state or federal law. Compliance with the requirements of this Settlement Agreement does not relieve the defendants of their obligations under state or federal law.

E. This Settlement Agreement covers the period from the date of approval by the federal court until June 30, 2010, at the expiration of which it shall terminate, unless extended by mutual agreement.

F. This Settlement Agreement is not a consent decree, nor does it operate as an adjudication of the merits of this litigation.

G. The District Court shall not have ongoing jurisdiction to monitor the performance of the Settlement Agreement.

H. The parties stipulate to the granting of the class as framed in Section IV, Class Certification, above.

I. This Settlement Agreement is contingent upon the approval of the Settlement Agreement by the District Court and the Connecticut General Assembly in accordance with Conn. Gen. Stat. §3-125a. The District Court's approval of the dismissal of this action is sought to comply with Rule 23 (e) of the Federal Rules of Civil Procedure.

J. Once the District Court approves the Settlement Agreement, the parties shall submit to the District Court a stipulation of dismissal of this action with prejudice pursuant to Rule 41 (a) (1) of the Federal Rules of Civil Procedure.

K. In the event that the District Court does not approve any portion of the Settlement Agreement, and/or does not grant the parties' joint motion for dismissal of this lawsuit, the parties reserve the right to litigate whether class certification should be granted and all issues of law and fact in this case.

L. This Agreement does not impose upon the defendants any obligations that extend beyond the three year period covered by the Settlement Agreement. The defendants shall have no obligations under the Settlement Agreement other than what is specifically enumerated in this Agreement.

M. Nothing in this Agreement shall be construed to require the defendants to violate any state or federal law or regulation, or to waive, release or abridge rights or obligations under any court order/consent decrees, to maintain a child in a placement detrimental to the child's well-being or safety, or to license or maintain a facility that does not meet the state's licensing requirements.

N. Nothing in this Settlement Agreement should be construed as an admission of wrongdoing by any defendant. Rather, the Agreement represents a good faith attempt to resolve disputed issues of fact and law. The Department of Children and Families, and Darlene Dunbar, Commissioner of the Department of Children and Families, continue to deny the allegations and do not admit to any liability or wrongdoing concerning any of the allegations contained in the pleadings in *W.R.* v.

*Department of Children and Families*, Civil Action No. 3:02-cv-00429 (RNC).

O. The individual plaintiffs and proposed intervenor and joinder plaintiffs hereby agree to the voluntary dismissal with prejudice of the action entitled *W.R.* v. *Department of Children and Families*, Civil Action No. 3:02-cv-00429 (RNC).

## IX. Release

The named plaintiffs, proposed intervening plaintiffs and proposed joinder plaintiffs hereby completely release and forever discharge the defendants, Department of Children and Families, Darlene Dunbar, Commissioner of the Department of Children and Families and the State of Connecticut, from any and all claims, demands, obligations, actions, causes of action, lawsuits, administrative proceedings, rights, damages known or unknown, costs, loss of services, attorneys fees and costs, expenses and compensation of any nature whatsoever, for those matters which have resulted or could result from the alleged acts or omissions of the Defendants and/or the State of Connecticut and any of its officers, agents, employees and servants, or any other present or former officers, servants, agents or employees, and which have been raised or could have been raised in any way, growing out of the incident(s), acts or omissions which are described in the amended complaint, *W.R.* v. *Department of Children and Families*, Civil Action No. 3:02-cv-00429 (RNC).

B. The named plaintiffs, as class representatives on behalf of the class, hereby completely release and forever discharge the defendants, Department of Children and Families; Darlene Dunbar, Commissioner of the Department of Children and Families

and the State of Connecticut, from any and all claims, demands, obligations, actions, causes of action, lawsuits, administrative proceedings, rights, damages known or unknown, costs, loss of services, attorneys fees and costs, expenses and compensation of any nature whatsoever, for those matters which have resulted or could result from the alleged acts or omissions of the Defendants and/or the State of Connecticut and any of its officers, agents, employees and servants, or any other present or former officers, servants, agents or employees, and which have been raised or could have been raised in any way, growing out of the incident(s), acts or omissions which are described in the amended complaint, *W.R.* v. *Department of Children and Families*, Civil Action No. 3:02-cv-00429 (RNC).

      C.   During the period of time that this Agreement is in effect, the named plaintiffs, proposed intervenors, proposed joinder plaintiffs, and members of the plaintiff class shall be barred from bringing any action or claim seeking class-wide systemic relief that was raised, or could have been raised in any way, growing out of the incident(s), acts or omissions which are described in *W.R.* v. *Department of Children and Families*, Civil Action No. 3:02-cv-00429 (RNC).

**X. Attorney's Fees and Costs**

      Within thirty (30) days of the final approval of this Agreement by the District Court, the defendants shall pay $150,000 (one hundred and fifty thousand dollars) to the plaintiffs as full and final satisfaction of any and all claims by the plaintiffs for past, present or future payment of attorney's fees and any costs associated with this

litigation. If the defendants have not paid the $150,000 (one hundred fifty thousand dollars) in full within sixty (60) days of the final approval of this Agreement by the District Court, defendants will pay an additional statutory interest fee for each month the fees are unpaid.

**XI. Binding Effect.**

The persons signing this Agreement represent that they have the authority to enter into this Agreement on behalf of the respective parties that they represent and that this Agreement shall be binding upon, and inure to the benefit of, the successors of the parties hereto.

IN WITNESS WHEREOF, we have hereby set our hands and seals this 30th day of July, 2007.


PLAINTIFFS, W.R., individually and on behalf of her
Minor son, JOSEPH R.; SUSAN K.; M.O., individually
And on behalf of her minor son, OMAR S., and on behalf
Of all other similarly situated,

BY THEIR ATTORNEY,


Anne Louise Blanchard

PLAINTIFFS, JEANNE MILSTEIN, CHILD
ADVOCATE OF THE STATE OF CONNECTICUT,
AND PROPOSED INTERVENOR SAMUEL C.

BY THEIR ATTORNEY,

_____
      Christina Ghio

PLAINTIFF, PROPOSED INTERVENOR
BARBARA P.,

BY HER ATTORNEY,

_____
      Anne Louise Blanchard

PLAINTIFF, PROPOSED INTERVENOR
BRANDON L.,

BY HIS ATTORNEY,

_____
      Mildred Doody

DEFENDANTS, CONNECTICUT DEPARTMENT
OF CHILDREN & FAMILIES, AND DARLENE
DUNBAR, COMMISSIONER OF THE CONNECTICUT
DEPARTMENT OF CHILDREN & FAMILIES,

BY THEIR ATTORNEYS,

_____        _____
      Susan T. Pearlman                        John Tucker